IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIVEPERSON, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 08-062 (GMS) |
| NEXTCARD, LLC and MARSHALL CREDIT STRATEGIES, LLC, | ) ) ) | Demand for Jury Trial |
| Defendants. | ) ) ) ) | |

**OPENING BRIEF IN SUPPORT OF PLAINTIFF LIVEPERSON, INC.'S
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
TO ADD DEFENDANTS CPMG, INC. AND WARBLER TECHNOLOGIES, L.P.**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
alundgren@ycst.com

*Attorneys for Plaintiff LivePerson, Inc.*

Dated: May 8, 2008

PROSKAUER ROSE LLP
Steven M. Bauer
Kimberly A. Mottley
Todd A. Gerety
Melissa A. Ganz[*]
One International Place
Boston, MA 02110-2600
(617) 526-9600

---

[*]    Admission *pro hac vice* pending.

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.    SUMMARY OF ARGUMENT ..................................................................................2

III.    STATEMENT OF FACTS .......................................................................................3

IV.    ARGUMENT .........................................................................................................5

V.    CONCLUSION.......................................................................................................7

i

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Gould, Inc.,*
   739 F.2d 858 (3d Cir. 1984) ........................................................................... 5

*Agere Sys. Guardian Corp. v. Proxim, Inc.,*
   190 F. Supp. 2d 726 (D. Del. 2002).............................................................. 5

*Alston v. Parker,*
   363 F.3d 229 (3d Cir. 2004) ........................................................................... 6

*Foman v. Davis,*
   371 U.S. 178 (1962)......................................................................................... 5

*Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of The Virgin Islands, Inc.,*
   663 F.2d 419 (3d Cir. 1981) ........................................................................... 6

*Kiser v. General Electric Corp.,*
   831 F.2d 423 (3d Cir. 1987) ........................................................................... 6

*Martek Biosciences Corp. v. Nutrivona, Inc.,*
   No. 03-864 GMS, 2005 WL 1745680 (D. Del. July 19, 2005) .................... 5

*Micron Tech., Inc. v. Rambus Inc.*
   409 F. Supp. 2d 552 (D. Del. 2006).............................................................. 5

*Patton v. Guyer,*
   443 F.2d 79 (10th Cir. 1971) ......................................................................... 6


**Statutes**

FED. R. CIV. P. 15(a). ........................................................................................... 5

DB02:6807641.1    067025.1001

Pursuant to Federal Rule of Civil Procedure 15(a) and Rule 15.1 of the Local Rules for the District of Delaware, Plaintiff LivePerson, Inc. ("LivePerson") hereby moves the Court for an order granting leave to file a second amended complaint ("Second Amended Complaint") to add CPMG, Inc. ("CPMG") and Warbler Technologies, L.P. ("Warbler") as Defendants in this action. A clean copy of the proposed Second Amended Complaint and a blacklined copy, noting the proposed changes, are attached hereto as Exhibits A and B, respectively. In support of its motion, LivePerson respectfully states that the grounds for this motion are as follows:

## I.    NATURE AND STAGE OF THE PROCEEDINGS

On January 28, 2008, LivePerson filed this action against NextCard, LLC ("NextCard") and Marshall Credit Strategies, LLC ("MCS"), seeking a declaratory judgment of non-infringement and invalidity of U.S. Patent No. 6,718,313 ("the '313 Patent"). On March 18, 2008, LivePerson filed an Amended Complaint, adding a count for a declaratory judgment of non-infringement and invalidity of a related patent (U.S. Patent No. 7,346,576 ("the '576 Patent")) which issued that day. (The '313 and '576 Patents are referred to herein collectively as "the NextCard Patents").

On April 7, 2008, Defendants MCS and NextCard filed nearly identical motions to dismiss, arguing that no case or controversy existed and that personal jurisdiction was lacking for both Defendants. The sum and substance of their motions was that because they each were merely patent holding companies for a third and fourth company, and each were "operating" with very narrowly defined and separately parsed responsibilities, there was no jurisdiction against either of them taken separately. MCS claimed its only business was acquiring the patents in Delaware, and NextCard alleged that its only business was litigating the same patents in Texas.

Both Defendants in turn submitted affidavits in support of their motions to dismiss; pointing to their "parent" companies (Warbler and CPMG) as their controlling and operating "management." *See* D.I. 23-2, 23-3.[1] The affidavits, one by the Chief Operating Officer of CPMG and the other by a Managing Director of CPMG, shed light on the relationships and involvement of CPMG and Warbler which was unknown to LivePerson at the time of the filing of the complaint.

In view of the affidavits, the record now suggests that CPMG controls *all* of the activities relevant to the NextCard patents underlying the present action, including their purchase in Delaware from a Delaware corporation in Delaware Bankruptcy Court; the creation of shell companies to hold the patents; the purported transfer of the patents and other "assets" between these shell companies; and the current assertion of these patents against Delaware companies. Based on this new information, it is apparent that CPMG and Warbler should be joined as defendants in this action as the true parties in interest, and thus LivePerson files the present Motion for Leave to File its Second Amended Complaint.

Concurrently, LivePerson is also filing its opposition to Defendants' motions to dismiss, which sets forth in greater detail the ties among these entities, and provides what limited information is available publicly which suggests that jurisdiction is proper here in Delaware.[2]

## II.    SUMMARY OF ARGUMENT

1.    The affidavits submitted by Defendants demonstrate that the activities of CPMG, Warbler, and Defendants MCS and NextCard should be reviewed as a whole. Indeed, the facts

---

[1]    Defendants submitted the identical affidavits in support of both of their motions. *See also* D.I. 21-2, 21-3.

[2]    As will be discussed more fully in the opposition to the motion to dismiss, LivePerson asked Defendants for, and was denied, discovery into the jurisdictional contacts between CPMG and Warbler with Delaware.

2

indicate that CPMG directed the acquisition of the NextCard Patents out of the Delaware bankruptcy from a Delaware company; directed the creation of Warbler and NextCard, LLC (which it would use as an entity to hold the rights in the NextCard patents), and directed the assertion of the NextCard Patents against potential defendants in infringement actions, including various Delaware entities.

2.     LivePerson's case, and its right to be heard in this Court, should not turn on corporate shell games. Rather, LivePerson's rights to be heard in this Court turn on the universe of activity surrounding the purchase and purported transfers of rights in the NextCard Patents, all controlled by CPMG and/or Warbler. Defendants cannot conduct business in this jurisdiction, and then avoid litigation in this jurisdiction, simply by transferring assets around between shell companies.

3.     LivePerson's proposed amendment is timely. Because this case is in its very initial stages, no initial status conference has been scheduled, and discovery has not yet begun, Defendants MCS and NextCard cannot demonstrate that they would be prejudiced if the complaint were amended at this stage of the proceedings.

## III.   **STATEMENT OF FACTS**

In March 2007, CPMG's Managing Director, James Traweek, came into Delaware and personally participated, on behalf of CPMG and/or its shell companies, in a bankruptcy auction in Wilmington, Delaware. Mr. Traweek "put in the highest bid at the auction for the NextCard Patents." *See* D.I. 21-3, 23-3 (Affidavit of James Traweek submitted in support of NextCard and MCS's Motions to Dismiss [hereinafter "Traweek Decl."]); *see also* Exhibit C, Excerpts from NextCard Inc. Bankruptcy Docket No. 02-13376-KJC. The sale of the NextCard Patents was completed through Mr. Traweek's execution of a Patent Purchase Agreement which explicitly conveyed to MCS all right, title, and interest in and to the '313 Patent, and certain related

3

pending applications, including that which ultimately issued as the '576 Patent, to MCS. Traweek Decl. ¶¶ 4-5.

On March 22, 2007, the United States Bankruptcy Court for the District of Delaware approved this Purchase Agreement. The *very next day*, on March 23, 2007, CPMG formed two new corporate entities – Warbler Technologies, L.P. and NextCard, LLC – and executed an Assignment and Bill of Sale ("Assignment"), purporting to transfer *all* of MCS's assets through Warbler and to NextCard. *See* Exhibit D, Assignment and Bill of Sale, dated March 23, 2007. MCS says now that this Assignment transferred the patents and the right to bring lawsuits for past damages, but the assignment itself is silent in this regard, and 37 C.F.R. 3.21 requires for patent recording purposes, that "[a]n assignment relating to a patent must identify the patent by the patent number." The only evidence as to what was actually assigned is provided in this case by *CPMG's* Chief Operating Officer, John Bateman, who signed this agreement on behalf of *both* MCS and NextCard. D.I. 21-2, & 23-2 (Affidavit of John Bateman submitted in support of NextCard and MCS's Motions to Dismiss [hereinafter "Bateman Decl."]).

Notably, the Assignment, even if it did change the name of the title holder, did nothing to alter the control or ownership of the NextCard Patents. Indeed, the affidavits filed by Defendants show that Defendants MCS and NextCard are intertwined, as they are both effectively managed by CPMG and owned by the same corporate entities -- Cardinal Partners, L.P., Cardinal Partners 2000, L.P., CD Fund L.P. and Fintan Master Fund, Ltd.. D.I. 23-2 ¶¶ 9-16.

Thus, the activities of CPMG, Warbler, and Defendants MCS and NextCard should be reviewed as a whole.

4

## IV.    ARGUMENT

The Federal Rules of Civil Procedure clearly state that leave to amend "shall be freely given [by courts] when justice so requires." FED. R. CIV. P. 15(a). "A policy of favoring decisions on the merits, rather than on the technicalities, underlies this Rule." *Micron Tech., Inc. v. Rambus Inc.*, 409 F. Supp. 2d 552, 558 (D. Del. 2006) (*citing Foman v. Davis*, 371 U.S. 178, 181-82 (1962)). "This liberal philosophy limits the district court's discretion to deny leave to amend." *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). Thus, "absent any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing part by virtue of allowance of the amendment, futility of amendment, etc. -- the leave should, as [the] rules require, be freely given." *Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d 726, 732 (D. Del. 2002) (*citing Foman*, 371 U.S. at 182); *Martek Biosciences Corp. v. Nutrivona, Inc.*, No. 03-864 GMS, 2005 WL 1745680, at *2 (D. Del. July 19, 2005).

Here, leave to amend should be granted. First, LivePerson's proposed amendment states a valid claim and is made in good faith, as LivePerson is merely amending to add additional defendants shown to have relevance to this action based on Defendants' recently-filed affidavits. As set forth above, the acts of CPMG, Warbler, MCS, and NextCard are all intertwined, and their activities in relation to this lawsuit should be looked at as a whole. Indeed, Defendants MCS and NextCard are both effectively managed by CPMG. The affidavit filed by CPMG's Chief Operating Officer, John Bateman, affirms the centralized ownership and management of MCS, Warbler, and NextCard. D.I. 23-2 ¶¶ 9-16. In addition, filings from the Texas Secretary of State demonstrate that it was CPMG that formed NextCard and Warbler the day after the NextCard Patents were purchased. *See* Exhibit E, Secretary of the State of Texas filings.

5

Thus, the claims in this case stem from actions that were controlled and managed by CPMG and which also implicate Warbler, MCS, and NextCard.

LivePerson's motion for leave to amend is timely filed and Defendants can show no prejudice from the proposed amendment, as this case is in the very initial stages, no initial scheduling conference with the court has been scheduled, and discovery has not yet begun. *Kiser v. General Electric Corp.*, 831 F.2d 423, 428 (3d Cir. 1987) (holding that the opposing party has the burden of establishing prejudice). Although "[t]here is invariably some practical prejudice resulting from an amendment, [] this is not the test for refusal of an amendment." *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971). Rather, the MCS and NextCard would have to demonstrate that they were "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the [moving party's] amendments been timely." *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of The Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981). Clearly, Defendants cannot demonstrate unfair disadvantage, or deprivation of opportunity to present evidence, because this litigation is at the very initial stages.

LivePerson anticipates that Defendants may oppose this motion on the grounds of jurisdiction. If they do, however, they will need to submit affidavit evidence as to why jurisdiction is improper as to Warbler and CPMG. Defendants were asked to agree to limited jurisdictional discovery before the filing of this motion, but refused. If they submit affidavit evidence now, LivePerson will review it and request jurisdictional discovery as appropriate. Based on these facts, however, Defendants cannot establish *now* that LivePerson's amendment would be futile, because to establish futility, Defendants must show that even if all of the allegations of the proposed amendment were taken as true and all reasonable inferences were drawn in favor of LivePerson, the pleading would fail to state a claim on which relief could be granted. *See Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004). As discussed above, the claims

6

against CPMG and Warbler are appropriate here, based on CPMG's control of Warbler, MCS, and NextCard.

## V.    **CONCLUSION**

For the foregoing reasons, LivePerson respectfully requests that the Court grant its motion for leave to file its Second Amended Complaint.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Melanie K. Sharp (No. 2501)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
alundgren@ycst.com

Steven M. Bauer
Kimberly A. Mottley
Todd A. Gerety
Melissa A. Ganz*
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600
(617) 526-9600

Dated: May 8, 2008                *Attorneys for Plaintiff LivePerson, Inc.*

---

*        Admission *pro hac vice* pending.

7

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on May 8, 2008, I caused to be electronically filed a true and correct copy of Opening Brief In Support of Plaintiff LivePerson, Inc.'s Motion for Leave to File Second Amended Complaint to Add Defendants CPMG, Inc. and Warbler Technologies, L.P. with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> David L. Finger, Esquire
> Finger & Slanina, LLC
> One Commerce Center
> 1201 Orange Street, Suite 725
> Wilmington, DE 19801-1155

I further certify that on May 8, 2008, I caused a copy of the foregoing document, to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

### BY E-MAIL (by agreement of counsel):

Donald Puckett, Esquire
Monts & Ware, LLP
1701 N. Market Street, Suite 330
Dallas, TX 75202-1897
dpuckett@monts-ware.com

_____
Andrew A. Lundgren (No. 4429)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE  19801
(302) 571-6681
alundgren@ycst.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LIVEPERSON, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 08-062 (GMS) |
| NEXTCARD, LLC, MARSHALL CREDIT | ) |
| STRATEGIES, LLC, CPMG, INC., and | ) DEMAND FOR JURY TRIAL |
| WARBLER TECHNOLOGIES, L.P., | ) |
| | ) |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT AND JURY DEMAND

Plaintiff LivePerson, Inc. ("LivePerson") brings this action for a declaratory judgment of

non-infringement and invalidity of U.S. Patent No. 6,718,313 ("the '313 Patent") and U.S. Patent

No. 7,346,576 ("the '576 Patent") (collectively the "NextCard Patents") against Defendants

NextCard, LLC ("NextCard"), Marshall Credit Strategies, LLC ("MCS"), CPMG, Inc.

("CPMG"), and Warbler Technologies, L.P. ("Warbler"). A copy of the patents are filed

herewith as Exhibits A and B, pursuant to D. Del. LR 3.2.

## Parties

1.     Plaintiff LivePerson is a corporation organized and existing under the General

Corporation Law of the State of Delaware and is headquartered in New York, New York.

LivePerson is a provider of online engagement solutions that facilitate real-time assistance and

trusted expert advice. Connecting businesses and experts with consumers seeking help on the

Web, LivePerson's hosted software platform creates more relevant, compelling and personalized

online experiences

2.     On information and belief, Defendant NextCard, LLC is a limited liability

company organized under the laws of the State of Texas, with its principal place of business at

104 E. Houston Street, Suite 145, Marshall, Texas 75670. On information and belief, NextCard is owned and /or controlled by co-defendant CPMG, ostensibly through co-defendant Warbler. On information and belief, NextCard was formed to acquire the NextCard Patents from co-defendnat MCS, and NextCard's only business is to license and enforce patents. Upon information and belief, the only patents NextCard has ever owned are the NextCard Patents.

3.      On information and belief, Defendant MCS is a limited liability company organized under the laws of the State of Texas, with its principal place of business at 2100 McKinney Avenue, Suite 1770, Dallas, Texas 75201. On information and belief, MCS is owned or controlled, either directly or indirectly, by co-defendant CPMG. On information and belief, MCS is managed on a day-to-day basis by CPMG. On information and belief, the only assets MCS has ever owned are the NextCard Patents.

4.      On information and belief, Defendant Warbler is a limited partnership organized under the laws of the State of Texas, with its principle place of business at 2100 McKinney Avenue, Suite 1770, Dallas, Texas 75201. On information and belief, Warbler is managed on a day-to-day basis by its co-defendant, CPMG, and is owned or controlled, either directly or indirectly, by CPMG. On information and belief, Warbler has no business beyond managing NextCard for CPMG.

5.      On information and belief, Defendant CPMG is a company organized under the laws of the State of Texas, with its principal place of business at 2100 McKinney Avenue, Suite 1770, Dallas, Texas 75201. On information and belief, CPMG owns or controls, either directly or indirectly, each of the other co-defendants MCS, Warbler, and Nextcard. Because the activities of each of the four Defendants are so closely intertwined, they are jointly referred to herein as "the CPMG Entities," without specific attribution to each.

-2-

## Jurisdiction and Venue

6.      This case arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq.  This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §1331 and 1338.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b).

8.      This court has personal jurisdiction over the CPMG Entities, because the CPMG Entities purposefully availed themselves of the benefits of Delaware law via thier purchase of the '313 and '576 Patents in proceedings in the United States Bankruptcy Court for the District of Delaware, docketed as Bankruptcy Petition No. 02-13376-KJC.  The debtor in that proceeding is a company entitled NextCard, Inc. (an entity distinct from Defendant NextCard, LLC).  On information and belief, the CPMG Entities have additional contacts with Delaware.

## COUNT I
### Declaratory Judgment of
### Non-Infringement and Invalidity of U.S. Patent Nos. 6,718,313 and 7,346,576

9.      The allegations of paragraphs 1 through 8 are incorporated by reference into Count I as though fully set forth herein.

10.     On information and belief, MCS, a CPMG Entity, purchased the '313 and '576 Patents out of bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware, docketed as Bankruptcy Petition No. 02-13376-KJC on March 22, 2007.  MCS is controlled by CPMG, Inc, a Texas corporation.

11.     On information and belief, on March 23, 2007 (one day after MCS's purchase of the '313 and '576 Patents), NextCard, LLC and Warbler were formed by CPMG, and, on the same day, MCS purportedly assigned the rights in the '313 and '576 Patents through Warbler to

-3-

NextCard, LLC. NextCard, LLC is controlled by Warbler Technologies, L.P., which is a Limited Partnership in Texas that is also controlled by CPMG, Inc.

12.     On August 16, 2007, NextCard, LLC sued several companies in the United States District Court for the Eastern District of Texas ("the Texas Court"), asserting infringement of the '313 Patent. NextCard, LLC alleges that the defendants therein have infringed and/or continue to infringe the '313 Patent by incorporating online chat features into their internet credit card offerings/applications in accordance with methods and systems claimed by the '313 Patent. That case is now pending before Judge Ward as Civil Action No. 2:07-cv-354 (TJW) ("the Texas Litigation").

13.     On March 18, 2008, the '576 Patent was issued by the United States Patent and Trademark Office as a continuation of the '313 Patent. On April 9, 2008, NextCard, LLC amended its Complaint in the Texas Litigation to add a count for infringement of the '576 Patent.

14.     On April 30, 2008, NextCard filed suit against LivePerson in the United States District Court for the Eastern District of Texas, accusing LivePerson's technology of infringement of the NextCard Patents.

15.     LivePerson denies that any of its products infringe the '313 and '576 Patents and further contends that the '313 and '576 Patents are invalid for failure to comply with one or more of the requirement of Title 35, United States Code, including, but not limited to, 35 U.S.C. §§ 102, 103, and 112.

16.     The Texas Litigation, and the Texas suit against LivePerson itself, have placed a cloud over LivePerson's technology. The litigation in Texas is likely to cause confusion in the marketplace as to LivePerson's ability to provide software without its customers becoming the

- 4 -

subject of indiscriminate patent litigation in Texas, and clouds LivePerson's ability to provide hassle-free services to its customers, and to market and sell its technology to new customers.

17.     There now exists a current and justiciable controversy concerning whether the '313 and '576 Patents are infringed and invalid. This is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. LivePerson thus seeks a declaration from this Court resolving the present controversy.

### REQUEST FOR RELIEF

WHEREFORE, LivePerson prays for judgment against the CPMG entities as follows:

(a)     Declaring that the '313 and '576 Patents are not infringed by LivePerson's products, and are invalid;

(b)     Awarding LivePerson its costs and disbursements in this action, including its reasonable attorneys' fees; and

(c)     Granting LivePerson such other relief as the Court deems just and equitable.

### DEMAND FOR JURY TRIAL

LivePerson demands a trial by jury on all issues so triable.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

---

Melanie K. Sharp (No. 2501)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com


Steven M. Bauer
Kimberly A. Mottley
Todd A. Gerety
Melissa A. Ganz[*]
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600
(617) 526-9600


Dated: _____          *Attorneys for Plaintiff LivePerson, Inc.*

---

[*]    Admission *pro hac vice* pending.

# EXHIBIT A

US006718313B1

(12) **United States Patent**
Lent et al.

(10) Patent No.: **US 6,718,313 B1**
(45) **Date of Patent:** **Apr. 6, 2004**

(54) **INTEGRATING LIVE CHAT INTO AN ONLINE CREDIT CARD APPLICATION**

(75) Inventors: **Jeremy Lent**, San Francisco, CA (US); **Timothy Coltrell**, San Francisco, CA (US); **Munnamgi S. Reddi**, San Francisco, CA (US); **Christopher O. Tracy**, San Francisco, CA (US); **TaChung Huang**, San Francisco, CA (US)

(73) Assignee: **Next Card, Inc.**, San Francisco, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 653 days.

(21) Appl. No.: **09/595,556**

(22) Filed: **Jun. 15, 2000**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 09/185,201, filed on Nov. 3, 1998, now Pat. No. 6,405,181, and a continuation-in-part of application No. 09/185,878, filed on Nov. 3, 1998, and a continuation-in-part of application No. 09/185,000, filed on Nov. 3, 1998, now Pat. No. 6,324,524.

(51) **Int. Cl.**[7] ............................ **G06F 17/60**; G09G 5/00

(52) **U.S. Cl.** ............................ **705/38**; 705/35; 345/749; 345/758

(58) **Field of Search** ..................... 705/35, 38; 345/749, 345/758

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,372,507 | A | * | 12/1994 | Goleh ......................... 434/118 |
| 5,764,916 | A | * | 6/1998 | Busey et al. ................. 709/227 |
| 5,930,776 | A | * | 7/1999 | Dykstra et al. ............... 705/38 |
| 5,966,699 | A | * | 10/1999 | Zandi ......................... 705/38 |
| 6,105,007 | A | * | 8/2000 | Norris ......................... 705/38 |
| 6,138,139 | A | * | 10/2000 | Beck et al. ................. 709/202 |
| 6,144,991 | A | * | 11/2000 | England ....................... 709/205 |
| 6,167,395 | A | * | 12/2000 | Beck et al. ................... 707/3 |
| 6,289,319 | B1 | * | 9/2001 | Lockwood .................... 705/35 |
| 6,324,524 | B1 | * | 11/2001 | Lent et al. ................... 705/38 |
| 6,405,181 | B2 | * | 6/2002 | Lent et al. ................... 705/38 |
| 6,449,646 | B1 | * | 9/2002 | Sikora et al. ................ 709/226 |
| 6,516,421 | B1 | * | 2/2003 | Peters ......................... 713/502 |
| 6,535,492 | B2 | * | 3/2003 | Shtivelman ................. 370/270 |
| 2002/0016731 | A1 | * | 2/2002 | Kupersmit ................... 705/10 |

FOREIGN PATENT DOCUMENTS

WO          WO-9944152       *   9/1999

OTHER PUBLICATIONS

Anon., "AnswerSoft Announces Concerto; First to Combine Call Center Automation with Power of Web," Business Wire, Feb. 3, 1997.*

Emigh, J., "AnswerSoft Unveils Concerto for Web–Based Call Centers Feb. 5, 1996," Newsbytes, Feb. 5, 1997.*

Grigonis, R., "Webphony—It's not Just Callback Buttons Anymore," Computer Telephony, p. 92, Dec., 1997.*

Wagner, M., "Caring for Customers," Internet World, Sep. 1, 1999.*

Sweat, J., "Human Touch—A New Wave of E–Service Offerings Blends the Web, E–Mail, and Voice Bringing People back into the Picture," Inforamtionweek, Oct. 4, 1999.*

Kirkpatrick, K., "Electronic Exchange 2000, The, " Computer Shopper, Nov. 1999.*

Anon., "InstantService.com Teams with Island Data to provide Integrated Solution for Online Customer Response," Business Wire, May 22, 2000.*

Kersnar, S., "Countrywide Offers Proprietary Technology for Online Wholesale Lending," National Mortgage News, vol. 24, No. 38, p. 8, Jun. 5, 2000.*

* cited by examiner

Primary Examiner—Nicholas David Rosen
(74) Attorney, Agent, or Firm—Van Pelt & Yi LLP

(57) **ABSTRACT**

A system and method are described for providing on line chat help to an applicant. An application identifier and a chat applet are inserted into a web page. The web page is sent to the applicant. The chat applet is configured to determine based on an event that the applicant could benefit from online chat and, upon such determination, to send a request to a chat server for a connection and to include the application identifier with the request.

**10 Claims, 14 Drawing Sheets**





**FIG. 1**



**FIG. 2**



**FIG. 3**



**FIG. 4**



**FIG. 5**



**FIG. 6**



**FIG.7A**

INPUT TABLE

O APR TOO HIGH

O LONGER INTRO

O WANT INTRO

O LINE TOO LOW FOR PURCHASES
O LINE TOO LOW FOR BALANCE TRANSFER

BT AMOUNT $_,___     REQUESTED CREDIT LIMIT $_,___

☐ GET COUNTER OFFER

**FIG. 7B**



**FIG. 8**



**FIG.9**



**FIG. 10**



**FIG. 11**



**FIG. 12**



**FIG.13**

US 6,718,313 B1

1

# INTEGRATING LIVE CHAT INTO AN ONLINE CREDIT CARD APPLICATION

## CROSS REFERENCE TO RELATED APPLICATIONS

This application claims priority to U.S. patent application Ser. No. 09/185,201 entitled: "Method And Apparatus For Real Time On Line Credit Approval", filed Nov. 3, 1998, now U.S. Pat. No. 6,405,181 which is herein incorporated by reference; and U.S. patent application Ser. No. 09/185,878 entitled: "Method And Apparatus For A Verifiable On Line Rejection Of An Applicant For Credit", filed Nov. 3, 1998, now published as U.S. Patent Application Publication 2002/0052833, which is herein incorporated by reference; and U.S. patent application Ser. No. 09/185,000 entitled: "Method And Apparatus For An Account Level Offer Of Credit And Real Time Balance Transfer", filed Nov. 3, 1998 now U.S. Pat. No. 6,324,524 which is herein incorporated by reference. This application is related to U.S. patent application Ser. No. 09/595,601 filed concurrently herewith entitled: "Implementing A Counter Offer For An On Line Credit Card Application" which is herein incorporated by reference.

## FIELD OF THE INVENTION

The present invention relates generally to online transactions. More specifically, integrating live chat into an online credit card application is disclosed.

## BACKGROUND OF THE INVENTION

Considerable marketing effort is involved in getting an applicant to log on to a credit card website and apply for a credit card. In addition to advertising, credit cards that allow a user to apply for a card over the Internet in some cases pay significant referral fees to a party that refers an applicant to the site. Given the effort and cost required to attract an applicant to begin an on-line credit card application, it is very important that, if at all possible, the applicant be encouraged to complete the process.

Various reasons exist why an applicant might cancel out of a credit card application that has already been started. The applicant may become confused during the process and may cancel when the applicant is unable to discern how to follow certain instructions. Also, an applicant may reject an offer for credit because of some attribute of the credit offer that the applicant finds unacceptable. Whatever the reason that the applicant does not complete the process and receive the credit card, the loss to the marketer of the credit card is significant. It would be very helpful if an on line credit card application system could be improved to reduce the number of applicants that stop the process short of obtaining a credit card.

## SUMMARY OF THE INVENTION

An on line credit card application system that provides an integrated live chat to help the applicant during an application process is disclosed. In one embodiment, an application that initiates a chat session with a chat server is provided to the applicant's browser. When an event that occurs that indicates that the applicant may be helped by chatting with a customer service agent on line, a chat application contacts the chat server and places the applicant in a queue to chat with the next available customer service agent. In one embodiment, the chat application on the applicant's browser does not send detailed information about the application to the chat server. Instead, the chat application sends an applicant identifier to the chat server. The chat server then accesses the application server that has been handling the application session with the applicant and uses the applicant identifier to access information about the application.

It should be appreciated that the present invention can be implemented in numerous ways, including as a process, an apparatus, a system, a device, a method, or a computer readable medium such as a computer readable storage medium or a computer network wherein program instructions are sent over optical or electronic communication links. Several inventive embodiments of the present invention are described below.

In one embodiment, a method of providing on line chat help to an applicant includes inserting an application identifier and a chat applet into a web page. The web page is sent to the applicant. The chat applet is configured to determine upon the occurance of an event that the applicant could benefit from online chat and, upon such determination, to send a request to a chat server for a connection and to include the application identifier with the request.

In one embodiment, a method of providing on line chat help to an applicant includes receiving a request for a chat connection and a corresponding application identifier. A chat connection is established with the client. The applicant identifier is used to obtain information from a remote server about an application that the applicant is in the process of completing.

In one embodiment, a method of providing on line chat help to an applicant includes receiving a web page including an applicant identifier. It is determined that the applicant could benefit from online chat and a request is sent to a chat server for a connection wherein the request includes the application identifier.

In one embodiment, an application server for providing on line chat help to an applicant includes a processor configured to insert an application identifier and a chat applet into a web page and an applicant interface configured to send the web page to the applicant. The chat applet is configured to determine based on an event that the applicant could benefit from online chat and, upon such determination, to send a request to a chat server for a connection and to include the application identifier with the request.

In one embodiment, a chat server for providing on line chat help to an applicant includes an applicant interface configured to receive a request for a chat connection and a corresponding application identifier and to establish a chat connection with the client. A server interface is configured to use the applicant identifier to obtain information from a remote server about an application that the applicant is in the process of completing.

In one embodiment, an applicant client for obtaining on line chat help includes an application server interface configured to receive a web page including an applicant identifier. A processor is configured to determine that the applicant could benefit from online chat. A chat interface is configured to send a request to a chat server for a connection wherein the request includes the application identifier.

These and other features and advantages of the present invention will be presented in more detail in the following detailed description and the accompanying figures which illustrate by way of example the principles of the invention.

## BRIEF DESCRIPTION OF THE DRAWINGS

The present invention will be readily understood by the following detailed description in conjunction with the

US 6,718,313 B1

3

accompanying drawings, wherein like reference numerals designate like structural elements, and in which:

FIG. 1 is a block diagram illustrating a system for providing real time chat help to an applicant and generating a counter offer when appropriate.

FIG. 2 is a flowchart illustrating a general process implemented on the chat server.

FIG. 3 is a flow chart illustrating a general process implemented on the web server for sending dynamic web pages to the applicant.

FIG. 4 is a flow chart illustrating a process implemented on a browser for establishing a connection to a chat server.

FIG. 5 is a flowchart illustrating a typical process implemented on the browser for the purpose of initializing chat when the user does not respond to a downloaded web page in a certain period of time.

FIG. 6 is a flow chart illustrating a process implemented on a chat server when a chat session is requested by a browser as described above.

FIG. 7A is a flow chart illustrating a process implemented at a customer service agent for the purpose of supporting the chat session.

FIG. 7B is a screen shot illustrating a display of offer terms used in one embodiment for determining which terms are unacceptable.

FIG. 8 is a flow chart illustrating in detail a process implemented in step 712 for obtaining the unacceptable terms of an offer from an applicant.

FIG. 9 is a flow chart illustrating the process implemented on the counter offer server when more than one term is selected as being unacceptable to the applicant.

FIG. 10 is a flow chart illustrating an example process for generating a counter offer.

FIG. 11 is a flow chart illustrating a process implemented on a counter offer server to generate and confirm a new offer for display to the applicant.

FIG. 12 is a flowchart illustrating a process implemented on the web server portion of the application server for the purpose of displaying a new counter offer to the applicant.

FIG. 13 is a flow chart illustrating a process used in one embodiment to automatically generate a refresh on the applicant's browser.

## DETAILED DESCRIPTION

A detailed description of a preferred embodiment of the invention is provided below. While the invention is described in conjunction with that preferred embodiment, it should be understood that the invention is not limited to any one embodiment. On the contrary, the scope of the invention is limited only by the appended claims and the invention encompasses numerous alternatives, modifications and equivalents. For the purpose of example, numerous specific details are set forth in the following description in order to provide a thorough understanding of the present invention. The present invention may be practiced according to the claims without some or all of these specific details. For the purpose of clarity, technical material that is known in the technical fields related to the invention has not been described in detail so that the present invention is not unnecessarily obscured.

In one embodiment, an applicant interacts with a web server and receives a web page containing offers of credit that may be accepted by the applicant. At any point during the interaction with the web server, an online chat button or

4

process may be activated that sends an applicant ID to a chat server and opens a chat window so that the applicant can receive help. In one embodiment, the help takes the form of the applicant describing why a displayed offer is unacceptable and a counter offer being generated for the applicant.

FIG. 1 is a block diagram illustrating a system for providing real time chat help to an applicant and generating a counter offer when appropriate. A web server 102 is in communication with an application database 103. Application database 103 is used to store information about the applicant and the application. The information stored includes information provided by the applicant as well as information derived from various credit bureaus (not shown) that are accessed by the web server either directly or indirectly. Each application included in the application database is referenced by an applicant identifier that can be used to identify the application.

Web server 102 provides a web page 104 to a browser 106. Typically, the web server and browser communicate over the Internet using HTTP. Web page 104 is shown for the purpose of illustration as an offer web page that includes three offers made to the applicant for a credit card as well as an on-line chat button that may be activated by the applicant to obtain help or to discuss the offers. Other web pages provided by the web server include forms that the applicant fills out to provide information so that a credit report may be obtained and an offer of credit generated based on the applicant's personal information.

An online application process for a credit card is described in detail in U.S. patent application Ser. No. 09/185,201, entitled: "Method And Apparatus For Real Time Online Credit Approval", filed Nov. 3, 1998, which was previously incorporated by reference; and U.S. patent application Ser. No. 09/185,878, entitled: "Method And Apparatus For A Verifiable Online Rejection Of An Applicant For Credit", filed Nov. 3, 1998, which was previously incorporated by reference; and U.S. patent application Ser. No. 09/185,000, entitled: "Method And Apparatus For An Account Level Offer Of Credit And Real Time Balance Transfer", filed Nov. 3, 1998 which was previously incorporated by reference.

It should be noted that the process described herein will refer to the online credit application as being an application for a credit card. The process can also be applied to other offers of credit including an offer of instant credit for the purpose of consummating a single pending online transaction. In addition, the system and processes disclosed herein may be applied to other types of business transactions over the Internet. However, the particular architecture and processes described are especially useful for processing online credit card applications and the benefit of their application to online credit card applications is particularly strong.

Web server 102 and browser 106 continue to interact in a standard fashion with web pages being provided by web server 102 and the applicant filling out information as needed. At some point, an applicant may activate the online chat button included on the web page and a chat window 104a opens up for the chat application and a connection is established with a chat server 108. As is described further below, the chat window is opened and the connection with chat server 108 may be initiated by events other than just the activation of the online chat button. Chat server 108 implements a standard chat environment such as the chat environment available from e-share. Other chat environments may be used that include the ability to pass a variable to the chat server from the browser.

US 6,718,313 B1

5

The various servers shown in FIG. 1 may be implemented on any typical platform such as a Windows NT platform, a Linux platform, or other UNIX platform or other commercially available web server platform. The browser may be implemented on any system such as a Macintosh or a PC which are readily available.

In some embodiments, the chat process is initiated when the applicant cancels out of the application. In other embodiments, the chat process is initiated when the applicant lingers on a page for an amount of time that exceeds a threshold. In other embodiments, the chat process is initiated when the applicant's response to a request for information is somehow inadequate. For example, it may be detected that the answers provided by the applicant are incomplete or in the wrong form. The chat process may be initiated for the purpose of providing the applicant more detailed instructions or pointing out to the applicant the information that is required to complete the application.

In addition to opening the chat connection to chat server 108, browser 106 also sends the applicant identifier to the chat server. The chat server then uses the applicant identifier to access information about the application in the application database. It should be noted that the applicant identifier may be used as an application identifier in circumstances such as would be expected for an online credit card application where there is one and only one application per applicant. In other embodiments, an application identifier that is unique for each application is assigned and used. In this description, wherever an applicant identifier is mentioned, an application identifier could also be used.

Sending the applicant identifier to the chat server instead of sending the current web page or other information to the chat server is preferable from a security standpoint because the applicant identifier can only be used to obtain information about the application by accessing application database 103. In addition, preferably, the applicant identifier is encrypted, adding a further level of security.

In the embodiment shown, chat server 108 does not have a direct link to the application database 103. Chat server 108 is connected to a customer service agent 110. Customer service agent 110 handles the chat session, responding to requests made by the applicant. Other customer service agents 112 and 114 are also standing by to handle other chat sessions generated by chat server 108. In one embodiment, requests made to the chat server are queued and the next available customer service agent is assigned to the first chat session request found in the queue.

Customer service agent 110 is connected to a counter offer server that is connected to application database 103. By passing the applicant identifier from the chat server to the customer service agent to the application database through the counter offer server, information about the applicant can be obtained from the application database. Connections from the customer service agent to the counter offer server and from the counter offer server to the application database may be made over the Internet or may be a dedicated secure connection.

In the embodiment shown, which is adapted specifically for implementing a counter offer strategy as is described below, a separate web server 102 and counter offer server 120 are shown. This divides the processing demand generated by normal communication with a browser from the processing demand generated by interaction initiated by chat with a customer service agent. This architecture is particularly useful since the two types of traffic are isolated. In other embodiments, the functions of the web server and the

6

counter offer server are performed by a single application server. Dashed box 122 represents a single application server that may include both the web server and the counter offer server. In general, the term application server is used to describe either the web server and counter offer server operating collectively or to describe a single server performing both the function of the web server and the counter offer server.

Additionally, in a system where a counter offer is not generated, counter offer server 120 may be referred to as a customer service agent server or some other term describing its primary function. The important point is that both the web server and the counter offer server both access the application database to obtain information about the status of the application. In addition, both the web server and the counter offer server may write data to the application database in some embodiments. The common access to the application database enables the customer service agent to obtain information about the status of the application using the applicant identifier received through the chat server and also allows the customer service agent to alter the status of the application based on information received from the applicant through the chat server by sending that information to the counter offer server for posting to the application database.

Thus, an applicant provides information to database 103 via the Internet using web pages in a standard manner. In addition, the applicant may communicate via chat with a customer service agent who also is connected to the application database and may change the state of the application according to information received by the applicant via chat. In the embodiment shown, the customer service agent interacts with a special purpose counter offer server that uses the information provided by the applicant to determine a counter offer using information in the application database. The counter offer is stored in the application database and provided to the applicant's browser via the web server. As noted above, the counter offer server and the web server may be implemented on a single machine referred to as the application server. The various processes operating on the application server, the chat server and the browser are described below for the purpose of illustrating how the chat window may be activated and a counter offer generated for the applicant.

FIG. 2 is a flowchart illustrating a general process implemented on the chat server. The process starts at 200. In a step 202, the applicant identifier is obtained from a browser. In a step 204, the chat server validates the applicant information by communicating with the application database. In some embodiments, the chat server may communicate directly with the application database. In other embodiments, as shown in FIG. 1, the chat server communicates with the application database through an application server. After the applicant information is validated, a response is received from the applicant via chat. Based on the response, the applicant account is configured in a step 208 and the process ends at 210.

FIG. 3 is a flow chart illustrating a general process implemented on the web server for sending dynamic web pages to the applicant. The dynamic web pages differ from a standard web page used to interact with the applicant because they contain a page object used to initiate a chat section with a chat server upon the occurrence of certain events. The page object includes an applicant identifier that is passed to the chat server. The process starts at 300 when chat is initiated based on a user action. As described above, the user action may be the activation of a help or chat button or the user canceling out of the application. Chat may also

US 6,718,313 B1

7

be activated by user inaction when a response is not received or by an improper action taken by a user resulting in an invalid response. In a step 302, the state of the application is determined. Next, in a step 304, the content of the page to be sent to applicant is determined based on the state of the application. Next, in a step 306, the applicant identifier is inserted into a page object. In a step 308, the page is sent to the applicant browser and the process ends at 310.

FIG. 4 is a flow chart illustrating a process implemented on a browser for establishing a connection to a chat server. The process starts at 400. In a step 402, a link to the chat server is activated either directly by the user or as a result of the occurrence of an event as described above. In a step 404, a connection is established to the chat server. Typically the connection uses a protocol such as HTTPS. Next, in a step 406, the applicant identification is sent to the chat server and the process ends at 408.

FIG. 5 is a flowchart illustrating a typical process implemented on the browser for the purpose of initializing chat when the user does not respond to a downloaded web page in a certain period of time. The process starts at 500. In a step 502, a timer is initialized. Control is then transferred to 504 where periodic checks are made to determine whether the timer has expired. If a valid user input is received, control is transferred to a step 506 and the timer is reset. If the timer expires, then control is transferred to a step 508 and a chat session is initiated as described above. The process then ends at 510.

FIG. 6 is a flow chart illustrating a process implemented on a chat server when a chat session is requested by a browser as described above. The process starts at 600 when the request is received. The request for a chat session includes both a connection request and the applicant identifier. In a step 602, the request is put into a queue and the applicant identifier is stored in a manner that associates it with the request. In some embodiments, the chat server uses the applicant identifier while the request is still in the queue to obtain the application information from the application database. In other embodiments, the applicant identifier is not used to access the application database until the request is assigned to a customer service agent. This insures that when the customer service agent accesses the information about the application, the information is up to date. In a step 604, a status message is sent to the user and the system then waits for an available customer service agent. So long as no customer service agent is available, the system continues to wait at 604. When a customer service agent becomes available, control is transferred to a step 606 and the application information is sent to the customer service agent. The customer service agent then uses the application information to discuss the state of the application with the applicant.

FIG. 7A is a flow chart illustrating a process implemented at a customer service agent for the purpose of supporting the chat session. The process may be implemented on a client machine accessed by the customer service agent or may be implemented on the application server which may include a dedicated counter-offer server. The process starts at 700. In a step 702, the customer service agent notifies the chat server that it is available. Next, in a step 704, the applicant identifier is received from the chat server. In a step 706, the applicant record in the application database is accessed using the applicant identifier as mentioned above. The application record may be accessed either directly or via the application server. In a step 708, the chat server displays the application data retrieved using the applicant identifier to the customer service agent. In one embodiment, the application

8

data is displayed by displaying the same web page that the applicant is viewing. In addition, the web page may be augmented with other information about the status of the application. Alternatively, a completely separate application information screen may be displayed to the customer service agent.

In an embodiment where a counter offer is generated by the customer service agent, a display is provided showing various offer terms that the applicant may indicate are not acceptable in the chat between the applicant and the customer service agent. The customer service agent may check one or more of the terms and the terms checked by the customer service agent are sent to the counter offer server to be used in generating a counter offer. The terms or attributes of the offer that the applicant considers to be unacceptable are obtained in a step 712 and the initial process for receiving applicant information and providing information to the counter offer server ends at 714.

It should be noted that a number of different methods of obtaining the unacceptable terms from the applicant may be used. In one embodiment, as described above, a set of offer terms are shown to the customers service agent and the customer service agent selects terms identified by the applicant in chat that are unacceptable. In other embodiments, a display of terms is provided to the applicant and the applicant picks the unacceptable terms with the aid of the customer service agent. In yet another embodiment, the chat generated by the applicant is automatically analyzed by a program which generates the list of unacceptable terms for the counter offer server.

FIG. 7B is a screen shot illustrating a display of offer terms used in one embodiment for determining which terms are unacceptable. The display includes indications that interest rate attributes are not acceptable, indicating that the annual percentage rate or long term interest rate is too high, a longer introductory interest rate is desired, or an introductory interest rate is desired. The introductory interest rate is a very low rate offered for a short period of time when the account is established, also referred to as a teaser rate. In addition, buttons are provided for the customer service agent to check whether the credit limit is too low either for purchases or for balance transfers. In addition, the customer service agent can fill in a balance transfer amount that the applicant wants to transfer as well as a requested credit limit. Finally, a box is provided for the customer service agent to check and send the data to the counter offer server.

FIG. 8 is a flow chart illustrating in detail a process implemented in step 712 for obtaining the unacceptable terms of an offer from an applicant. The process starts at step 800. In a step 802, a chat message is received from a user indicating a term that the user would like to change. The message is displayed to the customer service agent along with a checklist as shown in FIG. 7b illustrating terms to change. As noted above, the checklist may also be displayed and checked by the applicant. In a step 806, an input is received from the customer service agent of a selected term of an offer that the applicant would like to change. In a step 808, the term is sent to the counter offer server and the process ends at 810.

FIG. 9 is a flow chart illustrating the process implemented on the counter offer server when more than one term is selected as being unacceptable to the applicant. In one embodiment, a counter offer is selected based on only one unacceptable term being changed. This simplifies the process of determining a counter offer since changing two terms is somewhat more complex. Therefore, a hierarchy of terms

US 6,718,313 B1

9

that may be changed by the applicant is provided and the highest priority term selected is used to determine the counter offer. All of the unacceptable terms are still transmitted to the counter offer server and recorded for the purpose of data gathering and analysis of the system. The process starts at **900**. In a step **902**, multiple unacceptable terms or attributes of the offer are received by the counter offer server. Next, in a step **904**, the highest priority term or attribute that is unacceptable is determined. Next, in a step **906**, the offer is adjusted and a counter offer is determined based on the highest priority term. The process ends at **908**.

Many different methods may be used by the counter offer server to generate a counter offer based on attributes or terms identified by the applicant as being unacceptable. In one embodiment, a number of potential offers are identified based on the applicant information provided and an assessment of the risk associated with extending credit to the applicant. Some of the generated offers are withheld while others are displayed to the applicant. A number of schemes may be used to decide which offers are displayed and which offers are withheld. Some methods may include a statistical selection or a selection according to a marketing scheme designed to increase the rate of acceptance. It may also be the case that the best offer is withheld and kept in reserve to use as a counter offer. In general, certain potential offers are withheld.

The identification by the applicant of an unacceptable term is used by the counter offer server to identify a better offer for the counter offer. In one embodiment, offer strategies are identified and the counter offer is identified by simply looking up an offer strategy associated with the applicant and the identified unacceptable term. In one embodiment, an offer strategy may include a set of offers shown to the applicant as well as offers that are not displayed and that correspond to various unacceptable terms. When an unacceptable term is identified, the offer corresponding to the strategy and the unacceptable term is used as the counter offer.

In some embodiments, the counter offer strategy is dependent on characteristics of the applicant. For example, the applicant may be classified as a "surfer" or "non-surfer". A "surfer" is a person who shifts or surfs balances among credit cards, taking advantage of low teaser rates. A determination that an applicant is a surfer is made based on an analysis of the applicant's credit report. A counter offer strategy designed for such an applicant may adopt the strategy of extending the period of an introductory rate if requested by the applicant, but requiring the applicant to make a certain number of purchases or not transfer the balance for a certain period of time.

In general, added terms and conditions such as purchase requirements or a length of time that a balance may not be transferred from the card may be added to counter offers for the purpose of creating a perceived barrier to receive the counter offer. Such a barrier or condition prevents the applicant from deciding that the first offer should always be rejected. In some embodiments, the conditions are determined based on characteristics of the applicant. As described above, surfers may receive balance transfer time restrictions.

In addition to selecting a withheld offer based on a pre-determined offer scheme, the counter offer server may also recalculate a customized offer based on the identification of an unacceptable term and an actual requested term by the applicant. For example, the applicant may express that the credit limit is too low, either for a desired balance transfer that the applicant wants to make or new purchases.

10

The amount of the credit limit minus the amount of the balance transfer is referred to as the amount of credit that is "open to buy". The information sent to the counter offer server may include a requested credit limit and a requested balance transfer amount. From that information, the counter offer server can determine that the offer credit limit is too low either for the balance transfer requested or for the amount that the applicant wants open to buy. To minimize risk, it is desirable that the credit limit be as low as possible. Therefore, it is desirable not to simply select a withheld offer with a higher credit limit, but instead to customize an offer that conforms to the applicant's request but does not exceed the applicant's request.

Accordingly, a new credit limit may be calculated that incorporates the requested balance transfer and the amount that the applicant wants open to buy. The calculated new offer is checked versus the risk profile of the user and it is verified that the higher credit limit is appropriate for the user. Any of the various techniques well known in the art of assigning credit may be used to assess the risk of the applicant and determine an appropriate upper credit limit. Significantly, the counteroffer in the case of a requested higher credit limit is specifically customized for the applicant based on what the applicant requests. In general, any counter offer provided is based on the applicant's identification of an unacceptable term. In some embodiments, if no counter offer is available that improves an unacceptable term identified by the applicant, then a message is returned to the applicant either directly or through the chat interface that indicates that no counter offer can be provided at that time. For example, in one embodiment, the offer strategy, may include an offer with the best annual percentage rate available in the set of offers initially displayed to the applicant. In such a case, if the applicant identifies the annual percentage rate as the unacceptable term, then no counter offer improving that term can be generated.

FIG. **10** is a flow chart illustrating an example process for generating a counter offer. The process starts at **1000**. In a step **1010**, the counter offer server receives the term that is to be changed. Next, in a step **1020**, it is determined whether the term is the credit limit or not. If the term is not the credit limit, then control is transferred to a step **1030** and a precomputed offer that was withheld is determined for display. The counter offer determination process then ends at **1040**. If the term is the credit limit, then control is transferred to a step **1050** and it is determined whether the credit limit is too low for a requested balance transfer or for new purchases (open to buy). If the credit limit is too low for new purchases, then control is transferred to a step **1060** and the required balance transfer and credit limit are adjusted if that is allowed by the scheme being used to assign credit based on an assessment of the applicant's risk.

If the credit limit is too low for a requested balance transfer, then control is transferred to a step **1070** and the credit limit is adjusted based on the balance transfer requested if allowed by the credit line assignment being used. After the credit limit is adjusted in steps **1060** or **1070**, the counter offer is defined and the counter offer determination process ends at **1080**. Whether a precomputed offer is determined for display in **1030** or the credit limit is recomputed in step **1060** or **1070**, if no better offer can be generated, then a message noting that no better offer can be generated is sent either to the chat server or to the applicant directly.

Once a counter offer has been defined or it has been determined that no counter offer that improves the unacceptable terms can be generated, the applicant is notified of

US 6,718,313 B1

**11**

the counter offer terms. In different embodiments, notification may be accomplished in various ways. For example, in one embodiment, a new offer page is generated in the application server based on data written to the application database by the application server. In the embodiment where the application server is split into a web server and a counter offer server, the counter offer server writes data to the application database and the web server generates a counter offer page based on the data written to the application database. In addition, the application server also provides information to the chat server indicating what counter offer, if any, has been generated. The customer service agent then discusses the counter offer with the applicant via the chat interface. In order to view the counter offer page generated by the web server, the applicant is asked to refresh his browser. Refreshing the browser causes the offer page to be requested from the web server and the web server responds with the counter offer page. In one embodiment, a button labeled "view offer" is provided on the displayed page. When the button is selected, the page is downloaded again and any changes are then viewed by the user.

In other embodiments, the displaying of the counter offer page to the applicant is handled somewhat differently. In one embodiment, the chat server enables the display of the page through the applicant's browser automatically, without requiring the applicant to refresh the screen. This can be accomplished in a variety of ways. In one embodiment, the chat server writes a variable to a memory location that the browser checks periodically. When the browser checks the location and finds a variable indicating that the counter offer page should be downloaded, the browser automatically refreshes itself. The applet that enables the browser to check the location and refresh itself may be used in some cases but not others. When such an applet is not used, the process of instructing the applicant through the chat interface to refresh his own browser or to select a button to view the offer may be implemented.

FIG. 11 is a flowchart illustrating a process implemented on a counter offer server to generate and confirm a new offer for display to the applicant. The process starts at **1100**. In a step **1110**, the counter offer server receives a chat-generated term to change. As described above, the term can be identified based on chat by a customer service agent or the term can be automatically determined by analysis of the chat provided by the applicant or the term can be identified using a pick list provided to the applicant. In a step **1120**, a new offer is selected from an offer set included in the offer strategy being used for the applicant. As described above, in some embodiments, a new offer is actually calculated based on information provided by the applicant such as a requested credit limit. Next, in a step **1130**, the new offer is displayed to the customer service agent. The customer service agent then communicates with the applicant about the new offer to determine the applicant's interest. The customer service agent then confirms to the counter offer server that the new offer is to be shown to the applicant. The confirmation is received in step **1140** and in a step **1150**, the counter offer server confirms the new offer in the data base so that it is ready to be displayed when the applicant's browser refreshes. The process then ends at **1160**.

In some embodiments, the new offer is confirmed in the database concurrent with it being displayed to the customer service agent. Then, whenever the applicant's browser refreshes, the counter offer will be displayed. In some embodiments, it is desired that the display of the counter offer not be enabled until customer service agent has an opportunity to chat with the applicant about the new offer and confirm that display is appropriate.

**12**

FIG. 12 is a flowchart illustrating a process implemented on the web server portion of the application server for the purpose of displaying a new counter offer to the applicant. The process starts at **1200**. In a step **1210**, the web server receives a refresh request from the applicant's browser. Next, in a step **1220**, the counter offer parameters are retrieved from the application database and a web page including the counter offer is generated. Then in a step **1230**, the counter offer page is sent to the browser. The process ends at **1240**.

FIG. 13 is a flow chart illustrating a process used in one embodiment to automatically generate a refresh on the applicant's browser. The process starts at **1300**. In a step **1310**, a request is received for a different offer from the customer service agent. The new offer is determined in a step **1320**. The terms of the new offer are communicated to the customer service agent in step **1330**. In a step **1340**, the customer service agent describes the offer to the user. Then, in a step **1350**, the customer service agent receives an indication that the user wants to view the new offer. The customer service agent then sends a message to the user in step **1360** that causes a refresh to be activated. As described above, the message may include writing a certain value to a defined memory location that is periodically examined by the browser for the purpose of determining whether a refresh has been requested by the customer service agent. Once one refresh is generated in this manner, the value that the browser looks for may be incremented so that each time it finds the same value, a new refresh is not generated. The process ends at **1370**.

A system and method for activating a chat interface with a customer service agent that has access to information about an application for credit has been described. In one embodiment, the chat interface is used to obtain information about why an applicant is rejecting an offer of credit and to identify unacceptable terms. Those unacceptable terms are communicated to a counter offer server and the counter offer server generates a new offer that improves the unacceptable term. The new offer is communicated to the applicant using the chat interface and a web page showing the new offer with an opportunity to accept the offer is displayed to the applicant when the applicant's browser is refreshed.

Although the foregoing invention has been described in some detail for purposes of clarity of understanding, it will be apparent that certain changes and modifications may be practiced within the scope of the appended claims. It should be noted that there are many alternative ways of implementing both the process and apparatus of the present invention. Accordingly, the present embodiments are to be considered as illustrative and not restrictive, and the invention is not to be limited to the details given herein, but may be modified within the scope and equivalents of the appended claims.

What is claimed is:

1. A method of providing on line chat help to an applicant comprising:

inserting an application identifier and a chat applet into a web page; and

sending the web page to the applicant;

wherein the chat applet is configured to determine based on an event that the applicant could benefit from online chat and, upon such determination, to send a request to a chat server for a connection and to include the application identifier with the request;

wherein the event is a period of time expiring without an action from the applicant.

2. A method as recited in claim **1** wherein the applicant is applying for credit.

US 6,718,313 B1

13

**3**. A method as recited in claim **1** wherein the applicant is applying for a credit card.

**4**. A method of providing on line chat help to an applicant comprising:

inserting an application identifier and a chat applet into a web page; and

sending the web page to the applicant;

wherein the chat applet is configured to determine based on an event that the applicant could benefit from online chat and, upon such determination, to send a request to a chat server for a connection and to include the application identifier with the request;

wherein the event is a period of time expiring without a complete response from the applicant to a request provided to the applicant.

**5**. A method of providing on line chat help to an applicant comprising:

receiving a request for a chat connection and a corresponding applicant identifier associated with the applicant;

establishing a chat connection with a client associated with the applicant; and

using the applicant identifier to obtain information from a remote server about an application that the applicant is in the process of completing;

wherein the applicant identifier is used to access the application that the applicant is in the process of completing while the request for a chat connection is waiting in a queue.

**6**. An application server for providing on line chat help to an applicant comprising:

a processor configured to insert an applicant identifier and a chat applet into a web page; and

an applicant interface configured to send the web page to the applicant; wherein the chat applet is configured to determine based on an event that the applicant could benefit from online chat and, upon such determination, to send a request to a chat server for a connection and to include the applicant identifier with the request;

wherein the event is a period of time expiring without an action from the applicant.

**7**. An application server for providing on line chat help to an applicant comprising:

a processor configured to insert an applicant identifier and a chat applet into a web page; and

an applicant interface configured to send the web page to the applicant; wherein the chat applet is configured to

14

determine based on an event that the applicant could benefit from online chat and, upon such determination, to send a request to a chat server for a connection and to include the applicant identifier with the request;

wherein the event is a period of time expiring without a complete response from the applicant to a request provided to the applicant.

**8**. A chat server for providing on line chat help to an applicant comprising:

an applicant interface configured to receive a request for a chat connection and a corresponding applicant identifier associated with the applicant, and to establish a chat connection with a client associated with the applicant; and

a server interface configured to use the applicant identifier to obtain information from a remote server about an application that the applicant is in the process of completing;

wherein the applicant identifier is used to access an application while the request for a chat connection is waiting in a queue.

**9**. An applicant client for obtaining on line chat help comprising:

an application server interface configured to receive a web page including an applicant identifier;

a processor configured to determine based on an event that the applicant could benefit from online chat; and

a chat interface configured to send a request to a chat server for a connection wherein the request includes the applicant identifier;

wherein the event is a period of time expiring without an action from the applicant.

**10**. An applicant client for obtaining on line chat help comprising:

an application server interface configured to receive a web page including an applicant identifier;

a processor configured to determine based on an event that the applicant could benefit from online chat; and

a chat interface configured to send a request to a chat server for a connection wherein the request includes the applicant identifier;

wherein the event is a period of time expiring without a complete response from the applicant to a request provided to the applicant.

* * * * *

# EXHIBIT B



US007346576B2

(12) **United States Patent**
Lent et al.

(10) Patent No.: **US 7,346,576 B2**
(45) Date of Patent: **\*Mar. 18, 2008**

(54) **INTEGRATING LIVE CHAT INTO AN ONLINE CREDIT CARD APPLICATION**

(75) Inventors: **Jeremy Lent**, San Francisco, CA (US); **Timothy Coltrell**, San Francisco, CA (US); **Munnamgi S. Reddi**, San Francisco, CA (US); **Christopher O. Tracy**, San Francisco, CA (US); **TaChung Huang**, San Francisco, CA (US)

(73) Assignee: **NextCard, LLC**, Dallas, TX (US)

( \* ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 684 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **10/782,311**

(22) Filed: **Feb. 18, 2004**

(65) **Prior Publication Data**

US 2004/0172358 A1    Sep. 2, 2004

**Related U.S. Application Data**

(63) Continuation of application No. 09/595,556, filed on Jun. 15, 2000, now Pat. No. 6,718,313.

(51) **Int. Cl.**
    *G06Q 40/00*    (2006.01)
(52) **U.S. Cl.** .......................................... **705/38**; 705/35
(58) **Field of Classification Search** ..................... None
    See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,372,507 | A | 12/1994 | Goleh |
| 5,764,916 | A | 6/1998 | Busey et al. |
| 5,966,699 | A | 10/1999 | Zandi |
| 6,105,007 | A | 8/2000 | Norris |
| 6,138,139 | A | 10/2000 | Beck et al. |
| 6,144,991 | A | 11/2000 | England |
| 6,289,319 | B1 | 9/2001 | Lockwood |
| 6,324,524 | B1 | 11/2001 | Lent et al. |
| 6,405,181 | B2 | 6/2002 | Lent et al. |
| 6,449,646 | B1 | 9/2002 | Sikora et al. |
| 2002/0016731 | A1 | 2/2002 | Kupersmit |

OTHER PUBLICATIONS

Douglas Armstrong, Firstar Web site helps add up future, Milwaukee Journal Sentinel, Mar. 28, 1996.

*Primary Examiner*—Richard E. Chilcot, Jr.
*Assistant Examiner*—Elda Milef
(74) *Attorney, Agent, or Firm*—Marc A. Hubbard; Gardere Wynne Sewell LLP

(57) **ABSTRACT**

A system and method are described for providing on line chat help to an applicant. An application identifier and a chat applet are inserted into a web page. The web page is sent to the applicant. The chat applet is configured to determine based on an event that the applicant could benefit from online chat and, upon such determination, to send a request to a chat server for a connection and to include the application identifier with the request.

**8 Claims, 14 Drawing Sheets**





**FIG. 1**



**FIG. 2**



**FIG. 3**



**FIG. 4**



**FIG. 5**



**FIG. 6**



**FIG.7A**

INPUT TABLE

○ APR TOO HIGH

○ LONGER INTRO

○ WANT INTRO

○ LINE TOO LOW FOR PURCHASES

○ LINE TOO LOW FOR BALANCE TRANSFER

BT AMOUNT $_,___     REQUESTED CREDIT LIMIT $_,___

☐ GET COUNTER OFFER

# FIG. 7B



**FIG. 8**



**FIG.9**



**FIG. 10**



**FIG. 11**



**FIG. 12**



**FIG.13**

US 7,346,576 B2

**1**

## INTEGRATING LIVE CHAT INTO AN ONLINE CREDIT CARD APPLICATION

### CROSS REFERENCE TO RELATED APPLICATIONS

This is a continuation of application Ser. No. 09/595,556, filed Jun. 15, 2000, now U.S. Pat. No. 6,718,313, which is hereby incorporated by reference.

This application claims priority to U.S. patent application Ser. No. 09/185,201 entitled: "Method And Apparatus For Real Time On Line Credit Approval", filed Nov. 3, 1998, which is herein incorporated by reference; and U.S. patent application Ser. No. 09/185,878 entitled: "Method And Apparatus For A Verifiable On Line Rejection Of An Applicant For Credit", filed Nov. 3, 1998, which is herein incorporated by reference; and U.S. patent application Ser. No. 09/185,000 entitled: "Method And Apparatus For An Account Level Offer Of Credit And Real Time Balance Transfer", filed Nov. 3, 1998 which is herein incorporated by reference. This application is related to Ser. No. 09/595,601 filed concurrently herewith entitled: "Implementing A Counter Offer For An On Line Credit Card Application" which is herein incorporated by reference.

### FIELD OF THE INVENTION

The present invention relates generally to online transactions. More specifically, integrating live chat into an online credit card application is disclosed.

### BACKGROUND OF THE INVENTION

Considerable marketing effort is involved in getting an applicant to log on to a credit card website and apply for a credit card. In addition to advertising, credit cards that allow a user to apply for a card over the Internet in some cases pay significant referral fees to a party that refers an applicant to the site. Given the effort and cost required to attract an applicant to begin an on-line credit card application, it is very important that, if at all possible, the applicant be encouraged to complete the process.

Various reasons exist why an applicant might cancel out of a credit card application that has already been started. The applicant may become confused during the process and may cancel when the applicant is unable to discern how to follow certain instructions. Also, an applicant may reject an offer for credit because of some attribute of the credit offer that the applicant finds unacceptable. Whatever the reason that the applicant does not complete the process and receive the credit card, the loss to the marketer of the credit card is significant. It would be very helpful if an on line credit card application system could be improved to reduce the number of applicants that stop the process short of obtaining a credit card.

### SUMMARY OF THE INVENTION

An on line credit card application system that provides an integrated live chat to help the applicant during an application process is disclosed. In one embodiment, an application that initiates a chat session with a chat server is provided to the applicant's browser. When an event that occurs that indicates that the applicant may be helped by chatting with a customer service agent on line, a chat application contacts the chat server and places the applicant in a queue to chat with the next available customer service agent. In one

**2**

embodiment, the chat application on the applicant's browser does not send detailed information about the application to the chat server. Instead, the chat application sends an applicant identifier to the chat server. The chat server then accesses the application server that has been handling the application session with the applicant and uses the applicant identifier to access information about the application.

It should be appreciated that the present invention can be implemented in numerous ways, including as a process, an apparatus, a system, a device, a method, or a computer readable medium such as a computer readable storage medium or a computer network wherein program instructions are sent over optical or electronic communication links. Several inventive embodiments of the present invention are described below.

In one embodiment, a method of providing on line chat help to an applicant includes inserting an application identifier and a chat applet into a web page. The web page is sent to the applicant. The chat applet is configured to determine upon the occurance of an event that the applicant could benefit from online chat and, upon such determination, to send a request to a chat server for a connection and to include the application identifier with the request.

In one embodiment, a method of providing on line chat help to an applicant includes receiving a request for a chat connection and a corresponding application identifier. A chat connection is established with the client. The applicant identifier is used to obtain information from a remote server about an application that the applicant is in the process of completing.

In one embodiment, a method of providing on line chat help to an applicant includes receiving a web page including an applicant identifier. It is determined that the applicant could benefit from online chat and a request is sent to a chat server for a connection wherein the request includes the application identifier.

In one embodiment, an application server for providing on line chat help to an applicant includes a processor configured to insert an application identifier and a chat applet into a web page and an application interface configured to send the web page to the applicant. The chat applet is configured to determine based on an event that the applicant could benefit from online chat and, upon such determination, to send a request to a chat server for a connection and to include the application identifier with the request.

In one embodiment, a chat server for providing on line chat help to an applicant includes an applicant interface configured to receive a request for a chat connection and a corresponding application identifier and to establish a chat connection with the client. A server interface is configured to use the applicant identifier to obtain information from a remote server about an application that the applicant is in the process of completing.

In one embodiment, an applicant client for obtaining on line chat help includes an application server interface configured to receive a web page including an applicant identifier. A processor is configured to determine that the applicant could benefit from online chat. A chat interface is configured to send a request to a chat server for a connection wherein the request includes the application identifier.

These and other features and advantages of the present invention will be presented in more detail in the following detailed description and the accompanying figures which illustrate by way of example the principles of the invention.

US 7,346,576 B2

3

## BRIEF DESCRIPTION OF THE DRAWINGS

The present invention will be readily understood by the following detailed description in conjunction with the accompanying drawings, wherein like reference numerals designate like structural elements, and in which:

FIG. 1 is a block diagram illustrating a system for providing real time chat help to an applicant and generating a counter offer when appropriate.

FIG. 2 is a flowchart illustrating a general process implemented on the chat server.

FIG. 3 is a flow chart illustrating a general process implemented on the web server for sending dynamic web pages to the applicant.

FIG. 4 is a flow chart illustrating a process implemented on a browser for establishing a connection to a chat server.

FIG. 5 is a flowchart illustrating a typical process implemented on the browser for the purpose of initializing chat when the user does not respond to a downloaded web page in a certain period of time.

FIG. 6 is a flow chart illustrating a process implemented on a chat server when a chat session is requested by a browser as described above.

FIG. 7A is a flow chart illustrating a process implemented at a customer service agent for the purpose of supporting the chat session.

FIG. 7B is a screen shot illustrating a display of offer terms used in one embodiment for determining which terms are unacceptable.

FIG. 8 is a flow chart illustrating in detail a process implemented in step 712 for obtaining the unacceptable terms of an offer from an applicant.

FIG. 9 is a flow chart illustrating the process implemented on the counter offer server when more than one term is selected as being unacceptable to the applicant.

FIG. 10 is a flow chart illustrating an example process for generating a counter offer.

FIG. 11 is a flowchart illustrating a process implemented on a counter offer server to generate and confirm a new offer for display to the applicant.

FIG. 12 is a flowchart illustrating a process implemented on the web server portion of the application server for the purpose of displaying a new counter offer to the applicant.

FIG. 13 is a flow chart illustrating a process used in one embodiment to automatically generate a refresh on the applicant's browser.

## DETAILED DESCRIPTION

A detailed description of a preferred embodiment of the invention is provided below. While the invention is described in conjunction with that preferred embodiment, it should be understood that the invention is not limited to any one embodiment. On the contrary, the scope of the invention is limited only by the appended claims and the invention encompasses numerous alternatives, modifications and equivalents. For the purpose of example, numerous specific details are set forth in the following description in order to provide a thorough understanding of the present invention. The present invention may be practiced according to the claims without some or all of these specific details. For the purpose of clarity, technical material that is known in the technical fields related to the invention has not been described in detail so that the present invention is not unnecessarily obscured.

In one embodiment, an applicant interacts with a web server and receives a web page containing offers of credit

4

that may be accepted by the applicant. At any point during the interaction with the web server, an online chat button or process may be activated that sends an applicant ID to a chat server and opens a chat window so that the applicant can receive help. In one embodiment, the help takes the form of the applicant describing why a displayed offer is unacceptable and a counter offer being generated for the applicant.

FIG. 1 is a block diagram illustrating a system for providing real time chat help to an applicant and generating a counter offer when appropriate. A web server 102 is in communication with an application database 103. Application database 103 is used to store information about the applicant and the application. The information stored includes information provided by the applicant as well as information derived from various credit bureaus (not shown) that are accessed by the web server either directly or indirectly. Each application included in the application database is referenced by an applicant identifier that can be used to identify the application.

Web server 102 provides a web page 104 to a browser 106. Typically, the web server and browser communicate over the Internet using HTTP. Web page 104 is shown for the purpose of illustration as an offer web page that includes three offers made to the applicant for a credit card as well as an on-line chat button that may be activated by the applicant to obtain help or to discuss the offers. Other web pages provided by the web server include forms that the applicant fills out to provide information so that a credit report may be obtained and an offer of credit generated based on the applicant's personal information.

An online application process for a credit card is described in detail in U.S. patent application Ser. No. 09/185,201, Attorney Docket No. NEXTP001, entitled: "Method And Apparatus For Real Time Online Credit Approval", filed Nov. 3, 1998, which was previously incorporated by reference; and U.S. patent application Ser. No. 09/185,878, Attorney Docket No. NEXTP002, entitled: "Method And Apparatus For A Verifiable Online Rejection Of An Applicant For Credit", filed Nov. 3, 1998, which was previously incorporated by reference; and U.S. patent application Ser. No. 09/185,000, Attorney Docket No. NEXTP003, entitled: "Method And Apparatus For An Account Level Offer Of Credit And Real Time Balance Transfer", filed Nov. 3, 1998 which was previously incorporated by reference.

It should be noted that the process described herein will refer to the online credit application as being an application for a credit card. The process can also be applied to other offers of credit including an offer of instant credit for the purpose of consummating a single pending online transaction. In addition, the system and processes disclosed herein may be applied to other types of business transactions over the Internet. However, the particular architecture and processes described are especially useful for processing online credit card applications and the benefit of their application to online credit card applications is particularly strong.

Web server 102 and browser 106 continue to interact in a standard fashion with web pages being provided by web server 102 and the applicant filling out information as needed. At some point, an applicant may activate the online chat button included on the web page and a chat window 104a opens up for the chat application and a connection is established with a chat server 108. As is described further below, the chat window is opened and the connection with chat server 108 may be initiated by events other than just the activation of the online chat button. Chat server 108 implements a standard chat environment such as the chat envi-

US 7,346,576 B2

5

ronment available from e-share. Other chat environments may be used that include the ability to pass a variable to the chat server from the browser.

The various servers shown in FIG. 1 may be implemented on any typical platform such as a Windows NT platform, a Linux platform, or other UNIX platform or other commercially available web server platform. The browser may be implemented on any system such as a Macintosh or a PC which are readily available.

In some embodiments, the chat process is initiated when the applicant cancels out of the application. In other embodiments, the chat process is initiated when the applicant lingers on a page for an amount of time that exceeds a threshold. In other embodiments, the chat process is initiated when the applicant's response to a request for information is somehow inadequate. For example, it may be detected that the answers provided by the applicant are incomplete or in the wrong form. The chat process may be initiated for the purpose of providing the applicant more detailed instructions or pointing out to the applicant the information that is required to complete the application.

In addition to opening the chat connection to chat server **108**, browser **104** also sends the applicant identifier to the chat server. The chat server then uses the applicant identifier to access information about the application in the application database. It should be noted that the applicant identifier may be used as an application identifier in circumstances such as would be expected for an online credit card application where there is one and only one application per applicant. In other embodiments, an application identifier that is unique for each application is assigned and used. In this description, wherever an applicant identifier is mentioned, an application identifier could also be used.

Sending the applicant identifier to the chat server instead of sending the current web page or other information to the chat server is preferable from a security standpoint because the applicant identifier can only be used to obtain information about the application by accessing application database **103**. In addition, preferably, the applicant identifier is encrypted, adding a further level of security.

In the embodiment shown, chat server **108** does not have a direct link to the application database **103**. Chat server **108** is connected to a customer service agent **110**. Customer service agent **1 10** handles the chat session, responding to requests made by the applicant. Other customer service agents **112** and **114** are also standing by to handle other chat sessions generated by chat server **108**. In one embodiment, requests made to the chat server are queued and the next available customer service agent is assigned to the first chat session request found in the queue.

Customer service agent **110** is connected to a counter offer server that is connected to application database **103**. By passing the applicant identifier from the chat server to the customer service agent to the application database through the counter offer server, information about the applicant can be obtained from the application database. Connections from the customer service agent to the counter offer server and from the counter offer server to the application database may be made over the Internet or may be a dedicated secure connection.

In the embodiment shown, which is adapted specifically for implementing a counter offer strategy as is described below, a separate web server **102** and counter offer server **120** are shown. This divides the processing demand generated by normal communication with a browser from the processing demand generated by interaction initiated by chat with a customer service agent. This architecture is particu-

6

larly useful since the two types of traffic are isolated. In other embodiments, the functions of the web server and the counter offer server are performed by a single application server. Dashed box **122** represents a single application server that may include both the web server and the counter offer server. In general, the term application server is used to describe either the web server and counter offer server operating collectively or to describe a single server performing both the function of the web server and the counter offer server.

Additionally, in a system where a counter offer is not generated, counter offer server **120** may be referred to as a customer service agent server or some other term describing its primary function. The important point is that both the web server and the counter offer server both access the application database to obtain information about the status of the application. In addition, both the web server and the counter offer server may write data to the application database in some embodiments. The common access to the application database enables the customer service agent to obtain information about the status of the application using the applicant identifier received through the chat server and also allows the customer service agent to alter the status of the application based on information received from the applicant through the chat server by sending that information to the counter offer server for posting to the application database.

Thus, an applicant provides information to database **103** via the Internet using web pages in a standard manner. In addition, the applicant may communicate via chat with a customer service agent who also is connected to the application database and may change the state of the application according to information received by the applicant via chat. In the embodiment shown, the customer service agent interacts with a special purpose counter offer server that uses the information provided by the applicant to determine a counter offer using information in the application database. The counter offer is stored in the application database and provided to the applicant's browser via the web server. As noted above, the counter offer server and the web server may be implemented on a single machine referred to as the application server. The various processes operating on the application server, the chat server and the browser are described below for the purpose of illustrating how the chat window may be activated and a counter offer generated for the applicant.

FIG. **2** is a flowchart illustrating a general process implemented on the chat server. The process starts at **200**. In a step **202**, the applicant identifier is obtained from a browser. In a step **204**, the chat server validates the applicant information by communicating with the application database. In some embodiments, the chat server may communicate directly with the application database. In other embodiments, as shown in FIG. **1**, the chat server communicates with the application database through an application server. After the applicant information is validated, a response is received from the applicant via chat. Based on the response, the applicant account is configured in a step **208** and the process ends at **210**.

FIG. **3** is a flow chart illustrating a general process implemented on the web server for sending dynamic web pages to the applicant. The dynamic web pages differ from a standard web page used to interact with the applicant because they contain a page object used to initiate a chat section with a chat server upon the occurrence of certain events. The page object includes an applicant identifier that is passed to the chat server. The process starts at **300** when chat is initiated based on a user action. As described above,

US 7,346,576 B2

7                                                          8

the user action may be the activation of a help or chat button or the user canceling out of the application. Chat may also be activated by user inaction when a response is not received or by an improper action taken by a user resulting in an invalid response. In a step **302**, the state of the application is determined. Next, in a step **304**, the content of the page to be sent to applicant is determined based on the state of the application. Next, in a step **306**, the applicant identifier is inserted into a page object. In a step **308**, the page is sent to the applicant browser and the process ends at **310**.

FIG. **4** is a flow chart illustrating a process implemented on a browser for establishing a connection to a chat server. The process starts at **400**. In a step **402**, a link to the chat server is activated either directly by the user or as a result of the occurrence of an event as described above. In a step **404**, a connection is established to the chat server. Typically the connection uses a protocol such as HTTPS. Next, in a step **406**, the applicant identification is sent to the chat server and the process ends at **408**.

FIG. **5** is a flowchart illustrating a typical process implemented on the browser for the purpose of initializing chat when the user does not respond to a downloaded web page in a certain period of time. The process starts at **500**. In a step **502**, a timer is initialized. Control is then transferred to **504** where periodic checks are made to determine whether the timer has expired. If a valid user input is received, control is transferred to a step **506** and the timer is reset. If the timer expires, then control is transferred to a step **508** and a chat session is initiated as described above. The process then ends at **510**.

FIG. **6** is a flow chart illustrating a process implemented on a chat server when a chat session is requested by a browser as described above. The process starts at **600** when the request is received. The request for a chat session includes both a connection request and the applicant identifier. In a step **602**, the request is put into a queue and the applicant identifier is stored in a manner that associates it with the request. In some embodiments, the chat server uses the applicant identifier while the request is still in the queue to obtain the application information from the application database. In other embodiments, the applicant identifier is not used to access the application database until the request is assigned to a customer service agent. This insures that when the customer service agent accesses the information about the application, the information is up to date. In a step **604**, a status message is sent to the user and the system then waits for an available customer service agent. So long as no customer service agent is available, the system continues to wait at **604**. When a customer service agent becomes available, control is transferred to a step **606** and the application information is sent to the customer service agent. The customer service agent then uses the application information to discuss the state of the application with the applicant.

FIG. **7**A is a flow chart illustrating a process implemented at a customer service agent for the purpose of supporting the chat session. The process may be implemented on a client machine accessed by the customer service agent or may be implemented on the application server which may include a dedicated counter-offer server. The process starts at **700**. In a step **702**, the customer service agent notifies the chat server that it is available. Next, in a step **704**, the applicant identifier is received from the chat server. In a step **706**, the applicant record in the application database is accessed using the applicant identifier as mentioned above. The application record may be accessed either directly or via the application server. In a step **708**, the chat server displays the application data retrieved using the applicant identifier to the

customer service agent. In one embodiment, the application data is displayed by displaying the same web page that the applicant is viewing. In addition, the web page may be augmented with other information about the status of the application. Alternatively, a completely separate application information screen may be displayed to the customer service agent.

In an embodiment where a counter offer is generated by the customer service agent, a display is provided showing various offer terms that the applicant may indicate are not acceptable in the chat between the applicant and the customer service agent. The customer service agent may check one or more of the terms and the terms checked by the customer service agent are sent to the counter offer server to be used in generating a counter offer. The terms or attributes of the offer that the applicant considers to be unacceptable are obtained in a step **712** and the initial process for receiving applicant information and providing information to the counter offer server ends at **714**.

It should be noted that a number of different methods of obtaining the unacceptable terms from the applicant may be used. In one embodiment, as described above, a set of offer terms are shown to the customer service agent and the customer service agent selects terms identified by the applicant in chat that are unacceptable. In other embodiments, a display of terms is provided to the applicant and the applicant picks the unacceptable terms with the aid of the customer service agent. In yet another embodiment, the chat generated by the applicant is automatically analyzed by a program which generates the list of unacceptable terms for the counter offer server.

FIG. **7**B is a screen shot illustrating a display of offer terms used in one embodiment for determining which terms are unacceptable. The display includes indications that interest rate attributes are not acceptable, indicating that the annual percentage rate or long term interest rate is too high, a longer introductory interest rate is desired, or an introductory interest rate is desired. The introductory interest rate is a very low rate offered for a short period of time when the account is established, also referred to as a teaser rate. In addition, buttons are provided for the customer service agent to check whether the credit limit is too low either for purchases or for balance transfers. In addition, the customer service agent can fill in a balance transfer amount that the applicant wants to transfer as well as a requested credit limit. Finally, a box is provided for the customer service agent to check and send the data to the counter offer server.

FIG. **8** is a flow chart illustrating in detail a process implemented in step **712** for obtaining the unacceptable terms of an offer from an applicant. The process starts at step **800**. In a step **802**, a chat message is received from a user indicating a term that the user would like to change. The message is displayed to the customer service agent along with a checklist as shown in FIG. **7**b illustrating terms to change. As noted above, the checklist may also be displayed and checked by the applicant. In a step **806**, an input is received from the customer service agent of a selected term of an offer that the applicant would like to change. In a step **808**, the term is sent to the counter offer server and the process ends at **810**.

FIG. **9** is a flow chart illustrating the process implemented on the counter offer server when more than one term is selected as being unacceptable to the applicant. In one embodiment, a counter offer is selected based on only one unacceptable term being changed. This simplifies the process of determining a counter offer since changing two terms is somewhat more complex. Therefore, a hierarchy of terms

US 7,346,576 B2

9

that may be changed by the applicant is provided and the highest priority term selected is used to determine the counter offer. All of the unacceptable terms are still transmitted to the counter offer server and recorded for the purpose of data gathering and analysis of the system. The process starts at **900**. In a step **902**, multiple unacceptable terms or attributes of the offer are received by the counter offer server. Next, in a step **904**, the highest priority term or attribute that is unacceptable is determined. Next, in a step **906**, the offer is adjusted and a counter offer is determined based on the highest priority term. The process ends at **908**.

Many different methods may be used by the counter offer server to generate a counter offer based on attributes or terms identified by the applicant as being unacceptable. In one embodiment, a number of potential offers are identified based on the applicant information provided and an assessment of the risk associated with extending credit to the applicant. Some of the generated offers are withheld while others are displayed to the applicant. A number of schemes may be used to decide which offers are displayed and which offers are withheld. Some methods may include a statistical selection or a selection according to a marketing scheme designed to increase the rate of acceptance. It may also be the case that the best offer is withheld and kept in reserve to use as a counter offer. In general, certain potential offers are withheld.

The identification by the applicant of an unacceptable term is used by the counter offer server to identify a better offer for the counter offer. In one embodiment, offer strategies are identified and the counter offer is identified by simply looking up an offer strategy associated with the applicant and the identified unacceptable term. In one embodiment, an offer strategy may include a set of offers shown to the applicant as well as offers that are not displayed and that correspond to various unacceptable terms. When an unacceptable term is identified, the offer corresponding to the strategy and the unacceptable term is used as the counter offer.

In some embodiments, the counter offer strategy is dependent on characteristics of the applicant. For example, the applicant may be classified as a "surfer" or "non-surfer". A "surfer" is a person who shifts or surfs balances among credit cards, taking advantage of low teaser rates. A determination that an applicant is a surfer is made based on an analysis of the applicant's credit report. A counter offer strategy designed for such an applicant may adopt the strategy of extending the period of an introductory rate if requested by the applicant, but requiring the applicant to make a certain number of purchases or not transfer the balance for a certain period of time.

In general, added terms and conditions such as purchase requirements or a length of time that a balance may not be transferred from the card may be added to counter offers for the purpose of creating a perceived barrier to receive the counter offer. Such a barrier or condition prevents the applicant from deciding that the first offer should always be rejected. In some embodiments, the conditions are determined based on characteristics of the applicant. As described above, surfers may receive balance transfer time restrictions.

In addition to selecting a withheld offer based on a pre-determined offer scheme, the counter offer server may also recalculate a customized offer based on the identification of an unacceptable term and an actual requested term by the applicant. For example, the applicant may express that the credit limit is too low, either for a desired balance transfer that the applicant wants to make or new purchases.

10

The amount of the credit limit minus the amount of the balance transfer is referred to as the amount of credit that is "open to buy". The information sent to the counter offer server may include a requested credit limit and a requested balance transfer amount. From that information, the counter offer server can determine that the offer credit limit is too low either for the balance transfer requested or for the amount that the applicant wants open to buy. To minimize risk, it is desirable that the credit limit be as low as possible. Therefore, it is desirable not to simply select a withheld offer with a higher credit limit, but instead to customize an offer that conforms to the applicant's request but does not exceed the applicant's request.

Accordingly, a new credit limit may be calculated that incorporates the requested balance transfer and the amount that the applicant wants open to buy. The calculated new offer is checked versus the risk profile of the user and it is verified that the higher credit limit is appropriate for the user. Any of the various techniques well known in the art of assigning credit may be used to assess the risk of the applicant and determine an appropriate upper credit limit. Significantly, the counteroffer in the case of a requested higher credit limit is specifically customized for the applicant based on what the applicant requests. In general, any counter offer provided is based on the applicant's identification of an unacceptable term. In some embodiments, if no counter offer is available that improves an unacceptable term identified by the applicant, then a message is returned to the applicant either directly or through the chat interface that indicates that no counter offer can be provided at that time. For example, in one embodiment, the offer strategy may include an offer with the best annual percentage rate available in the set of offers initially displayed to the applicant. In such a case, if the applicant identifies the annual percentage rate as the unacceptable term, then no counter offer improving that term can be generated.

FIG. **10** is a flow chart illustrating an example process for generating a counter offer. The process starts at **1000**. In a step **1010**, the counter offer server receives the term that is to be changed. Next, in a step **1020**, it is determined whether the term is the credit limit or not. If the term is not the credit limit, then control is transferred to a step **1030** and a precomputed offer that was withheld is determined for display. The counter offer determination process then ends at **1040**. If the term is the credit limit, then control is transferred to a step **1050** and it is determined whether the credit limit is too low for a requested balance transfer or for new purchases (open to buy). If the credit limit is too low for new purchases, then control is transferred to a step **1060** and the required balance transfer and credit limit are adjusted if that is allowed by the scheme being used to assign credit based on an assessment of the applicant's risk.

If the credit limit is too low for a requested balance transfer, then control is transferred to a step **1070** and the credit limit is adjusted based on the balance transfer requested if allowed by the credit line assignment being used. After the credit limit is adjusted in steps **1060** or **1070**, the counter offer is defined and the counter offer determination process ends at **1080**. Whether a precomputed offer is determined for display in **1030** or the credit limit is recomputed in step **1060** or **1070**, if no better offer can be generated, then a message noting that no better offer can be generated is sent either to the chat server or to the applicant directly.

Once a counter offer has been defined or it has been determined that no counter offer that improves the unacceptable terms can be generated, the applicant is notified of

US 7,346,576 B2

11

the counter offer terms. In different embodiments, notification may be accomplished in various ways. For example, in one embodiment, a new offer page is generated in the application server based on data written to the application database by the application server. In the embodiment where the application server is split into a web server and a counter offer server, the counter offer server writes data to the application database and the web server generates a counter offer page based on the data written to the application database. In addition, the application server also provides information to the chat server indicating what counter offer, if any, has been generated. The customer service agent then discusses the counter offer with the applicant via the chat interface. In order to view the counter offer page generated by the web server, the applicant is asked to refresh his browser. Refreshing the browser causes the offer page to be requested from the web server and the web server responds with the counter offer page. In one embodiment, a button labeled "view offer" is provided on the displayed page. When the button is selected, the page is downloaded again and any changes are then viewed by the user.

In other embodiments, the displaying of the counter offer page to the applicant is handled somewhat differently. In one embodiment, the chat server enables the display of the page through the applicant's browser automatically, without requiring the applicant to refresh the screen. This can be accomplished in a variety of ways. In one embodiment, the chat server writes a variable to a memory location that the browser checks periodically. When the browser checks the location and finds a variable indicating that the counter offer page should be downloaded, the browser automatically refreshes itself. The applet that enables the browser to check the location and refresh itself may be used in some cases but not others. When such an applet is not used, the process of instructing the applicant through the chat interface to refresh his own browser or to select a button to view the offer may be implemented.

FIG. 11 is a flowchart illustrating a process implemented on a counter offer server to generate and confirm a new offer for display to the applicant. The process starts at 1100. In a step 1110, the counter offer server receives a chat-generated term to change. As described above, the term can be identified based on chat by a customer service agent or the term can be automatically determined by analysis of the chat provided by the applicant or the term can be identified using a pick list provided to the applicant. In a step 1120, a new offer is selected from an offer set included in the offer strategy being used for the applicant. As described above, in some embodiments, a new offer is actually calculated based on information provided by the applicant such as a requested credit limit. Next, in a step 1130, the new offer is displayed to the customer service agent. The customer service agent then communicates with the applicant about the new offer to determine the applicant's interest. The customer service agent then confirms to the counter offer server that the new offer is to be shown to the applicant. The confirmation is received in step 1140 and in a step 1150, the counter offer server confirms the new offer in the data base so that it is ready to be displayed when the applicant's browser refreshes. The process then ends at 1160.

In some embodiments, the new offer is confirmed in the database concurrent with it being displayed to the customer service agent. Then, whenever the applicant's browser refreshes, the counter offer will be displayed. In some embodiments, it is desired that the display of the counter offer not be enabled until customer service agent has an

12

opportunity to chat with the applicant about the new offer and confirm that display is appropriate.

FIG. 12 is a flowchart illustrating a process implemented on the web server portion of the application server for the purpose of displaying a new counter offer to the applicant. The process starts at 1200. In a step 1210, the web server receives a refresh request from the applicant's browser. Next, in a step 1220, the counter offer parameters are retrieved from the application database and a web page including the counter offer is generated. Then in a step 1230, the counter offer page is sent to the browser. The process ends at 1240.

FIG. 13 is a flow chart illustrating a process used in one embodiment to automatically generate a refresh on the applicant's browser. The process starts at 1300. In a step 1310, a request is received for a different offer from the customer service agent. The new offer is determined in a step 1320. The terms of the new offer are communicated to the customer service agent in step 1330. In a step 1340, the customer service agent describes the offer to the user. Then, in a step 1350, the customer service agent receives an indication that the user wants to view the new offer. The customer service agent then sends a message to the user in step 1360 that causes a refresh to be activated. As described above, the message may include writing a certain value to a defined memory location that is periodically examined by the browser for the purpose of determining whether a refresh has been requested by the customer service agent. Once one refresh is generated in this manner, the value that the browser looks for may be incremented so that each time it finds the same value, a new refresh is not generated. The process ends at 1370.

A system and method for activating a chat interface with a customer service agent that has access to information about an application for credit has been described. In one embodiment, the chat interface is used to obtain information about why an applicant is rejecting an offer of credit and to identify unacceptable terms. Those unacceptable terms are communicated to a counter offer server and the counter offer server generates a new offer that improves the unacceptable term. The new offer is communicated to the applicant using the chat interface and a web page showing the new offer with an opportunity to accept the offer is displayed to the applicant when the applicant's browser is refreshed.

Although the foregoing invention has been described in some detail for purposes of clarity of understanding, it will be apparent that certain changes and modifications may be practiced within the scope of the appended claims. It should be noted that there are many alternative ways of implementing both the process and apparatus of the present invention. Accordingly, the present embodiments are to be considered as illustrative and not restrictive, and the invention is not to be limited to the details given herein, but may be modified within the scope and equivalents of the appended claims.

What is claimed is:

1. A method of providing on line chat help to an applicant comprising:

    inserting an application identifier and a chat applet into a web page; and

    sending the web page to the applicant;

    wherein the chat applet is configured to determine that a period of time has expired without an action from the applicant and, upon such determination, to send a request to a chat server for a connection and to include the application identifier with the request.

2. A method as recited in claim 1 wherein the applicant is applying for credit.

US 7,346,576 B2

13

14

**3**. A method as recited in claim **1** wherein the applicant is applying for a credit card.

**4**. A method as recited in claim **1** further comprising:

receiving the request for a chat connection and the corresponding application identifier;

establishing a chat connection with the applicant; and

using the applicant identifier to obtain information from a remote server about an application that the applicant is in the process of completing.

**5**. A method of providing on line chat help to an applicant as recited in claim **4** wherein the application identifier is used to access an application while the request for a chat connection is waiting in a queue.

**6**. A method of providing on line chat help to an applicant comprising:

determining that a period of time has expired without an action from the applicant; and

sending a request to a chat server for a connection wherein the request includes an application identifier associated with the applicant.

**7**. An application server for providing on line chat help to an applicant comprising:

a processor configured to insert an application identifier and a chat applet into a web page; and

an applicant interface configured to send the web page to the applicant;

wherein the chat applet is configured to determine that a period of time has expired without an action from the applicant and, upon such determination, to send a request to a chat server for a connection and to include the application identifier with the request.

**8**. An applicant client for obtaining on line chat help comprising:

a processor configured to determine that a period of time has expired without an action from the applicant;

a chat interface configured to send a request to a chat server for a connection wherein the request includes an application identifier associated with the applicant.

*  *  *  *  *

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LIVEPERSON, INC., )
)
      Plaintiff, )
)
      v. )
)   Civil Action No. 08-062 (GMS)
NEXTCARD, LLC and, MARSHALL CREDIT )
STRATEGIES, LLC, CPMG, INC., and )   DEMAND FOR JURY TRIAL
WARBLER TECHNOLOGIES, L.P., )
)
      Defendants. )

## SECOND AMENDED COMPLAINT AND JURY DEMAND

Plaintiff LivePerson, Inc. ("LivePerson") brings this action for a declaratory judgment of

non-infringement and invalidity of U.S. Patent No. 6,718,313 ("the '313 Patent") and U.S. Patent

No. 7,346,576 ("the '576 Patent") (collectively the "NextCard Patents") against Defendants

NextCard, LLC and("NextCard"), Marshall Credit Strategies, LLC ("MCS²"), CPMG, Inc.

("CPMG"), and Warbler Technologies, L.P. ("Warbler").  A copy of the patents are filed

herewith as Exhibits A and B, pursuant to D. Del. LR 3.2.

### Parties

1.    1.——Plaintiff LivePerson is a corporation organized and existing under the

General Corporation Law of the State of Delaware and is headquartered in New York, New

York.  LivePerson is a provider of online engagement solutions that facilitate real-time assistance

and trusted expert advice.  Connecting businesses and experts with consumers seeking help on

the Web, LivePerson's hosted software platform creates more relevant, compelling and

personalized online experiences.

2.    2.——On information and belief, Defendant NextCard, LLC is a limited liability

company organized under the laws of the State of Texas, with its principal place of business at

-1-

104 E. Houston Street, Suite 145, Marshall, Texas 75670. On information and belief, NextCard, ~~LLC has no business other than bringing patent infringement suits.~~ is owned and /or controlled by co-defendant CPMG, ostensibly through co-defendant Warbler. On information and belief, NextCard was formed to acquire the NextCard Patents from co-defendnat MCS, and NextCard's only business is to license and enforce patents. Upon information and belief, the only patents NextCard has ever owned are the NextCard Patents.

3. ~~3.~~ On information and belief, Defendant MCS is a limited liability company organized under the laws of the State of Texas, with its principal place of business at ~~500 Crescent Court, Suite 250, Dallas, Texas 75201.~~ 2100 McKinney Avenue, Suite 1770, Dallas, Texas 75201. On information and belief, MCS is owned or controlled, either directly or indirectly, by co-defendant CPMG. On information and belief, MCS is managed on a day-to-day basis by CPMG. On information and belief, the only assets MCS has ever owned are the NextCard Patents.

4. On information and belief, Defendant Warbler is a limited partnership organized under the laws of the State of Texas, with its principle place of business at 2100 McKinney Avenue, Suite 1770, Dallas, Texas 75201. On information and belief, Warbler is managed on a day-to-day basis by its co-defendant, CPMG, and is owned or controlled, either directly or indirectly, by CPMG. On information and belief, Warbler has no business beyond managing NextCard for CPMG.

5. On information and belief, Defendant CPMG is a company organized under the laws of the State of Texas, with its principal place of business at 2100 McKinney Avenue, Suite 1770, Dallas, Texas 75201. On information and belief, CPMG owns or controls, either directly or indirectly, each of the other co-defendants MCS, Warbler, and Nextcard. Because the

- 2 -

067025.1001

activities of each of the four Defendants are so closely intertwined, they are jointly referred to herein as "the CPMG Entities," without specific attribution to each.

## Jurisdiction and Venue

6.    4.——This case arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq.  This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §1331 and 1338.

7.    5.——Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b).

8.    6.——This court has personal jurisdiction over the parties, because MCS purchasedCPMG Entities, because the CPMG Entities purposefully availed themselves of the benefits of Delaware law via thier purchase of the '313 and '576 Patents out of bankruptcyin proceedings in the United States Bankruptcy Court for the District of Delaware, docketed as Bankruptcy Petition No. 02-13376-KJC.  The debtor in that proceeding is a company entitled NextCard, Inc. (an entity distinct from Defendant NextCard, LLC).  On information and belief, the CPMG Entities have additional contacts with Delaware.

## COUNT I
### Declaratory Judgment of
### Non-Infringement and Invalidity of U.S. Patent Nos. 6,718,313 and 7,346,576

9.    7.——The allegations of paragraphs 1 through 68 are incorporated by reference into Count I as though fully set forth herein.

10.    8.——On information and belief, MCS, a CPMG Entity, purchased the '313 and '576 Patents out of bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware, docketed as Bankruptcy Petition No. 02-13376-KJC on March 22, 2007. MCS is controlled by CPMG, Inc, a Texas corporation.

11.    9.——On information and belief, on March 23, 2007 (one day after the MCS's purchase of the '313 and '576 Patents), NextCard, LLC wasand Warbler were formed by CPMG, and, on the same day, MCS purportedly assigned the rights in the '313 and '576 Patents through

- 4 -

Warbler to NextCard, LLC.  NextCard, LLC is controlled by Warbler Technologies, L.P., which is a Limited Partnership in Texas that is also controlled by CPMG, Inc.

12.    10.——On August 16, 2007, NextCard, LLC sued several companies in the United States District Court for the Eastern District of Texas ("the Texas Court"), asserting infringement of the '313 Patent.  NextCard, LLC alleges that the defendants therein have infringed and/or continue to infringe the '313 Patent by incorporating online chat features into their internet credit card offerings/applications in accordance with methods and systems claimed by the '313 Patent.  That case is now pending before Judge Ward as Civil Action No. 2:07-cv-354 (TJW) ("the Texas Litigation").

13.    11.——On March 18, 2008, the '576 Patent was issued by the United States Patent and Trademark Office as a continuation of the '313 Patent.  On information and belief,April 9, 2008, NextCard, LLC has threatened defendantsamended its Complaint in the Texas Litigation withto add a count for infringement litigation onof the '576 Patent, purportedly by adding it to the Texas Litigation through amendment of NextCard, LLC's complaint therein.

14.    12.——On information and belief, NextCard, LLC will accuse technology in the Texas Litigation made, used and/or sold by LivePerson, in particular, LivePerson's products which facilitate provision of online chat services in order to engage online visitors with human assistance in the form of a live chat service over the Internet.

15.    On April 30, 2008, NextCard filed suit against LivePerson in the United States District Court for the Eastern District of Texas, accusing LivePerson's technology of infringement of the NextCard Patents.

16.    13.——LivePerson denies that any of its products infringe the '313 and '576 Patents and further contends that the '313 and '576 Patents are invalid for failure to comply with

one or more of the requirement of Title 35, United States Code, including, but not limited to, 35 U.S.C. §§ 102, 103, and 112.

17.    14.——The Texas Litigation has, and the Texas suit against LivePerson itself, have placed a cloud over LivePerson's technology. The litigation in Texas Litigation is likely to cause confusion in the marketplace as to LivePerson's ability to provide software without its customers becoming the subject of indiscriminate patent litigation in Texas, and clouds LivePerson's ability to provide hassle-free services to its customers, and to market and sell its technology to new customers.

18.    15.——There now exists a current and justiciable controversy concerning whether the '313 and '576 Patents are infringed and invalid. This is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. LivePerson thus seeks a declaration from this Court resolving the present controversy.

## REQUEST FOR RELIEF

WHEREFORE, LivePerson prays for judgment against NextCard, LLC and MCSthe CPMG entities as follows:

(a)    Declaring that the '313 and '576 Patents are not infringed by LivePerson's products, and are invalid;

(b)    Awarding LivePerson its costs and disbursements in this action, including its reasonable attorneys' fees; and

(c)    Granting LivePerson such other relief as the Court deems just and equitable.

067025.1001

## DEMAND FOR JURY TRIAL

LivePerson demands a trial by jury on all issues so triable.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Melanie K. Sharp (No. 2501)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

Steven M. Bauer
Kimberly A. Mottley
Todd A. Gerety
Melissa A. Ganz[*]
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110-2600
(617) 526-9600

Dated: ~~March 18,~~
~~2008~~_____          *Attorneys for Plaintiff LivePerson, Inc.*

_____

[*] Admission *pro hac vice* pending.

# EXHIBIT C

LEAD, CONVERTED, CLMSAGNT, MTRUNADV

# U.S. Bankruptcy Court
## District of Delaware (Delaware)
## Bankruptcy Petition #: 02-13376-KJC

*Assigned to:* Kevin J. Carey
Chapter 7
Previous chapter 11
Voluntary
Asset

*Date Filed:* 11/14/2002
*Date Converted:* 08/11/2003

| | | |
|---|---|---|
| *Debtor* | | |
| **NextCard, Inc.** | represented by | **Brendan Linehan Shannon** |
| 595 Market Street | | Young, Conaway, Stargatt & Taylor |
| Suite 1800 | | The Brandywine Bldg. |
| San Francisco, CA 94105 | | 1000 West Street, 17th Floor |
| Tax id: 68-0384-606 | | PO Box 391 |
| *aka* | | Wilmington, DE 19899-0391 |
| **Internet Access Financial Corporation** | | usa |
| | | 302 571-6600 |
| | | Fax : 302-571-1253 |
| | | Email: bankruptcy@ycst.com |
| | | *TERMINATED: 10/18/2006* |
| | | |
| | | **Edward J. Kosmowski** |
| | | Young, Conaway, Stargatt & Taylor |
| | | 1000 West Street, 17th Floor |
| | | PO Box 391 |
| | | Wilmington, DE 19899 |
| | | usa |
| | | 302 571-6600 |
| | | Fax : 302-571-1253 |
| | | Email: bankfilings@ycst.com |
| | | |
| | | **Frederick B. Rosner** |
| | | Jaspan Schlesinger Hoffman |
| | | 913 North Market Street |
| | | 12 Floor |
| | | Wilmington, DE 19801 |
| | | usa |
| | | 302-351-8000 |
| | | Fax : 302-351-8010 |
| | | |
| *Trustee* | | |
| **Alfred Thomas Giuliano** | represented by | **John T. Carroll, III** |
| Giuliano Miller & Co., LLC | | Cozen O'Connor |
| 750 Route 73 South | | 1201 North Market Street |
| | | Suite 1400 |

Suite 110
Marlton, NJ 08053
856-596-7000

Wilmington, DE 19801
302-295-2028
Fax : 201-701-2140
Email: jcarroll@cozen.com

**John T. Carroll**
Cozen O'Connor
1900 Market Street
The Atrium
Philadelphia, PA 19801
302-295-2028
Fax : 302-295-2013
Email: jcarroll@cozen.com

*U.S. Trustee*
**United States Trustee**
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035
302-573-6491

*U.S. Trustee*
**Julie L. Compton**
Office of the U.S. Trustee
J. Caleb Boggs Federal Building
844 King Street
Suite 2313
Wilmington, DE 19801
usa
302-573-6491

| Filing Date | # | Docket Text |
|---|---|---|
| 02/28/2007 | 985 | Order (A) Approving Auction and Bid Procedures, Including Bidder Protections, in Connection With Sale of Certain of the Debtor's Intellectual Property Assets; (B) Scheduling an Auction and Hearing to Consider Approval of the Sale of Such Assets; (C) Approving Notice of Respective Date, Time and Place for Auction and for Hearing on Approval of Sale of Such Assets; and (D) Granting Other Related Relief. (Related Doc # 968) Order Signed on 2/27/2007. (LCN, ) Additional attachment(s) added on 2/28/2007 (LCN, ). (Entered: 02/28/2007) |
| 03/01/2007 | 986 | Order Granting Motion for Admission pro hac vice of Alyssa D. Englund, Esquire. (Related Doc # 983) Order Signed on 3/1/2007. (LCN, ) (Entered: 03/01/2007) |
| 03/01/2007 | 987 | Interim Application for Compensation *Ninth for the Period of August 1, 2006 through February 21, 2007 as Counsel to the Trustee* Filed by COZEN |

| | | |
|---|---|---|
| | | O'CONNOR. Hearing scheduled for 3/22/2007 at 11:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. Objections due by 3/15/2007. (Attachments: # 1 Notice # 2 Declaration # 3 Exhibit A# 4 Exhibit B# 5 Exhibit C) (Carroll, John) (Entered: 03/01/2007) |
| 03/01/2007 | 988 | Motion to Limit Notice *Regarding Ninth Interim Application for Allowance of Compensation for the Period of August 1, 2006 through February 21, 2007 as Counsel to the Trustee* (related document(s)987 ) Filed by COZEN O'CONNOR. Hearing scheduled for 3/22/2007 at 11:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. Objections due by 3/15/2007. (Attachments: # 1 Proposed Form of Order # 2 Exhibit A) (Carroll, John) (Entered: 03/01/2007) |
| 03/02/2007 | 989 | Certificate of Service *Regarding Ninth Interim Application for Compensation for the Period of August 1, 2006 through February 21, 2007 as Counsel to the Trustee* (related document(s)987 ) Filed by COZEN O'CONNOR. (Attachments: # 1 Service List) (Carroll, John) (Entered: 03/02/2007) |
| 03/02/2007 | 990 | Certificate of Service *of (1) Auction and Sale Hearing Notice, (2) Order Approving Auction and Bid Procedures Including Bidder Protections in Connection with Sale of Certain of the Debtor's Intellectual Property and (3) Bid Procedures* (related document(s)985 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Exhibit A# 2 Exhibit B) (Carroll, John) (Entered: 03/02/2007) |
| 03/06/2007 | 991 | Order Authorizing Motion to Limit Notice and Approve Form and Manner Thereof Regarding Cozen O'Connor as Counsel to the Trustee for Allowance of Ninth Interim Compensation and Reimbursement of Expenses for the Period August 1, 2006 Through February 21, 2007. (Related Doc # 988, 987) Order Signed on 3/6/2007. (LCN, ) (Entered: 03/06/2007) |
| 03/07/2007 | | Adversary Case 04-56415 Closed by Deputy Clerk. (MEB, ) (Entered: 03/07/2007) |
| 03/07/2007 | | Adversary Case 04-56418 Closed by Deputy Clerk. (MEB, ) (Entered: 03/07/2007) |
| 03/14/2007 | 992 | Status Report *of Adv. Proc. Nos. 04-56415 and 04-56418* Filed by richard goebel. (Hurford, Mark) (Entered: 03/14/2007) |
| 03/15/2007 | 993 | Notice of Appearance *Request for Matrix Entry and Request for Service of All Notices and Documents* Filed by Intellectual Ventures Management, LLC. (Mersky, Rachel) (Entered: 03/15/2007) |
| 03/15/2007 | 994 | Certificate of Service for Status Report Filed by richard goebel, daniel springer. (Hurford, Mark) Modified Text on 3/16/2007 (ALC, ). (Entered: |

| | | 03/15/2007) |
|---|---|---|
| 03/20/2007 | 995 | Certificate of No Objection *Regarding Ninth Interim Application for Compensation for the Period of August 1, 2006 through February 21, 2007 as Counsel to the Trustee* (related document(s)987 ) Filed by COZEN O'CONNOR. (Carroll, John) (Entered: 03/20/2007) |
| 03/20/2007 | 996 | Notice of Agenda of Matters Scheduled for Hearing Filed by Alfred Thomas Giuliano. Hearing scheduled for 3/22/2007 at 11:00 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Carroll, John) (Entered: 03/20/2007) |
| 03/22/2007 | 997 | Notice of Filing Patent Purchase Agreement Between Chapter 7 Trustee and Marshall Credit Strategies, LLC (related document(s)968 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Exhibit A) (Carroll, John) Modified Text on 3/23/2007 (ALC, ). (Entered: 03/22/2007) |
| 03/22/2007 | 998 | **Minutes of Hearing held on: 03/22/2007** **Subject:** Sale and Fee Applications. (vCal Hearing ID (36682)). (NJH, ) Additional attachment(s) added on 3/22/2007 (LCN, ). (Entered: 03/22/2007) |
| 03/22/2007 | 999 | Order Approving Application of Cozen O'Connor as Counsel to the Trustee for Allowance of Ninth Interim Compensation and Reimbursement of Expenses for the Period August 1, 2006 Through February 21, 2007. (Related Doc # 987) Order Signed on 3/22/2007. (LCN, ) (Entered: 03/22/2007) |
| 03/22/2007 | 1000 | Order (A) Authorizing Sale of Certain of the Debtor's Intellectual Property Assets Free and Clear of all Liens, Claims, and Encumbrances and (B) Granting Related Relief. (related document(s)968 ) Order Signed on 3/22/2007. (LCN, ) (Entered: 03/22/2007) |
| 04/02/2007 | 1001 | Bond Notice of Trustee Alfred T. Giuliano Filed by United States Trustee. (Attachments: # 1 Notice of Filing# 2 Certificate of Service)(United States Trustee, ) Modified Duplicate text on 4/3/2007 (ALC, ). (Entered: 04/02/2007) |
| 07/10/2007 | 1002 | Certification of Counsel *Regarding Omnibus Hearing Dates (August 16, 2007 at 1:30 p.m.)* Filed by Alfred Thomas Giuliano. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 07/10/2007) |
| 07/13/2007 | 1003 | Order Setting Omnibus Hearing Dates. All hearings will be held at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware (Related document(s)1002 ). Omnibus Hearings scheduled for 8/16/2007 at 01:30 PM. Signed on 7/12/2007. (LCN, ) (Entered: 07/13/2007) |
| 07/17/2007 | 1004 | Notice of Status Hearing Regarding Motion for Relief from Stay filed by |

|  |  | Richard Goebel and Daniel Springer (related document(s)872 ) Filed by Alfred Thomas Giuliano. Hearing scheduled for 7/25/2007 at 11:30 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Carroll, John) Modified Duplicate Text on 7/18/2007 (ALC, ). (Entered: 07/17/2007) |
| --- | --- | --- |
| 07/17/2007 | 1005 | Certificate of Service *Regarding Notice of Status Hearing Regarding Motion for Relief from Stay filed by Richard Goebel and Daniel Springer* (related document(s)1004 ) Filed by Alfred Thomas Giuliano. (Carroll, John) (Entered: 07/17/2007) |
| 07/18/2007 | 1006 | Certificate of Service *of Omnibus Hearing Order* (related document(s)1003 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Exhibit A - Service List) (Carroll, John) (Entered: 07/18/2007) |
| 07/23/2007 | 1007 | Notice of Agenda of Matters Scheduled for Hearing Filed by Alfred Thomas Giuliano. Hearing scheduled for 7/25/2007 at 11:30 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Carroll, John) (Entered: 07/23/2007) |
| 07/24/2007 | 1008 | Notice of Agenda of Matters Scheduled for Hearing *Amended* (related document(s)1007 ) Filed by Alfred Thomas Giuliano. Hearing scheduled for 7/25/2007 at 11:30 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Carroll, John) (Entered: 07/24/2007) |
| 07/25/2007 | 1009 | **Minutes of Hearing held on: 07/25/2007** **Subject:** Status on Goebel/Springer Motion. (vCal Hearing ID (48174)). (NJH, ) Additional attachment(s) added on 7/26/2007 (LCN, ). (Entered: 07/25/2007) |
| 07/27/2007 | 1010 | Interim Application for Compensation *(Tenth) as Counsel to the Trustee for the Period of February 22, 2007 through June 27, 2007* Filed by COZEN O'CONNOR. Hearing scheduled for 8/16/2007 at 01:30 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. Objections due by 8/9/2007. (Attachments: # 1 Notice # 2 Certification# 3 Exhibit A Part One# 4 Exhibit A Part Two# 5 Exhibit B# 6 Exhibit C) (Carroll, John) (Entered: 07/27/2007) |
| 08/02/2007 | 1011 | Order Regarding Motion for Relief From Stay Filed by Richard Goebel and Daniel Springer. (related document(s)918, 872 ) Order Signed on 8/2/2007. (LCN, ) (Entered: 08/02/2007) |
| 08/08/2007 | 1012 | Transcript Of Motions Hearing Before The Honorable Walter Shapero, Held on January 27, 2006. (related document(s)929 ) (JWS, ) (Entered: 08/08/2007) |
| 08/08/2007 | 1013 | Certificate of Service *of Application of Cozen O'Connor as Counsel to the* |

| | | |
|---|---|---|
| | | *Trustee for Allowance of Tenth Interim Compensation and Reimbursement of Expenses for the Period February 22, 2007 Through June 27, 2007* (related document(s)1010 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Exhibit A - Service List) (Carroll, John) (Entered: 08/08/2007) |
| 08/10/2007 | 1014 | Certificate of No Objection *Regarding Application of Cozen O'Connor As Counsel to the Trustee for Allowance of Tenth Interim Compensation and Reimbursement of Expenses for the Period February 22, 2007 Through June 22, 2007* (related document(s)1010 ) Filed by COZEN O'CONNOR. (Carroll, John) (Entered: 08/10/2007) |
| 08/13/2007 | 1015 | Notice of Agenda of Matters Scheduled for Hearing Filed by Alfred Thomas Giuliano. Hearing scheduled for 8/16/2007 at 01:30 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Carroll, John) (Entered: 08/13/2007) |
| 08/13/2007 | 1016 | Reply *to Chapter 7 Trustee's Supplemental Objection to Motion of Richard Goebel and Daniel Springer for Relief from Stay* (related document(s)887, 872 ) Filed by richard goebel, daniel springer (Attachments: # 1 Exhibit A) (Davis, Kathleen) (Entered: 08/13/2007) |
| 08/15/2007 | 1017 | Reply *(Errata Sheet to Reply to Chapter 7 Trustee's Supplemental Objection to Motion of Richard Goebel and Daniel Springer for Relief from Stay)* (related document(s)1016, 887, 872 ) Filed by richard goebel, daniel springer (Attachments: # 1 Exhibit A# 2 Certificate of Service # 3 Service List) (Davis, Kathleen) (Entered: 08/15/2007) |
| 08/15/2007 | 1018 | Certificate of Service *of Reply to Chapter 7 Trustee's Supplemental Objection to Motion of Richard Goebel and Daniel Springer for Relief from Stay* (related document(s)1016 ) Filed by richard goebel, daniel springer. (Attachments: # 1 Service List) (Davis, Kathleen) (Entered: 08/15/2007) |
| 08/16/2007 | 1019 | **Minutes of Hearing held on: 08/16/2007** **Subject:** Fee App. (vCal Hearing ID (48073)). (NJH, ) Additional attachment(s) added on 8/17/2007 (LCN, ). (Entered: 08/16/2007) |
| 08/17/2007 | 1020 | Order Approving Application of Cozen O'Connor as Counsel to the Trustee for Allowance of Tenth Interim Compensation and Reimbursement of Expenses for the Period February 22, 2007 Through June 27, 2007. (Related Doc # 1010) Order Signed on 8/16/2007. (LCN, ) (Entered: 08/17/2007) |
| 08/28/2007 | 1021 | Motion to Strike *of Richard Goebel and Daniel Springer to Have Declared Unlawful the Provision in Settlement Agreement Between Trustee and Directors and Officers Which Bars Trustee from Entering into Rescission Settlement with Richard Goebel and Daniel Springer* Filed by richard goebel, daniel springer. Hearing scheduled for 10/24/2007 at 11:00 AM at US Bankruptcy Court, 824 Market St., 5th Floor, Courtroom #5, Wilmington, |

|  |  | DE. Objections due by 9/17/2007. (Attachments: # 1 Notice # 2 Declaration of Bruce J. Highman# 3 Exhibit 1 to Highman Declaration# 4 Exhibit 2 Highman Declaration# 5 Exhibit 3 Highman Declaration# 6 Exhibit 4 to Highman Declaration# 7 Exhibit 5 to Highman Declaration# 8 Exhibit 6 to to Highman Declaration# 9 Exhibit 7A to Highman Declaration# 10 Exhibit 7B to Highman Declaration# 11 Exhibit 8 to Highman Declaration# 12 Exhibit 9 to Highman Declaration# 13 Exhibit 10 to Highman Declaration# 14 Exhibit 11 to Highman Declaration# 15 Exhibit 12 to Highman Declaration# 16 Exhibit 13 to Highman Declaration# 17 Declaration of Lawrence Ball# 18 Exhibit to Ball Declaration# 19 Proposed Form of Order # 20 Certificate of Service # 21 Service List) (Hurford, Mark) Modified Text To Add Hearing Location on 8/29/2007 (ALC, ). (Entered: 08/28/2007) |
|---|---|---|
| 09/14/2007 | 1022 | Transcript of Hearing held on July 25, 2007 before the Honorable Kevin J. Carey. (related document(s)1007 ) (BJM) (Entered: 09/14/2007) |
| 09/17/2007 | 1023 | Objection to *Motion of Richard Goebel and Daniel Springer to Have Declared Unlawful the Provision in Settlement Agreement Between Trustee and Directors and Officers Which Bars Trustee from Entering into Rescission Settlement with Richard Goebel and Daniel Springer* (related document(s)1021 ) Filed by Alfred Thomas Giuliano (Attachments: # 1 Certificate of Service) (Carroll, John) (Entered: 09/17/2007) |
| 09/18/2007 | 1024 | Objection to *Jeremy R. Lent's Opposition to Richard Goebel's and Daniel Springer's Motion to Have Declared Unlawful the Provisions in Settlement Agreement Between Trustee and NextCard Former Directors and Officers Which Bars Trustee from Entering into Rescission Settlement with Richard Goebel and Daniel Springer* (related document(s)1021 ) Filed by Jeremy Lent (Attachments: # 1 Certificate of Service) (Phillips, John) (Entered: 09/18/2007) |
| 10/01/2007 | 1025 | Notice of Hearing *and Change in Hearing Time* Filed by Alfred Thomas Giuliano. Hearing scheduled for 10/24/2007 at 03:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Carroll, John) (Entered: 10/01/2007) |
| 10/04/2007 | 1026 | Reply *to Objections of the Trustee and Jeremy Lent to Motion of Richard Goebel and Daniel Springer to Have Declared Unlawful the Provision in Settlement Agreement Between Trustee and Directors and Officers Which Bars Trustee from Entering into Rescission Settlement with Richard Goebel and Daniel Springer* (related document(s)1021, 1023, 1024, 1022 ) Filed by richard goebel, daniel springer (Attachments: # 1 Certificate of Service # 2 Service List) (Hurford, Mark) (Entered: 10/04/2007) |
| 10/11/2007 | 1027 | Application to Employ *and Compensate* Matheson Ormsby Prentice as Special International Counsel Filed by Alfred Thomas Giuliano. (Attachments: # 1 Proposed Form of Order # 2 Exhibit A) (Carroll, John) (Entered: 10/11/2007) |

| 10/11/2007 | 1028 | Emergency Motion to Approve *Trustee's Application for Authority to Employ and Compensate Matheson Ormsby Prentice as Special Litigation Counsel [Related Doc. No. 1027]* Filed by Alfred Thomas Giuliano. (Attachments: # 1 Proposed Form of Order # 2 Exhibit A# 3 Affidavit) (Carroll, John) (Entered: 10/11/2007) |
| --- | --- | --- |
| 10/12/2007 | 1029 | Order Granting Motion for an Expedited Hearing to Consider Trustee's (I) Application for Authority to Employ and Compensate Matheson Ormsby Prentice as Special International Counsel to the Trustee. (Related Doc # 1028, 1027) Order Signed on 10/12/2007. (LCN, ) Modified text on 10/12/2007 (LCN, ). (Entered: 10/12/2007) |
| 10/15/2007 | 1030 | Certificate of Service *of Motion for Expedited Hearing to Consider Trustee's Application for Authority to Employ and Compensate Matheson Ormsby Prentice as Special International Counsel to the Trustee Pursuant to 11 U.S.C. Sections 327 and 328 and Fed. R. Bankr. P. 2014* (related document (s)1027, 1028 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Exhibit A - Service List) (Carroll, John) (Entered: 10/15/2007) |
| 10/16/2007 | 1031 | Certificate of Service *of Order Granting Motion for an Expedited Hearing to Consider Trustee's Application for Authority to Employ and Compensate Matheson Ormsby Prentice as Special International Counsel to the Trustee Pursuant to 11 U.S.C. Sections 327 and 328 and Fed. R. Bankr. P. 2014* (related document(s)1029 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Exhibit A - Service List) (Carroll, John) (Entered: 10/16/2007) |
| 10/22/2007 | 1032 | Notice of Agenda of Matters Scheduled for Hearing Filed by Alfred Thomas Giuliano. Hearing scheduled for 10/24/2007 at 03:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Carroll, John) (Entered: 10/22/2007) |
| 10/23/2007 | 1033 | Certificate of No Objection *Regarding Trustee's Application for Authority to Employ and Compensate Matheson Ormsby Prentice as Special International Counsel to the Trustee Pursuant to 11 U.S.C. Sections 327 and 328 and Fed. R. Bankr. P. 2014, Together With Motion for for Expedited Consideration* (related document(s)1027, 1028 ) Filed by Alfred Thomas Giuliano. (Carroll, John) (Entered: 10/23/2007) |
| 10/23/2007 | 1034 | Motion to Appear pro hac vice *of Benjamin H. Horwich of Latham & Watkins LLP*. Receipt Number 149323, Filed by Ernst & Young LLP. (Beskrone, Don) (Entered: 10/23/2007) |
| 10/23/2007 | 1035 | Motion to Appear pro hac vice *of Katharine E. Nolan of Latham & Watkins LLP*. Receipt Number 149324, Filed by Ernst & Young LLP. (Beskrone, Don) (Entered: 10/23/2007) |
| 10/24/2007 | 1036 | Order Granting Motion for Admission pro hac vice of Benjamin H. Horwich. (Related Doc # 1034) Order Signed on 10/23/2007. (LCN, ) (Entered: |

| | | |
|---|---|---|
| | | 10/24/2007) |
| 10/24/2007 | 1037 | Order Granting Motion for Admission pro hac vice of Katharine E. Nolan. (Related Doc # 1035) Order Signed on 10/23/2007. (LCN, ) (Entered: 10/24/2007) |
| 10/24/2007 | 1039 | **Minutes of Hearing held on: 10/24/2007** **Subject: Omnibus.** (vCal Hearing ID (52251)). (related document(s) 1032) (NJH, ) Additional attachment(s) added on 10/26/2007 (LCN, ). (Entered: 10/25/2007) |
| 10/25/2007 | 1038 | Order Granting Trustee's Application for Authority to Employ and Compensate Matheson Ormsby Prentice as Special International Counsel to the Trustee. (related document(s)1028 ) Order Signed on 10/24/2007. (LCN, ) (Entered: 10/25/2007) |
| 10/25/2007 | 1040 | Certification of Counsel *Regarding Motion to Have Declared Unlawful the Provision in Settlement Agreement Between Trustee and Directors and Officers Which Bars Trustee from Entering into Rescission Settlement with Richard Goebel and Daniel Springer* (related document(s)1021 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 10/25/2007) |
| 10/26/2007 | 1041 | Order Denying Motion of Richard Goebel and Daniel Springer to Have Declared Unlawful the Provision in Settlement Agreement Between Trustee and Directors and Officers Which Bars Trustee from Entering into Rescission Settlement with Richard Goebel and Daniel Springer. (Related Doc # 1021) Order Signed on 10/26/2007. (LCN, ) (Entered: 10/26/2007) |
| 11/07/2007 | 1042 | Transcript of Hearing held on October 24, 2007 before the Honorable Kevin J. Carey. (BJM) (Entered: 11/07/2007) |
| 11/19/2007 | 1043 | Certification of Counsel *Regarding Omnibus Hearing Date 12/10/2007 at 11:30 a.m.* Filed by Alfred Thomas Giuliano. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 11/19/2007) |
| 11/20/2007 | 1044 | Interim Application for Compensation *(Eleventh) as Counsel to the Trustee for the Period of June 28, 2007 through October 29, 2007* Filed by Cozen O'Connor. Hearing scheduled for 12/10/2007 at 11:30 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. Objections due by 12/3/2007. (Attachments: # 1 Notice # 2 Declaration # 3 Exhibit A Part 1# 4 Exhibit A Part 2# 5 Exhibit A Part 3# 6 Exhibit A Part 4# 7 Exhibit A Part 5# 8 Exhibit B# 9 Exhibit C) (Carroll, John) (Entered: 11/20/2007) |
| 11/26/2007 | 1045 | Motion to Limit Notice *Regarding Eleventh Interim Application for Compensation as Counsel to the Trustee for the Period of June 28, 2007* |

| | | |
|---|---|---|
| | | *through October 29, 2007* (related document(s)1044 ) Filed by Cozen O'Connor. Hearing scheduled for 12/10/2007 at 11:30 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. Objections due by 12/3/2007. (Attachments: # 1 Proposed Form of Order # 2 Exhibit A) (Carroll, John) (Entered: 11/26/2007) |
| 11/28/2007 | 1046 | Order Authorizing Motion to Limit Notice and Approve Form and Manner Thereof Regarding Cozen O'Connor as Counsel to the Trustee for Allowance of Eleventh Interim Compensation and Reimbursement of Expenses for the Period June 28, 2007 Through October 29, 2007. (Related Doc # 1045, 1044) Order Signed on 11/27/2007. (LCN, ) (Entered: 11/28/2007) |
| 11/28/2007 | 1047 | Certificate of Service *of Application of Cozen O'Connor as Counsel to the Trustee for Allowance of Eleventh Interim Compensation and Reimbursement of Expenses for the Period June 28, 2007 Through October 29, 2007* (related document(s)1044 ) Filed by Cozen O'Connor. (Attachments: # 1 Exhibit A - Service List) (Carroll, John) (Entered: 11/28/2007) |
| 11/29/2007 | 1048 | Stipulation *to Extend Time for Filing Supplemental Briefs Regarding Motion for Relief from Stay filed by Richard Goebel and Daniel Springer* Between Alfred Thomas Giuliano and Richard Goebel, Daniel Springer and Jeremy Lent . (related document(s)872 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 11/29/2007) |
| 11/30/2007 | 1049 | Order Approving Stipulation to Extend Time for Filing Supplemental Briefs Regarding Motion for Relief from Stay filed by Richard Goebel and Daniel Springer. (related document(s)1048 ) Order Signed on 11/29/2007. (LCN, ) (Entered: 11/30/2007) |
| 12/04/2007 | 1050 | Notice of Adjourned/Rescheduled Hearing Filed by Alfred Thomas Giuliano. Hearing scheduled for 12/12/2007 at 11:30 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Carroll, John) (Entered: 12/04/2007) |
| 12/07/2007 | 1051 | Certificate of No Objection *Regarding Eleventh Interim Application for Compensation as Counsel to the Trustee for the Period of June 28, 2007 through October 29, 2007* (related document(s)1044 ) Filed by Cozen O'Connor. (Attachments: # 1 Exhibit A - Modified Proposed Form of Order) (Carroll, John) (Entered: 12/07/2007) |
| 12/10/2007 | 1052 | Notice of Agenda of Matters Scheduled for Hearing Filed by Alfred Thomas Giuliano. Hearing scheduled for 12/12/2007 at 11:30 AM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Carroll, John) (Entered: 12/10/2007) |
| 12/10/2007 | 1053 | Certification of Counsel *to the Chapter 7 Trustee Requesting the Issuance of a Letter Request for International Judicial Assistance to the Appropriate* |

| | | |
|---|---|---|
| | | *Judicial Authority in Ireland* Filed by Alfred Thomas Giuliano. (Attachments: # 1 Exhibit A) (Carroll, John) (Entered: 12/10/2007) |
| 12/11/2007 | 1054 | Request for International Judicial Assistance to the Appropriate Judicial Authority. (related document(s) 1053) Signed on 12/11/2007 (LCN, ) (Entered: 12/11/2007) |
| 12/12/2007 | 1057 | **Minutes of Hearing held on: 12/12/2007** **Subject:** Fee Apps. (vCal Hearing ID (60912)). (related document(s) 1052) (NJH, ) Additional attachment(s) added on 12/18/2007 (LCN, ). (Entered: 12/17/2007) |
| 12/13/2007 | 1055 | Certification of Counsel *Regarding Eleventh Interim Application for Allowance of Compensation and Reimbursement of Expenses of Cozen O'Connor as Counsel to the Trustee for the Period of June 28, 2007 through October 29, 2007* (related document(s)1044 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Exhibit A# 2 Exhibit B) (Carroll, John) (Entered: 12/13/2007) |
| 12/14/2007 | 1056 | Order Approving Application of Cozen O'Connor as Counsel to the Trustee for Allowance of Eleventh Interim Compensation and Reimbursement of Expenses for the Period June 28, 2007 Through December 29, 2007. (Related Doc # 1044) Order Signed on 12/14/2007. (LCN, ) (Entered: 12/14/2007) |
| 12/17/2007 | 1058 | Hearing Held/Court Sign-In Sheet (related document(s)1057) (Murin, Leslie) (Entered: 12/17/2007) |
| 12/18/2007 | 1059 | Stipulation *to Extend Time for Filing Supplemental Briefs Regarding Motion for Relief from Stay filed by Richard Goebel and Daniel Springer* Between Alfred Thomas Giuliano and Richard Goebel, Daniel Springer and Jeremy Lent . Filed by Alfred Thomas Giuliano. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 12/18/2007) |
| 12/20/2007 | 1060 | Order Approving Second Stipulation to Extend Time for Filing Supplemental Briefs Regarding Motion for Relief from Stay filed by Richard Goebel and Daniel Springer. (related document(s)872, 1059 ) Order Signed on 12/19/2007. (LCN, ) (Entered: 12/20/2007) |
| 01/08/2008 | 1061 | Stipulation *(Third) to Extend Time for Filing Supplemental Briefs Regarding Motion for Relief from Stay filed by Richard Goebel and Daniel Springer* Between Alfred Thomas Giuliano and Richard Goebel, Daniel Springer, Jeremy Lent . (related document(s)872 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 01/08/2008) |
| 01/09/2008 | 1062 | Order Approving Third Stipulation To Extend Time For Filing Supplemental Briefs Regarding Motions For Relief From Stay Filed By Richard Goebel |

| | | |
|---|---|---|
| | | And Daniel Springer (Related Doc # 872,1061) Order Signed on 1/9/2008. (JSJ, ) (Entered: 01/09/2008) |
| 01/30/2008 | 1063 | Stipulation *(Fourth) to Extend Time for Filing Supplemental Briefs Regarding Motion for Relief from Stay Filed by Richard Goebel and Daniel Springer* Between Alfred Thomas Giuliano and Richard Goebel, Daniel Springer and Jeremy Lent . (related document(s)872 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 01/30/2008) |
| 02/04/2008 | 1064 | Order Approving Fourth Stipulation To Extend Time For Filing Supplemental Briefs Regarding Motion For Relief from Stay Filed By Richard Goebel And Daniel Springer (Related Doc # 1063) Order Signed on 2/1/2008. (JSJ, ) (Entered: 02/04/2008) |
| 02/07/2008 | 1065 | Motion to Allow Claims *Employee Wage Claims as Chapter 11 Administrative Claims and Authorizing Distribution* Filed by Alfred Thomas Giuliano. Hearing scheduled for 3/12/2008 at 03:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. Objections due by 3/5/2008. (Attachments: # 1 Notice # 2 Proposed Form of Order # 3 Exhibit A# 4 Exhibit B# 5 Exhibit C# 6 Exhibit D# 7 Exhibit E) (Carroll, John) (Entered: 02/07/2008) |
| 02/12/2008 | 1066 | Certification of Counsel *Regarding Omnibus Hearing Dates (March 12, 2008 at 3:00 p.m.)* Filed by Alfred Thomas Giuliano. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 02/12/2008) |
| 02/12/2008 | 1067 | Certificate of Service *Regarding Motion to Allow Claims Employee Wage Claims as Chapter 11 Administrative Claims and Authorizing Distribution* (related document(s)1065 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Service List) (Carroll, John) (Entered: 02/12/2008) |
| 02/25/2008 | 1068 | Notice To Substitute Attorney Filed by Ernst & Young LLP. (Weiss, John) (Entered: 02/25/2008) |
| 02/29/2008 | 1069 | Stipulation *(Fifth) to Extend Time for Filing Supplemental Briefs Regarding Motion for Relief from Stay Filed by Richard Goebel and Daniel Springer* Between Alfred Thomas Giuliano and Richard Goebel, Daniel Springer and Jeremy Lent . (related document(s)872 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 02/29/2008) |
| 03/04/2008 | 1070 | Certification of Counsel *Regarding Omnibus Hearing Date; April 9, 2008 at 1:30 p.m.* Filed by Alfred Thomas Giuliano. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 03/04/2008) |
| 03/05/2008 | 1071 | Order Approving Fifth Stipulation to Extend Time for Filing Supplemental |

| | | |
|---|---|---|
| | | Briefs Regarding Motion for Relief from Stay Filed by Richard Goebel and Daniel Springer. (related document(s)1069 ) Order Signed on 3/5/2008. (LCN, ) (Entered: 03/05/2008) |
| 03/05/2008 | 1072 | Order Setting Omnibus Hearing Date. All hearings will be held at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware (Related document(s)1070 ). Omnibus Hearing scheduled for 4/9/2008 at 01:30 PM. Signed on 3/5/2008. (LCN, ) (Entered: 03/05/2008) |
| 03/10/2008 | 1073 | Certificate of No Objection *Regarding Motion of Chapter 7 Trustee for an Order Allowing Employee Wage Claims as Chapter 11 Administrative Claims and Authorizing Distribution* (related document(s)1065 ) Filed by Alfred Thomas Giuliano. (Carroll, John) (Entered: 03/10/2008) |
| 03/10/2008 | 1074 | Notice of Agenda of Matters Scheduled for Hearing Filed by Alfred Thomas Giuliano. Hearing scheduled for 3/12/2008 at 03:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Carroll, John) (Entered: 03/10/2008) |
| 03/11/2008 | 1075 | Order Granting Motion of Alfred T. Giuliano, Chapter 7 Trustee of the Estate of NextCard, Inc. for Entry of an Order Allowing Employee Wage Claims as Chapter 11 Administrative Claims and Authorizing Distribution. (Related Doc # 1065) Order Signed on 3/11/2008. (LCN, ) (Entered: 03/11/2008) |
| 03/11/2008 | 1076 | HEARING CANCELLED. Amended Notice of Agenda of Matters Scheduled for Hearing. (related document(s)1074 ) Filed by Alfred Thomas Giuliano. Hearing scheduled for 3/12/2008 at 03:00 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #4, Wilmington, Delaware. (Carroll, John) (Entered: 03/11/2008) |
| 03/18/2008 | 1077 | Final Application for Compensation *and Reimbursement of Expenses for the Period May 1, 2005 through May 9, 2007 as Special Patent Counsel to the Trustee* Filed by Van Pelt, Yi & James LLP. Hearing scheduled for 4/9/2008 at 01:30 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. Objections due by 4/2/2008. (Attachments: # 1 Notice # 2 Proposed Form of Order # 3 Verification# 4 Exhibit A Part 1# 5 Exhibit A Part 2# 6 Exhibit A Part 3) (Carroll, John) (Entered: 03/18/2008) |
| 03/18/2008 | 1078 | Interim Application for Compensation *(Twelfth) and Reimbursement of Expenses for the Period of October 30, 2007 through March 5, 2008 as Counsel to the Trustee* Filed by Cozen O'Connor. Hearing scheduled for 4/9/2008 at 01:30 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. Objections due by 4/2/2008. (Attachments: # 1 Notice # 2 Verification# 3 Exhibit A Part 1# 4 Exhibit A Part 2# 5 Exhibit B# 6 Exhibit C (Proposed Order)) (Carroll, John) (Entered: 03/18/2008) |
| 03/18/2008 | 1079 | Interim Application for Compensation *(Third) and Reimbursement of* |

| | | |
|---|---|---|
| | | *Expenses for the Period of July 1, 2005 through February 29, 2008 as Special Counsel to the Trustee* Filed by Rosen, Bien & Galvan, LLP. Hearing scheduled for 4/9/2008 at 01:30 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. Objections due by 4/2/2008. (Attachments: # 1 Notice # 2 Verification# 3 Exhibit A Part 1# 4 Exhibit A Part 2# 5 Exhibit B# 6 Exhibit C (Proposed Order)) (Carroll, John) (Entered: 03/18/2008) |
| 03/19/2008 | 1080 | Motion to Limit Notice *and Approve Form and Mannter Thereof Regarding Final Application for Compensation and Reimbursement of Expenses for the Period May 1, 2005 through May 9, 2007 as Special Patent Counsel to the Trustee* (related document(s)1077 ) Filed by Van Pelt, Yi & James LLP. Hearing scheduled for 4/9/2008 at 01:30 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. Objections due by 4/2/2008. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 03/19/2008) |
| 03/19/2008 | 1081 | Motion to Limit Notice *and Approve Form and Manner Thereto Regarding Twelfth Interim Application for Compensation and Reimbursement of Expenses for the Period of October 30, 2007 through March 5, 2008 as Counsel to the Trustee* (related document(s)1078 ) Filed by Cozen O'Connor. Hearing scheduled for 4/9/2008 at 01:30 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. Objections due by 4/2/2008. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 03/19/2008) |
| 03/19/2008 | 1082 | Motion to Limit Notice *and Approve Form and Manner Thereto Regarding Third Interim Application for Compensation and Reimbursement of Expenses for the Period of July 1, 2005 through February 29, 2008 as Special Counsel to the Trustee* (related document(s)1079 ) Filed by Rosen, Bien & Galvan, LLP. Hearing scheduled for 4/9/2008 at 01:30 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. Objections due by 4/2/2008. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 03/19/2008) |
| 03/20/2008 | 1083 | Certificate of Service *of Verified Application of Van Pelt, Yi & James LLP as Special Patent Counsel to the Trustee for Allowance of Second and Final Fee Application for Compensation and Reimbursement of Expenses for the Period May 1, 2005 Through May 9, 2007* (related document(s)1077 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Exhibit A - Service List) (Carroll, John) (Entered: 03/20/2008) |
| 03/20/2008 | 1084 | Certificate of Service *of Application of Cozen O'Connor as Counsel to the Trustee for Allowance of Twelfth Interim Compensation and Reimbursement of Expenses for the Period October 30, 2007 Through March 5, 2008* (related document(s)1078 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Exhibit A - Service List) (Carroll, John) (Entered: 03/20/2008) |
| | | |

| 03/20/2008 | 1085 | Certificate of Service *of Application of Rosen, Bien & Galvan, LLP as Special Counsel to the Trustee for Allowance of Third Interim Compensation and Reimbursement of Expenses for the Period July 1, 2005 Through February 29, 2008* (related document(s)1079 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Exhibit A - Service List) (Carroll, John) (Entered: 03/20/2008) |
| --- | --- | --- |
| 03/20/2008 | 1086 | Order Authorizing Motion to Limit Notice and Approve Form and Manner Thereof Regarding Rosen, Bien & Galvan LLP as Special Counsel to the Trustee for Allowance of Third Interim Compensation and Reimbursement of Expenses for the Period July 1, 2005 Through February 29, 2008. (Related Doc # 1082) Order Signed on 3/20/2008. (LCN, ) (Entered: 03/20/2008) |
| 03/20/2008 | 1087 | Order Authorizing Motion to Limit Notice and Approve Form and Manner Thereof Regarding Cozen O'Connor as Special Counsel to the Trustee for Allowance of Twelfth Interim Compensation and Reimbursement of Expenses for the Period October 30, 2007 Through March 5, 2008. (Related Doc # 1081) Order Signed on 3/20/2008. (LCN, ) (Entered: 03/20/2008) |
| 03/20/2008 | 1088 | Order Authorizing Motion to Limit Notice and Approve Form and Manner Thereof Regarding Van Pelt, Yi & James LLP as Special Patent Counsel to the Trustee for Allowance of Second and Final Compensation and Reimbursement of Expenses for the Period May 1, 2005 Through May 9, 2007. (Related Doc # 1080) Order Signed on 3/20/2008. (LCN, ) (Entered: 03/20/2008) |
| 03/28/2008 | 1089 | Stipulation *(Sixth) to Extend Time for Filing Supplemental Briefs Regarding Motion for Relief from Stay Filed by Richard Goebel and Daniel Springer* Between Alfred Thomas Giuliano and Richard Goebel, Daniel Springer, Jeremy Lent . (related document(s)872 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 03/28/2008) |
| 04/01/2008 | 1090 | Order Approving Sixth Stipulation To Extend Time For Filing Supplemental Briefs Regarding Motion For Relief From Stay Filed By Richard Goebel And Daniel Springer. (related document(s)1089 ) Order Signed on 3/31/2008. (BMT, ) (Entered: 04/01/2008) |
| 04/07/2008 | 1091 | Certificate of No Objection *Regarding Final Application for Compensation and Reimbursement of Expenses for the Period May 1, 2005 through May 9, 2007 as Special Patent Counsel to the Trustee s* (related document(s)1077 ) Filed by Van Pelt, Yi & James LLP. (Carroll, John) (Entered: 04/07/2008) |
| 04/07/2008 | 1092 | Certificate of No Objection *Regarding Twelfth Interim Application for Compensation and Reimbursement of Expenses for the Period of October 30, 2007 through March 5, 2008 as Counsel to the Trustee* (related document(s) 1078 ) Filed by Cozen O'Connor. (Carroll, John) (Entered: 04/07/2008) |

| 04/07/2008 | 1093 | Certificate of No Objection *Regarding Third Interim Application for Compensation and Reimbursement of Expenses for the Period of July 1, 2005 through February 29, 2008 as Special Counsel to the Trustee* (related document(s)1079 ) Filed by Rosen, Bien & Galvan, LLP. (Carroll, John) (Entered: 04/07/2008) |
| --- | --- | --- |
| 04/07/2008 | 1094 | Notice of Agenda of Matters Scheduled for Hearing Filed by Alfred Thomas Giuliano Hearing scheduled for 4/9/2008 at 01:30 PM at US Bankruptcy Court, 824 Market St., 5th Fl., Courtroom #5, Wilmington, Delaware. (Carroll, John) (Entered: 04/07/2008) |
| 04/09/2008 | 1095 | Order Approving Application of Cozen O'Connor as Counsel to the Trustee for Allowance of Twelfth Interim Compensation and Reimbursement of Expenses for the Period October 30, 2007 Through March 5, 2008. (Related Doc # 1078) Order Signed on 4/9/2008. (LCN, ) (Entered: 04/09/2008) |
| 04/09/2008 | 1096 | Order Approving Application of Van Pelt, Yi & James LLP as Special Counsel to Trustee for Allowance of Second and Final Fee Application for Compensation and Reimbursement of Expenses for the Period May 1, 2005 Through May 9, 2007. (Related Doc # 1077) Order Signed on 4/9/2008. (LCN, ) (Entered: 04/09/2008) |
| 04/09/2008 | 1097 | Order Approving Application of Rosen Bien & Galvan as Counsel to Trustee for Allowance of Third Interim Compensation and Reimbursement of Expenses for the Period July 1, 2005 Through February 29, 2008. (Related Doc # 1079) Order Signed on 4/9/2008. (LCN, ) (Entered: 04/09/2008) |
| 04/09/2008 | 1098 | Hearing Held/Court Sign-In Sheet (related document(s)1094 ) (LCN, ) (Entered: 04/11/2008) |
| 04/18/2008 | 1099 | Stipulation *to Extend Time for Filing Supplemental Briefs Regarding Motion for Relief from Stay filed by Richard Goebel and Daniel Springer Pending Approval of Settlement Stipulation* Between Alfred Thomas Giuliano and Richard Goebel, Daniel Springer and Jeremy Lent . (related document(s) 872 ) Filed by Alfred Thomas Giuliano. (Attachments: # 1 Proposed Form of Order) (Carroll, John) (Entered: 04/18/2008) |
| 04/24/2008 | 1100 | Order Approving Stipulation to Extend Time for Filing Supplemental Briefs Regarding Motion for Relief from Stay Filed by Richard Goebel and Daniel Springer Pending Approval of Settlement Stipulation. (related document(s) 872, 1099 ) Order Signed on 4/23/2008. (LCN, ) (Entered: 04/24/2008) |

**PACER Service Center**

| Transaction Receipt | | | |
|---|---|---|---|
| 05/08/2008 10:31:38 | | | |
| **PACER Login:** | pr1358 | **Client Code:** | 44804/012/8337 |
| **Description:** | Docket Report | **Search Criteria:** | 02-13376-KJC Fil or Ent: filed From: 2/28/2007 To: 5/8/2008 Doc From: 0 Doc To: 99999999 Term: included Format: HTML |
| **Billable Pages:** | 10 | **Cost:** | 0.80 |

# EXHIBIT D



# Assignment Papers

**Supplied by:**

## REEDFAX

7 Walnut Grove, Horsham, PA 19044

Customer Service: 1-800-422-1337 or 215-441-4768
Fax: 1-800-421-5585 or 215-441-5463
**www.reedfax.com**
**email@reedfax.com**

## PATENT ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| Marshall Credit Strategies, LLC, a Texas limited liability company | 03/23/2007 |

RECEIVING PARTY DATA

| | |
|---|---|
| Name: | NextCard, LLC, a Texas limited liability company |
| Street Address: | 2100 McKinney Avenue |
| Internal Address: | Suite 1770 |
| City: | Dallas |
| State/Country: | TEXAS |
| Postal Code: | 75201 |

PROPERTY NUMBERS Total: 12

| Property Type | Number |
|---|---|
| Patent Number: | 6405181 |
| Patent Number: | 6567791 |
| Patent Number: | 7143063 |
| Application Number: | 11543569 |
| Patent Number: | 6324524 |
| Application Number: | 09496896 |
| Patent Number: | 6718313 |
| Application Number: | 10782311 |
| Patent Number: | 6795812 |
| Application Number: | 10901715 |
| Application Number: | 09802481 |
| Application Number: | 09991894 |

CORRESPONDENCE DATA

6405181

$480.00

CH

**PATENT
REEL: 019341 FRAME: 0418**

Fax Number:                (214)999-3623
*Correspondence will be sent via US Mail when the fax attempt is unsuccessful.*
Phone:                     2149993000
Email:                     ip@gardere.com
Correspondent Name:        Marc A. Hubbard
Address Line 1:            1601 Elm Street
Address Line 2:            Suite 3000
Address Line 4:            Dallas, TEXAS 75201

| ATTORNEY DOCKET NUMBER: | 132538.6000 |
|---|---|

| NAME OF SUBMITTER: | Marc A. Hubbard |
|---|---|

Total Attachments: 2
source=132539_6000_Assignment2#page1.tif
source=132539_6000_Assignment2#page2.tif

**PATENT**
**REEL: 019341 FRAME: 0419**

## ASSIGNMENT AND BILL OF SALE

THIS ASSIGNMENT AND BILL OF SALE (the "*Assignment*") is entered into as of the 23rd day of March, 2007, by and between Marshall Credit Strategies, LLC, a Texas limited liability company ("*Assignor*") and NextCard, LLC, a Texas limited liability company ("*Assignee*").

### RECITALS

WHEREAS, Cardinal Partners, LP, Cardinal Partners 2000, L.P., CD Fund, L.P., and Fintan Master Fund, Ltd. (collectively, the "*Owners*") are the sole members of Assignor;

WHEREAS, the Owners are the sole limited partners of Warbler Technologies, L.P. ("*Warbler*"), the sole member of Assignee;

WHEREAS, as a capital contribution from the Owners to Warbler and from Warbler to Assignee, and to avoid the administrative inconvenience of multiple transactions, Owners desire to cause Assignor to transfer all of its tangible and intangible assets (the "*Assets*") to Assignee; and

WHEREAS, Assignor now desires to transfer to Assignee the Assets.

### AGREEMENT

In consideration for the terms described in the recitals, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee hereby act and agree as follows:

1.  **Conveyance of Assets.** Assignor hereby conveys, transfers, and assigns to Assignee and its successors and permitted assigns the Assets, TO HAVE AND TO HOLD the Assets and all rights, titles and interests therein with all appurtenances thereto, together with all corresponding goodwill, unto Assignee, its successors and permitted assigns forever.

2.  **Further Assurances.** The parties agree to take such further actions and execute and deliver such other documents, certificates, agreements, and other instruments as may be necessary in order to consummate or implement this Assignment.

3.  **Binding Effect.** This Assignment and all the terms and provisions hereof, shall be binding upon and shall inure to the benefit of the Assignor and Assignee, and their respective successors and permitted assigns.

4.  **Counterparts.** This Assignment may be executed in several counterparts, and all so executed shall constitute one Assignment, binding on all of the parties hereto, notwithstanding that all the parties are not signatories to the original or the same counterpart. Any counterpart of this Assignment may be executed by facsimile transmission.

*Remainder of Page Intentionally Left Blank.*
*Signature Page(s) Follows.*

PATENT
REEL: 019341 FRAME: 0420

IN WITNESS WHEREOF, the undersigned have caused this Assignment to be duly executed.

ASSIGNOR:

**MARSHALL CREDIT STRATEGIES, LLC,**
a Texas limited liability company

By:    CPMG, Inc.,
       a Texas corporation,
       its manager

By:    _____
       Name: _____
       Title:   VP

ASSIGNEE:

**NEXTCARD, LLC,**
a Texas limited liability company

By:    Warbler Technologies, L.P.,
       a Texas limited partnership

By:    CPMG, Inc.,
       a Texas corporation,
       its general partner

By:    _____
       Name: _____
       Title:   VP

Grant of Security in Marshall Credit Strategies to NextCard

# EXHIBIT E



## Texas Secretary of State
### Phil Wilson

<u>UCC</u> | **<u>Business Organizations</u>** | **<u>Trademarks</u>** | **<u>Account</u>** | **<u>Help/Fees</u>** | **<u>Briefcase</u>** | <u>Logout</u>

**FIND ENTITY NAME SEARCH**

This search was performed on with the following search parameter:
**ENTITY NAME : NextCard**

| Mark | Filing Number | Name | Entity Type | Entity Status | Name Type | Name Status |
|------|---------------|------|-------------|---------------|-----------|-------------|
| ○ | 708764222 | NEXTCARD LLC | Domestic Limited Liability Company (LLC) | Forfeited existence | Legal | Inactive |
| ○ | 800791886 | NextCard, LLC | Domestic Limited Liability Company (LLC) | In existence | Legal | In use |

[ Return to Order ]    [ New Search ]

---

Instructions:
- To view additional information pertaining to a particular filing select the number associated with the name.
- To place an order for additional information about a filing select the radial button listed under 'Mark' that is associated with the entity and press the 'Order' button.

# Texas Secretary of State
## Phil Wilson

UCC | **Business Organizations** | **Trademarks** | **Account** | **Help/Fees** | **Briefcase** | Logout

**BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY**

| | | | |
|---|---|---|---|
| **Filing Number:** | 800791886 | **Entity Type:** | Domestic Limited Liability Company (LLC) |
| **Original Date of Filing:** | March 23, 2007 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32028666280 | **FEIN:** | |
| **Duration:** | Perpetual | | |
| **Name:** | NextCard, LLC | | |
| **Address:** | 104 East Houston Street, Suite 145 Marshall, TX 75670 USA | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Name | Address | Inactive Date |
|---|---|---|
| John Bateman | 104 East Houston St, Ste 145 Marshall, TX 75670 USA | |

[Order]  [Return to Search]

---

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

Case 9:09-cv-00063-NBM Document 7 Filed 05/08/2008

# Texas Secretary of State
## Phil Wilson

**UCC** | **Business Organizations** | **Trademarks** | **Account** | **Help/Fees** | **Briefcase** | Logout

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800791886 | **Entity Type:** | Domestic Limited Liability Company (LLC) |
| **Original Date of Filing:** | March 23, 2007 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32028666280 | **FEIN:** | |
| **Duration:** | Perpetual | | |
| **Name:** | NextCard, LLC | | |
| **Address:** | 104 East Houston Street, Suite 145 Marshall, TX 75670 USA | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| View Image | Document Number | Filing Type | Filing Date | Effective Date | Eff. Cond | Page Count |
|---|---|---|---|---|---|---|
| ☑ | 164708760002 | Certificate of Formation | March 23, 2007 | March 23, 2007 | No | 2 |
| ☑ | 181108630002 | Change of Registered Agent/Office | August 3, 2007 | August 3, 2007 | No | 2 |
| ☑ | 182087420002 | Certificate of Amendment | August 13, 2007 | August 13, 2007 | No | 3 |

[Order]  [Return to Search]

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

| | | |
|---|---|---|
| **Form 424**<br>**(Revised 01/06)**<br><br>Return in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512/463-5709<br>**Filing Fee: See instructions** | <br><br>**Certificate of Amendment** | This space reserved for office use.<br>**FILED**<br>**In the Office of the**<br>**Secretary of State of Texas**<br><br>**AUG 1 3 2007**<br><br>**Corporations Section** |

### Entity Information

The name of the filing entity is:

NextCard, LLC

State the name of the entity as currently shown in the records of the secretary of state. If the amendment changes the name of the entity, state the old name and not the new name.

The filing entity is a: (Select the appropriate entity type below.)

☐ For-profit Corporation        ☐ Professional Corporation

☐ Nonprofit Corporation        ☐ Professional Limited Liability Company

☐ Cooperative Association        ☐ Professional Association

☒ Limited Liability Company        ☐ Limited Partnership

The file number issued to the filing entity by the secretary of state is:   800791886

The date of formation of the entity is:   March 23, 2007

### Amendments

#### 1. Amended Name
(If the purpose of the certificate of amendment is to change the name of the entity, use the following statement)

The amendment changes the certificate of formation to change the article or provision that names the filing entity. The article or provision is amended to read as follows:

The name of the filing entity is: (state the new name of the entity below)

---

The name of the entity must contain an organizational designation or accepted abbreviation of such term, as applicable.

#### 2. Amended Registered Agent/Registered Office

The amendment changes the certificate of formation to change the article or provision stating the name of the registered agent and the registered office address of the filing entity. The article or provision is amended to read as follows:

Form 424                1

**Registered Agent**
(Complete either A or B, but not both. Also complete C.)

☐ A. The registered agent is an organization (cannot be entity named above) by the name of:

_____

**OR**

☐ B. The registered agent is an individual resident of the state whose name is:

_____
*First Name*                          *M.I.*            *Last Name*                              *Suffix*

C. The business address of the registered agent and the registered office address is:

                                                                              TX
_____
*Street Address (No P.O. Box)*                     *City*                        *State*   *Zip Code*

## 3. Other Added, Altered, or Deleted Provisions

Other changes or additions to the certificate of formation may be made in the space provided below. If the space provided is insufficient, incorporate the additional text by providing an attachment to this form. Please read the instructions to this form for further information on format.

Text Area (The attached addendum, if any, is incorporated herein by reference.)

---

☒ **Add** each of the following provisions to the certificate of formation. The identification or reference of the added provision and the full text are as follows:

ARTICLE 7 – Principal Office

The address of the principal office of the limited liability company in the United States where records are to be kept or made available is 104 East Houston Street, Suite 145, Marshall, Texas 75670.

---

☐ **Alter** each of the following provisions of the certificate of formation. The identification or reference of the altered provision and the full text of the provision as amended are as follows:

---

☐ **Delete** each of the provisions identified below from the certificate of formation.

---

### Statement of Approval

The amendments to the certificate of formation have been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity.

## Effectiveness of Filing (Select either A, B, or C.)

A. ☒ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____

_____

## Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date:    August 10, 2007 _____

_Signature_ _____

Warbler Technologies, L.P., its Sole Member
By: CPMG, Inc., its General Partner.
By: John Bateman, President
_____

Signature and title of authorized person(s) (see instructions)

## Texas Secretary of State
### Phil Wilson

**UCC** | **Business Organizations** | **Trademarks** | **Account** | **Help/Fees** | **Briefcase** | Logout

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800791886 | **Entity Type:** | Domestic Limited Liability Company (LLC) |
| **Original Date of Filing:** | March 23, 2007 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32028666280 | **FEIN:** | |
| **Duration:** | Perpetual | | |
| **Name:** | NextCard, LLC | | |
| **Address:** | 104 East Houston Street, Suite 145 Marshall, TX 75670 USA | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Name | Name Status | Name Type | Name Inactive Date | Consent Filing # |
|---|---|---|---|---|
| NextCard, LLC | In use | Legal | | 0 |

[Order]  [Return to Search]

---

Instructions:
- ● To place an order for additional information about a filing press the 'Order' button.

# Texas Secretary of State
## Phil Wilson

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800791886 | **Entity Type:** | Domestic Limited Liability Company (LLC) |
| **Original Date of Filing:** | March 23, 2007 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32028666280 | **FEIN:** | |
| **Duration:** | Perpetual | | |

**Name:** NextCard, LLC

**Address:** 104 East Houston Street, Suite 145
Marshall, TX 75670 USA

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| **Last Update** | **Name** | **Title** | **Address** |
|---|---|---|---|
| March 23, 2007 | Warbler Technologies, LP | Member | 2100 McKinney Ave., Ste. 1770 Dallas, TX 75201 USA |

[Order]  [Return to Search]

Instructions:
- ● To place an order for additional information about a filing press the 'Order' button.

| **Form 401** (Revised 01/06)<br><br>Return in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555<br>FAX: 512/463-5709<br>**Filing Fee: See instructions** | <br><br>**Statement of Change of**<br>**Registered Office/Agent** | This space ~~reserved for~~ office use.<br>**FILED**<br>In the Office of the<br>Secretary of State of Texas<br><br>AUG 03 2007<br><br>**Corporations Section** |
|---|---|---|

---

## Entity Information

The name of the entity is:

NextCard, LLC

<small>State the name of the entity as currently shown in the records of the secretary of state.</small>

The file number issued to the filing entity by the secretary of state is:    800791886

The registered agent and registered office of the entity as currently shown on the records of the
secretary of state are:    John Bateman, 2100 McKinney Avenue, Suite 1770, Dallas, Texas 75201

---

## Change to Registered Agent/Registered Office

The certificate of formation or registration is modified to change the registered agent and/or office of
the filing entity as follows:

Registered Agent Change
(Complete either A or B, but not both. Also complete C if the address has changed.)

☐ A. The new registered agent is an organization (cannot be entity named above) by the name of:

**OR**

☒ B. The new registered agent is an individual resident of the state whose name is:

| John | | Bateman | |
|---|---|---|---|
| <small>First Name</small> | <small>M.I.</small> | <small>Last Name</small> | <small>Suffix</small> |

Registered Office Change

☒ C. The business address of the registered agent and the registered office address is changed to:

| 104 East Houston Street, Suite 145 | Marshall | TX | 75670 |
|---|---|---|---|
| <small>Street Address (No P.O. Box)</small> | <small>City</small> | <small>State</small> | <small>Zip Code</small> |

The street address of the registered office as stated in this instrument is the same as the registered

agent's business address.

---

### Statement of Approval

The change specified in this statement has been authorized by the entity in the manner required by the BOC or in the manner required by the law governing the filing entity, as applicable.

---

### Effectiveness of Filing (Select either A, B, or C.)

A. ☒ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____

_____

---

### Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date:    August 3, 2007 _____

_____

Warbler Technologies, L.P., its Sole Member
By: CPMG, Inc., its General Partner,
By: James Traweek, Managing Director

Signature and title of authorized person (see instructions)

**FILED**
In the Office of the
Secretary of State of Texas

MAR 2 3 2007

**Corporations Section**

**CERTIFICATE OF FORMATION**
**OF**
**NEXTCARD, LLC,**
a Texas limited liability company

## ARTICLE 1 – Entity Name and Type

The name of the entity is NextCard, LLC.  The filing entity being formed is a limited liability company.

## ARTICLE 2 – Registered Agent and Registered Office

The initial registered agent is an individual resident of the state whose name is an individual resident of the state whose name is John Bateman.  The business address of the registered agent and the registered office address is 2100 McKinney Avenue, Suite 1770, Dallas, Texas 75201.

## ARTICLE 3 – Governing Authority

The limited liability company will be managed by its member. The name and address of each initial member are as follow:

| Name | Address |
|------|---------|
| Warbler Technologies, L.P. | 2100 McKinney Avenue<br>Suite 1770<br>Dallas, Texas 75201 |

## ARTICLE 4 – Purpose

The limited liability company is formed for the purpose of transacting all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

## ARTICLE 5 – Effectiveness of Filing

This Certificate of Formation becomes effective when it is filed by the Texas Secretary of State.

## ARTICLE 6 – Organizer

The name and address of the organizer of the limited liability company are as follow:

Christina Markell-Balleza
901 Main Street, Suite 3100
Dallas, Texas 75202

D-1514109_2.DOC

**IN WITNESS WHEREOF,** the undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument on the 22nd day of March, 2007.

ORGANIZER:

Christina Markell-Balleza,
Organizer

# Texas Secretary of State
## Phil Wilson

**UCC** | **Business Organizations** | **Trademarks** | **Account** | **Help/Fees** | **Briefcase** | Logout

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800791888 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | March 23, 2007 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | | **FEIN:** | |
| **Duration:** | Perpetual | | |
| **Name:** | Warbler Technologies, L.P. | | |
| **Address:** | 2100 McKinney Ave., Ste. 1770 Dallas, TX 75201 USA | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Name | Address | | Inactive Date |
|---|---|---|---|
| John Bateman | 2100 McKinney Ave., Ste. 1770 Dallas, TX 75201 USA | | |

[Order]  [Return to Search]

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

UCC | **Business Organizations** | **Trademarks** | **Account** | **Help/Fees** | **Briefcase** | Logout

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800791888 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | March 23, 2007 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | | **FEIN:** | |
| **Duration:** | Perpetual | | |
| **Name:** | Warbler Technologies, L.P. | | |
| **Address:** | 2100 McKinney Ave., Ste. 1770 Dallas, TX 75201 USA | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| View Image | Document Number | Filing Type | Filing Date | Effective Date | Eff. Cond | Page Count |
|---|---|---|---|---|---|---|
| ☑ | 164708760003 | Certificate of Formation | March 23, 2007 | March 23, 2007 | No | 2 |

[Order]   [Return to Search]

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

FILED
In the Office of the
Secretary of State of Texas

MAR 23 2007

Corporations Section

### CERTIFICATE OF FORMATION
### OF
### WARBLER TECHNOLOGIES, L.P.
#### a Texas limited partnership

#### ARTICLE 1 – Entity Name and Type

The name of the entity is Warbler Technologies, L.P. The filing entity being formed is a limited partnership.

#### ARTICLE 2 – Registered Agent and Registered Office

The initial registered agent is an individual resident of the state whose name is John Bateman. The business address of the registered agent and the registered office address is 2100 McKinney Avenue, Suite 1770, Dallas, Texas 75201.

#### ARTICLE 3 – Governing Authority

The name and address of the general partner are:

| Name | Address |
|------|---------|
| CPMG, Inc. | 2100 McKinney Avenue<br>Suite 1770<br>Dallas, Texas 75201 |

#### ARTICLE 4 – Principal Office

The address of the principal office of the limited partnership in the United States where records are to be kept or made available under Section 153.551 of the Texas Business Organizations Code is 2100 McKinney Avenue, Suite 1770, Dallas, Texas 75201.

#### ARTICLE 5 – Supplemental Provisions/Information

The General Partner has determined not to include any other provisions at this time.

#### ARTICLE 6 – Effectiveness of Filing

This Certificate of Formation becomes effective when it is filed by the Texas Secretary of State.

IN WITNESS WHEREOF, the undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument on the 22nd day of March, 2007.

GENERAL PARTNER AND ORGANIZER:

CPMG, INC.,
a Texas corporation

By:  _[signature]_____
Name: John Bateman_____
Title: VP_____

# Texas Secretary of State
## Phil Wilson

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800791888 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | March 23, 2007 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | | **FEIN:** | |
| **Duration:** | Perpetual | | |

**Name:** Warbler Technologies, L.P.
**Address:** 2100 McKinney Ave., Ste. 1770
Dallas, TX 75201 USA

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Name | | Name Status | Name Type | Name Inactive Date | Consent Filing # |
|---|---|---|---|---|---|
| Warbler Technologies, L.P. | | In use | Legal | | 0 |

[Order]  [Return to Search]

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

## Texas Secretary of State
### Phil Wilson

**UCC** | **Business Organizations** | **Trademarks** | **Account** | **Help/Fees** | **Briefcase** | Logout

**BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY**

| | | | |
|---|---|---|---|
| **Filing Number:** | 800791888 | **Entity Type:** | Domestic Limited Partnership (LP) |
| **Original Date of Filing:** | March 23, 2007 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | | **FEIN:** | |
| **Duration:** | Perpetual | | |

**Name:** Warbler Technologies, L.P.
**Address:** 2100 McKinney Ave., Ste. 1770
Dallas, TX 75201 USA

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| **Last Update** | **Name** | **Title** | **Address** |
|---|---|---|---|
| March 23, 2007 | CPMG, Inc. | General Partner | 2100 McKinney Ave., Ste. 1770 Dallas, TX 75201 USA |

Order    Return to Search

Instructions:
- To place an order for additional information about a filing press the 'Order' button.