IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIVEPERSON, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 08-062 (GMS) |
| NEXTCARD, LLC and MARSHALL | ) | |
| CREDIT STRATEGIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ANSWERING BRIEF OF DEFENDANTS NEXTCARD, LLC AND MARSHALL
CREDIT STRATEGIES, LLC IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT</u>**

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766

Donald Puckett
Texas State Bar No. 24013358
dpuckett@monts-ware.com
**THE WARE FIRM**
1701 North Market Street
Suite 330
Dallas, Texas 75202-2088
(214)744-5000
(214)744-5013 (Fax)

*Attorneys for Defendants
NextCard, LLC and Marshall Credit
Strategies, LLC*

Dated: May 22, 2008

## Table of Contents

Table of Contents ................................................................................................................ ii

Table of Authorities ........................................................................................................... iii

Summary of Argument ......................................................................................................... 1

Argument ............................................................................................................................... 3

    I.    The Court should deny a Motion for Leave to Amend when the
    requested amendment is futile or offered in bad faith. ................................... 3

    II.    The proposed amendment is futile because neither CPMG nor
    Warbler has ever held legal title or any other interest in the Patents-In-
    suit. ........................................................................................................................ 3

        A.    It is undisputed that neither CPMG nor Warbler ever held any legal
        interest in the patents in suit. .................................................................. 3

        B.    Only parties holding legal title to a patent are proper parties for
        asserting patent infringement or defending a claim for declaratory relief
        of non-infringement or invalidity. ........................................................... 4

        C.    CPMG's and Warbler's status as corporate parents of NextCard, LLC
        does not make them proper parties to this lawsuit seeking declaratory
        adjudication of substantive patent issues. ............................................... 7

        D.    The proposed amendment is futile because the record plainly
        demonstrates there is no actual controversy, and the Court could never
        enter the requested declaratory relief against CPMG and Warbler. ....... 9

    III.    The proposed amendment is offered in bad faith.  LivePerson is
    attempting to expand the scope of its jurisdictional discovery rather
    than attempting to assert a legally cognizable claim for which it could
    conceivably obtain judicial relief. ........................................................ 11

Conclusion .................................................................................................................... 13

## Table of Authorities

**CASES**

*Beam Laser Sys. Inc. v. Cox Communications, Inc.,*
117 F. Supp.2d 515 (E.D. Va. 2000) ............................................................. 6,9

*Benitec Australia, Ltd. v. Nucleonics, Inc.,*
495 F.3d 1340 (Fed. Cir. 2007).................................................................. 4

*Dunleavy v. New Jersey,*
251 Fed. Appx. 80 (3d Cir. 2007) .............................................................. 9

*Hill v. City of Scranton,*
411 F.3d 118 (3d Cir. 2005)........................................................................ 3

*Insituform Technologies, Inc. v. Cat Contracting, Inc.,*
385 F.3d 1360 (Fed. Cir. 2004)................................................................... 3

*Microchip Tech. Inc. v. The Chamberlain Group, Inc.,*
441 F.3d 936 (Fed. Cir. 2006)..................................................................... 5

*Microsurgical Sys., Inc. v. The Cooper Companies,*
797 F.Supp. 333 (D. Del. 1992)....................................................... 1,5,8,9,10

*Morrow v. Microsoft Corp.,*
499 F.3d 1332 (Fed. Cir. 2007)................................................................ 1,5,6

*Mylan Pharmaceuticals v. Kremers Urban Development,*
C.A. No. 02-1628 GMS, 2003 WL 22711586, Sleet, J. (D. Del. Nov. 14, 2003) ........... 10

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,*
402 F.3d 1198 (Fed. Cir. 2005)................................................................. 1,7

*Steelcase, Inc. v. Greensteel, Inc.,*
336 F.Supp.2d 714 (W.D. Mich. 2004) ....................................................... 8

**OTHER AUTHORITIES**

FED. R. CIV. P. 15(a). ................................................................................. 3

35 U.S.C. §100(d) ...................................................................................... 5

### Summary of Argument

Plaintiff proposes to add two additional defendants to this lawsuit – CPMG, Inc. ("CPMG") and Warbler Technologies, L.P. ("Warbler").  It is undisputed that neither entity has <u>ever</u> held legal title or any other interest in the Patents-In-Suit.[1]

Under unambiguous Federal Circuit law, only entities holding <u>legal title</u> to a patent are proper parties to assert infringement or answer a declaratory claim to adjudicate the patent rights.  *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007) (holding that only the patentee or his "successors in title" may bring suit for infringement, and that the "successors in title" includes only the party or parties holding <u>legal title</u> to the patent).

The mere fact that NextCard, LLC (the sole owner of all right, title and interest in and to the Patents-In-Suit) is a corporate subsidiary of CPMG and Warbler does not vest CPMG or Warbler with any legally cognizable interest in the patents.  The Federal Circuit has been equally clear that the corporate parent of a patent holder is not a proper party to a patent infringement suit.  *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202-03 (Fed. Cir. 2005) (holding that a corporate parent's transfer of legal title to its wholly-owned subsidiary divested the parent of all interest in the patent, including standing to sue for infringement).  The Delaware District Court has rejected a motion for leave to amend in circumstances virtually identical to this case.  *See Site Microsurgical Sys., Inc. v. The Cooper Companies*, 797 F.Supp. 333, 337-39 (D. Del. 1992) (in a patent infringement suit, refusing motion for leave to add parent corporation alleged to closely control the subsidiary corporation which held the patent).

---

[1] Defendants shall refer herein to U.S. Patent No. 6,718,313 and U.S. Patent No. 7,346,576 collectively as the "Patents-In-Suit."

Any way LivePerson slices it, CPMG and Warbler simply are not proper parties to this lawsuit because they do not have (and have never had) any legal interest in the Patents-In-Suit. It is quite remarkable for Plaintiff to contend that this Court could enter declaratory relief against CPMG or Warbler adjudicating the validity and infringement of the Patents-In-Suit. Such declaratory relief would be meaningless against non-owners of the patents, and this court does not have jurisdiction to enter such relief because there is no "actual controversy" between LivePerson, on the one hand, and CPMG and Warbler on the other hand.

Indeed, Plaintiff's briefs make clear that LivePerson's intended purpose in adding the new defendants is not to state a legal claim against them, but merely to place their jurisdictional contacts before the Court. *See* Plaintiff's Opening Brief in Support of Motion to Amend at p. 3 (arguing that CPMG's and Warbler's activities are relevant not to the merits of LivePerson's declaratory claims, but merely to "LivePerson's rights to be heard in this Court" -- *i.e.* personal jurisdiction). *See also* Plaintiff's Brief in Opposition to Motions to Dismiss at p. 7 ("It is for that reason that LivePerson has moved to amend its Complaint to add CPMG – so that all the necessary jurisdictional activities are brought together and allocated to one party").

In short, this Motion for Leave is no more than a transparent attempt by LivePerson to widen the lake before it sets off on its requested jurisdictional fishing expedition. The only proper defendant in this lawsuit is NextCard, LLC, the sole owner of the Patents-In-Suit. The Motion for Leave to Amend should be denied.

<u>**Argument**</u>

**I.    The Court should deny a Motion for Leave to Amend when the requested amendment is futile or offered in bad faith.**

In patent cases, the standards for deciding whether to grant or deny a motion for leave to amend a party's complaint are governed by the law of the regional circuit.  *See Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 385 F.3d 1360, 1372 (Fed. Cir. 2004).

Federal Rule of Civil Procedure 15(a) states that leave to amend should be "freely given when justice so requires."  FED. R. CIV. P. 15(a).  Under Third Circuit law, "a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005).

**II.    The proposed amendment is futile because neither CPMG nor Warbler has ever held legal title or any other interest in the Patents-In-Suit.**

    **A.    It is undisputed that neither CPMG nor Warbler ever held any legal interest in the patents in suit.**

The face of LivePerson's proposed Second Amended Complaint demonstrates that neither CPMG nor Warbler have ever held legal title or any other interest in the Patents-In-Suit.  Paragraph 10 of the proposed Second Amended Complaint alleges that Defendant Marshall Credit Systems ("MCS") purchased certain patents, including the '373 Patent, out of a bankruptcy proceeding.  (Exhibit A to Motion for Leave at p. 3). Paragraph 11 further alleges that MCS assigned all rights to the '373 Patent (and other patents) to NextCard, LLC.  Paragraph 13 alleges that the '576 Patent was issued on March 18, 2008.  (*Id.*). Although the proposed complaint itself makes no allegations

concerning ownership of the '576 Patent, the patent itself, which is attached as an exhibit and incorporated by reference into the proposed complaint, plainly states on its first page that the Assignee of record is NextCard, LLC.  (Exhibit A to Motion for Leave at Exhibit B).  These allegations are confirmed by the affidavits submitted by MCS and NextCard in support of their pending Motions to Dismiss. (Affidavit of James Traweek at ¶¶4-7; Affidavit of John Bateman at ¶¶3-5).

In its proposed Second Amended Complaint, LivePerson makes no allegation whatsoever that either CPMG or Warbler have legal title or any other legal interest in the Patents-In-Suit.  Instead, LivePerson merely alleges that CPMG and Warbler control the activities of NextCard LLC.  (Motion for Leave, Exhibit A at ¶¶4-5, 10-11).  As will be shown below, even if these allegations are taken as true, they are insufficient to confer any legal interest in the Patents-In-Suit to CPMG or Warbler, and therefore do not raise an actual controversy between the parties.

> **B.    Only parties holding legal title to a patent are proper parties for asserting patent infringement or defending a claim for declaratory relief of non-infringement or invalidity.**

As non-owners of the Patents-In-Suit, CPMG and Warbler have no interest in this case, and thus are not proper parties.

This motion for leave to amend requires the Court to determine whether CPMG and Warbler are proper parties to defend against a declaratory action regarding the validity and infringement of the Patents-In-Suit.  Resolution of this issue is identical to determining whether CPMG and Warbler would have standing to assert a claim for patent infringement in their own names.  *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).  In other words, if a party does not have a sufficient

stake in the patent that would allow the party to file a lawsuit for patent infringement, then the party is not a proper defendant to a declaratory judgment action seeking to determine infringement and validity of the patent.  The Federal Circuit explained:

> The concepts of "adverse legal rights" and "legal risk," used in the cases to describe the standard for [declaratory judgment] jurisdiction require that there be an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff preempted it.  ***Without an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction.***

*Microchip Tech. Inc. v. The Chamberlain Group, Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006) (emphasis added).

The issue of standing to assert a claim for patent infringement presents a matter of substantive patent law governed by the law of the Federal Circuit.  *See Morrow*, 499 F.3d at 1337 ("[T]he patent statutes have long been recognized as the law that governs who has right to bring suit for patent infringement, even when patent rights have been transferred as a result of bankruptcy or proceedings in equity").

The proper parties to a patent action are determined solely by the patent statutes. "Since the patent statutes give rise to the right to sue others for patent infringement, they also define the nature and source of the infringement claim and determine the party that is entitled to judicial relief."  *Morrow*, 499 F.3d at 1339.   Under 35 U.S.C. §281, a "patentee" is entitled to bring suit for patent infringement, and "patentee" is defined to include the "successors in title to the patentee."  *Id.* (citing 35 U.S.C. §100(d)).

The important point for present purposes is that "[t]he 'successor[] in title' is the party holding ***legal title*** to the patent."  *Id.* (emphasis in original).  *See also Site Microsurgical Sys., Inc. v. The Cooper Companies*, 797 F.Supp. 333, 337 (D. Del. 1992)

("Parties who do not hold *legal title* to the patent during the time of infringement are not permitted to recover for patent infringement") (emphasis added). While there is some authority for the notion that a party holding "equitable title" to a patent may bring suit for equitable relief only, the notion of "equitable title" has no applicability in this case (as discussed more thoroughly in the next Section).[2] Thus, only a patentee or the party holding legal title to a patent may bring a lawsuit for infringement.

There is a rich body of case law determining whether particular parties have the necessary legal title required to assert a claim for patent infringement. The Federal Circuit recently summarized this case law by identifying three categories of plaintiffs that are routinely encountered when analyzing standing. *See Morrow*, 499 F.3d at 1339-40. The first category consists of parties "that can sue in their own name alone" because they "hold all legal rights to the patent and the patentee or assignee of all patent rights – the entire bundle of sticks." *Id.* at 1339. Defendant NextCard LLC is in this category, because it holds all right, title and interest in and to the Patents-In-Suit. Plaintiffs in the second category "hold exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patent." *Id.* at 1340. Parties in this second category, such as an exclusive licensee, may bring suits for infringement, but only if the party holding legal title to the patent is also joined to the lawsuit. *Id.* Finally, "[t]he third category of plaintiffs includes those that hold less than all substantial rights to the patent and lack

---

[2] The Federal Circuit has recognized "equitable title" only in cases that "involve a contractual arrangement between the party claiming equitable title and the inventor, pursuant to which the inventor assigned his rights in any invention prior to the existence of the invention, and the assignee later – i.e., after the invention came into being – claimed to have equitable title to the invention." *See Beam Laser Sys., Inc. v. Cox Communications, Inc.*, 117 F.Supp.2d 515, 520 fn 6 (E.D. Va. 2000).

exclusionary rights under the patent statutes to meet the injury in fact requirement." *Id.* "Plaintiffs in this category lack constitutional standing." *Id.* at 1341.

There is no question that CPMG and Warbler each fall into the third category, because neither owns *any* sticks in the bundle of rights associated with holding legal title to a patent.  If CPMG or Warbler initiated a patent infringement suit against LivePerson on the Patents-In-Suit, that lawsuit rightly would be summarily dismissed for lack of standing.  For that same reason, CPMG and Warbler are not proper parties to this action seeking declaratory relief.

> C. **CPMG's and Warbler's status as corporate parents of NextCard, LLC does not make them proper parties to this lawsuit seeking declaratory adjudication of substantive patent issues.**

The mere fact that CPMG and Warbler are corporate parents of the party holding legal title to the Patents-In-Suit (NextCard, LLC) does not give them standing to file a patent infringement suit, nor does it make them proper parties to this declaratory action. *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202-03 (Fed. Cir. 2005).

In *Schreiber*, the corporate parent held legal title to the patent, and filed an infringement suit in its own name.  During the course of the lawsuit, however, the corporate parent transferred legal title to its wholly-owned subsidiary, and the subsidiary granted the corporate parent a non-exclusive license to practice the patent.  *See Schreiber*, 402 F.3d at 1200.  The Federal Circuit held:

> At the time this action commenced, Schreiber was the owner of the '860 patent and had standing.  However, once the assignment to [its subsidiary] was completed, there was no question that Schreiber lost its 'personal stake in the outcome.' . . . Thus, when Schreiber transferred the '860 patent and became a mere non-exclusive licensee, Schreiber ***lost standing to sue for infringement and the case became moot.***

*Id.* at 1202-03 (emphasis added).  Thus, it is clear that a parent corporation is not a proper party to a patent action involving a patent owned by the parent's subsidiary.

In *Site Microsurgical*, the Delaware District Court denied a motion for leave to amend the patent holder's complaint to add its parent corporation as a party to the lawsuit.  *Site Microsurgical*, 797 F.Supp. at 338-39.  In that case, it was undisputed that the parent corporation (Iolab) was not an owner, assignee or licensee of the patent.  *Id.* at 337.  The court held:

> The Court is not convinced, and the plaintiff offers no authority, that a parent corporation effectively has the patent rights of owners, assignees, and licensees by virtue of its ownership of a subsidiary holding a patent. The Court is not convinced, and the plaintiff offers no authority, that mere ownership of corporate stock gives a non-patent owner standing to sue for patent infringement.

*Id.* at 338.  Like LivePerson here, the plaintiff in *Site Microsurgical* argued that the parent corporation is the "real party in interest," but the court squarely rejected the argument.  *Id.* at 338.  It wrote:

> Iolab's only connection with the patented technology is its attenuated relationship through corporate ownership.  The Court is not convinced, and the plaintiff offers no authority, that mere ownership of corporate stock makes the parent corporation a "real party in interest." . . . Iolab cannot be deemed to "effectively control the patent" merely because it owns and exercises control over its subsidiary.

*Id.*  These are the very same arguments that LivePerson argues in support of its motion for leave to amend, and these arguments are equally without merit in this case.

Since *Site Microsurgical* was decided, subsequent district court cases also have rejected the idea that mere ownership or control of the entity holding legal title to the patent confers "equitable title" on the parent corporation or shareholder.  *See Steelcase, Inc. v. Greensteel, Inc.*, 336 F.Supp.2d 714, 718-19 (W.D. Mich. 2004) (dismissing the

patent owner's corporate parent, and holding: "[F]or purposes of standing, a parent does not have equitable title in a patent solely by virtue of its ownership of the subsidiary"); *Beam Laser Sys. Inc. v. Cox Communications, Inc.*, 117 F.Supp.2d 515, 521 (E.D. Va. 2000) (dismissing patent owner's sole shareholder from the suit, and holding that "[o]wnership of corporate stock does not create equitable title in that corporation's property").[3]

In its brief, LivePerson offers no authority for its argument that CPMG and Warbler are proper parties to this action by virtue of their corporate relationship to NextCard. As the foregoing demonstrates, the relevant authorities are quite contrary to LivePerson's position.

    **D.    The proposed amendment is futile because the record plainly demonstrates there is no actual controversy, and the Court could never enter the requested declaratory relief against CPMG or Warbler.**

A motion for leave to amend is "futile if the amended complaint cannot withstand a renewed motion to dismiss." *See Dunleavy v. The State of New Jersey*, 251 Fed. Appx. 80, 84 (3d Cir. 2007). *See also Site Microsurgical*, 797 F.Supp.2d at 336. "The standard for deciding a motion to dismiss is whether, taking all factual allegations as true, it is beyond doubt that the plaintiff can prove no set of facts to support his claim that would entitle him to relief." *Id.*

---

[3] Plaintiff is aware of one contrary case, in which a district court held that the parent corporation held "equitable" title sufficient to assert a claim for equitable remedies only. *See Pipe Liners, Inc. v. American Pipe & Plastics, Inc.*, 893 F.Supp. 704 (S.D. Tex. 1995). *Pipe Liners*, however, is inconsistent with more recent federal circuit authority such as *Schriber Foods* (cited above) and has been thoroughly criticized by more recent district court opinions. *See, e.g.*, *Steelase*, 336 F.Supp.2d at 718-19; *Beam Laser*, 117 F.Supp.2d at 521.

In its brief, LivePerson summarily states that its "proposed amendment states a valid claim . . . ." (Plaintiff's Brief in Support of Motion for Leave to Amend at p. 5). In fact, the proposed amendment does not state a valid claim against CPMG or Warbler. As shown above, LivePerson can establish no set of facts that would entitle it to declaratory relief against CPMG or Warbler. Neither entity owns any stake in the Patents-In-Suit whatsoever. Their status as corporate parents to NextCard LLC is simply irrelevant. This case is indistinguishable from *Site Microsurgical*, and the Court should similarly deny the motion to amend here.

This Court previously granted a motion for leave to amend to add new defendants in a patent case that is distinguishable, but yet worthy of discussion. In the *Mylan Pharmaceuticals* case, there was a genuine and complex dispute regarding proper title to the asserted patents. *See Mylan Pharmaceuticals v. Kremers Urban Development*, C.A. No. 02-1628 GMS, 2003 WL 22711586, Sleet, J. (D. Del. Nov. 14, 2003). The plaintiff moved for leave to assert claims for infringement of patents for which there was a genuine dispute regarding ownership, as well as claims against new defendants for transfer of ownership of the patents. The Court permitted the amendment because "the issue of [plaintiff's] standing to bring an infringement claim for these patents is riveted with factual disputes . . . ." WL Op. at *3. The Court determined that it would require resolution of a "fact-intensive issue" to determine ownership of the patents, and that it would "not undertake this kind of inquiry on a motion to amend the complaint." *Id.*

In this case, by contrast, there is no dispute at all as to the ownership of the Patents-In-Suit. Even taking LivePerson's allegations as true, it is clear that NextCard LLC is the sole owner of the patents. The only issue for resolution here is whether

CPMG's and Warbler's status as corporate parents makes them proper parties – an issue that clearly must be resolved against LivePerson under the applicable law.

In short, the record plainly demonstrates that LivePerson's proposed amendment is futile.  This Court cannot enter declaratory relief against CPMG or Warbler because those entities own no stake in the patent.  For that reason, there is no actual controversy between LivePerson, on the one hand, and CPMG and Warbler on the other hand.  The motion for leave is futile and therefore should be denied.

**III.    The proposed amendment is offered in bad faith.  LivePerson is attempting to expand the scope of its jurisdictional discovery rather than attempting to assert a legally cognizable claim for which it could conceivably obtain judicial relief.**

Defendants do not make this assertion of bad faith cavalierly.  But Plaintiff's briefs demonstrate that Plaintiff's true desire for adding CPMG and Warbler to this lawsuit is not to assert a valid legal claim against them, but instead to expand the scope of its requested jurisdictional discovery.  This is an improper purpose for adding parties to a lawsuit, and amounts to bad faith.

Surprisingly, LivePerson's briefs do not even disguise LivePerson's true motive.  On page 3 of its Brief in Support of Motion to Amend, LivePerson argues that CPMG and Warbler should be added because:

> LivePerson's ***rights to be heard in this Court*** turn on the universe of activity surrounding the purchase and purported transfers of rights in the NextCard patents, all controlled by CPMG and/or Warbler.

Plaintiff's Brief in Support of Motion for Leave to Amend at p. 3.  An even more candid admission is made in Plaintiff's Brief in Opposition to the Motions to Dismiss, where LivePerson states:

> It is for that reason that LivePerson has moved to amend its Complaint to add CPMG – so that all the necessary jurisdictional activities are brought together and allocated to one party – the _managing_ party.

Plaintiff's Brief in Opposition to Motions to Dismiss at p. 7.

LivePerson has plainly told the Court that it wants to add these new parties merely to put their jurisdictional contacts before the Court. Even assuming that their jurisdictional contacts are relevant, that is no reason to add CPMG and Warbler as defendants to the lawsuit where LivePerson can state no legal claim against them and the Court can order no relief against them.

Curiously, nowhere in the Motion to Amend or supporting brief does LivePerson argue that it is necessary to add CPMG and Warbler in order to obtain a full and binding adjudication of the substantive patent issues presented by their declaratory claims. In fact, LivePerson may obtain a full adjudication of its declaratory claims with only NextCard LLC in the lawsuit. NextCard owns all the sticks in the bundle of rights associated with owning a patent. There are no other necessary parties whose rights might be affected by LivePerson's requested declaratory relief.

Given the foregoing, there is sufficient reason for the Court to find that LivePerson is seeking to amend and add new parties for an improper purpose and in bad faith. This is an independent reason for the Court to deny the motion for leave to amend.

## Conclusion

WHEREFORE, for the forgoing reasons, LivePerson, Inc.'s Motion for Leave to

File Second Amended Complaint should be denied.

Respectfully submitted,

David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766

Donald Puckett
State Bar No. 24013358
dpuckett@monts-ware.com

**THE WARE FIRM**
1701 North Market Street,
Suite 330
Dallas, Texas 75202-2088
(214)744-5000
(214)744-5013 (Fax)

*Attorneys for Defendants*
*NextCard, LLC and*
*Marshall Credit Strategies,*
*LLC*



Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 22711586 (D.Del.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 22711586 (D.Del.))

Mylan Pharmaceuticals, Inc. v. Kremers Urban Development
D.Del.,2003.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
MYLAN PHARMACEUTICALS, INC., et al.,
Plaintiffs,
v.
KREMERS URBAN DEVELOPMENT, et al., Defendants.
No. Civ.A. 02-1628 GMS.

Nov. 14, 2003.

John W. Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Plaintiffs.
Philip A. Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE, for Defendants.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

**\*1** On November 2, 2002, plaintiff, Mylan Pharmaceuticals Inc. ("Mylan"), filed the above-captioned action alleging infringement of the '875 patent and tortious interference by the defendants, Kremers Urban Development Company, Schwartz Pharma, Inc., Schwartz Pharma Manufacturing, Inc., Schwartz Pharma USA Holdings, Inc. and Kremers Urban, Inc. (collectively "Kremers"). On January 2, 2003, Mylan filed an amended complaint joining the plaintiff, Esteve Quimica, S.A. ("Esteve" or collectively with Mylan, "Mylan"), a corporation organized under the laws of Spain with its principal place of business in Spain and the assignee of the '875 patent. On April 4, 2003, Mylan filed a second amended complaint correcting the name of one of the defendants.

Presently before the court is Mylan's motion for leave to file a third amended complaint adding two new defendants, Dr. Pawn Seth and Dr. Andre Stamm, and alleging four new counts for transfer of ownership of the '499, '198, and '355 patents, infringement of the '499, '198, and '355 patents, misappropriation of trade secrets technology and know-how, and conversion, respectively. For the following reasons, the court will grant this motion.

II. BACKGROUND

The existing complaint alleges that Kremers' manufacturing and marketing of omeprazole generic drug infringes Mylan's '875 patent and tortiously interferes with Mylan's prospective business opportunity to the sole use of its patented invention and the right to compete fairly for customers. After Mylan joined Esteve in this action, it undertook further investigation of these issues during discovery. In doing so, Mylan uncovered proof that two Esteve consultants, Dr. Seth and Dr. Stamm, misappropriated certain trade secrets, know-how, and other proprietary information regarding the development and manufacture of omeprazole. This proprietary information, Mylan claims, is the exclusive property of Esteve pursuant to the terms of an agreement between Saltrade Ltd. and Laboratorios Esteve, S.A. (hereinafter the "Saltrade Agreement"),[FN1] an affiliate of plaintiff Esteve. According to Mylan, Dr. Seth and Dr. Stamm used the know-how they misappropriated from Esteve to develop the omeprazole formula that is the subject of the '499, '198, and '355 patents assigned to Schwartz Pharma A.G. upon issuing. Mylan contends that those three patents, therefore, rightfully belong to itself and not to Schwartz Pharma A.G. or any of the other defendants.

> FN1. The pertinent section of the Saltrade Agreement states, "SALTRADE hereby transfers to ESTEVE on exclusive basis on the KNOW-HOW to manufacture the PRODUCT.""Know-how" is defined to mean "a body of technical information,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 2
Not Reported in F.Supp.2d, 2003 WL 22711586 (D.Del.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 22711586 (D.Del.))

documentation and data which refer to the process technology, machinery required and analytical technology used in manufacture, testing and analysis of the PRODUCT.""Product" is defined to mean OMEPRAZOLE PELLETS, bioequivalent to *ANTRA pellets."

Mylan's allegations are reflected in the proposed amended complaint by four new counts, modification of the existing tortious interference count, and the addition of two defendants, Dr. Seth and Dr. Stamm. Count Two of Mylan's proposed amended complaint alleges that Dr. Seth and Dr. Stamm improperly obtained and assigned to Schwartz Pharma A.G. the '499, '198, and '355 patents for a formulation of omeprazole. Count Three then claims that Kremers marketing of omeprazole infringes the '499, '198, and '355 patents. In Count Five, Mylan asserts that Dr. Seth and Dr. Stamm, in addition to the other defendants, misappropriated confidential technology and know-how that Dr. Seth gained during his association with Esteve and that was the exclusive property of Esteve. Mylan also seeks to amend its tortious interference claim in Count Four to include allegations that Dr. Seth and Dr. Stamm conspired to misappropriate confidential technology and know-how that was the exclusive property of Esteve. In Count Six of the proposed amended complaint, Mylan alleges that the defendants' receipt of profits from the sale of omeprazole constitutes conversion of funds properly belonging to Mylan.

**2** Mylan claims it should be permitted to amend the complaint because the facts supporting the additional counts and joinder of parties were ascertained and developed during discovery. Kremers contends that the amendments are prejudicial because Mylan seeks to add four entirely new claims concerning three new patents and two new defendants at a late date in the case which would require reworking of the case management plan and rescheduling of the trial date. Kremers also makes a series of arguments claiming that Mylan's motion

for leave to amend is also futile. It argues that Mylan lacks standing to claim patent infringement over the '499, '198, and '355 patents. Kremers also contends that the court lacks subject matter jurisdiction over the claims and personal jurisdiction over Dr. Seth and Dr. Stamm. It further argues that the new claims must be settled through arbitration because they arise out of the Saltrade Agreement which contains an arbitration provision. The tort claims, Kremers asserts, are barred by the three-year statute of limitations because Esteve was aware of the underlying facts as early as 1996. Kremers makes additional arguments that Mylan improperly relies on Delaware law, the Saltrade Agreement does not transfer a future interest in all omeprazole technology, and the conversion and tortious interference counts fail to state claims upon which relief may be granted. The court disagrees with these contentions.

### III. STANDARD OF REVIEW

Rule 15 of the Federal Rules of Civil Procedure permits a party to amend the complaint by leave of court or by written consent of the adverse party. Leave to amend a complaint should be "freely given when justice so requires."Fed.R.Civ.P. 15(a). The court has discretion to deny leave to amend when there exists undue delay, bad faith, dilatory motive or undue prejudice to the opposing party, or when the amendment would be futile. *See Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Cureton v. National Collegiate Athletics Ass'n,* 252 F.3d 267, 273 (3d Cir.2001). Specifically, an amendment would be futile for purposes of Rule 15(a) if, accepting all the well pleaded facts as true, the amended complaint fails to state a claim upon which relief may be granted. *See Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington,* 646 F.Supp. 118, 120 (D.Del.1986). In other words, "the court should apply the same standards as are applied to Rule 12(b)(6) motions to dismiss."*Id.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2003 WL 22711586 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 22711586 (D.Del.))**

IV. DISCUSSION

The court does not find the relevant factors to weigh against granting leave to amend the complaint to add Dr. Seth and Dr. Stamm as defendants and to include the proposed new and modified claims for transfer of ownership, infringement, tortious interference, misappropriation of trade secrets and conversion.

A. Mylan Has Neither Unduly Delayed Nor Exhibited Bath Faith in Seeking to Amend the Complaint, and Kremers Will Not Be Significantly Prejudiced by the Amendments.

**\*3** Having discovered the factual basis for the claims only after conducting discovery, Mylan timely seeks to amend its complaint to include the proposed counts. Mylan has not unduly delayed in seeking leave to amend the complaint to add the new counts, nor does its motion for leave appear to arise out of any bad faith or dilatory motive. This is particularly true because the proposed claims are based on facts having to do with the new plaintiff, Esteve. Being a foreign corporation, Esteve had not been represented by counsel in the United States until being joined in this action after the filing of the initial complaint. After being joined in this action, Esteve had just over three months, pursuant to the March 19, 2003 scheduling order, to obtain any discovery necessary to evaluate potential additional claims and amend the complaint accordingly. Given the foregoing circumstances, it seems that the plaintiffs acted quickly and diligently to investigate Esteve's involvement in the events that gave rise to this action.

Furthermore, permitting Mylan to amend the complaint to include the above-described counts would not significantly prejudice Kremers. The court is not unsympathetic to Kremers' concerns that the addition of the new defendants and claims would require discovery from new third parties and additional discovery from the plaintiff Esteve. However, Mylan sought leave to amend nearly two months before the close of discovery, and the new defendants, Dr. Seth and Dr. Stamm, have already produced documents and been deposed as third parties. In view of Mylan's timely request and considering the discovery that has already been obtained, the court finds that little prejudice would result from re-opening discovery for the limited purpose of obtaining additional information on these claims.

B. Mylan's Proposed Amendments Are Not Futile.

Kremers' remaining arguments against Mylan's proposed amendments, though possibly proper bases for a fully briefed motion to dismiss, are premature reasons for denying Mylan's motion to amend. The court will not determine at this juncture that Mylan lacks standing to bring infringement claims for the '499, '198, and '355 patents. The issue of Mylan's standing to bring an infringement claim for these patents is riveted with factual disputes over the meaning of the Saltrade Agreement. Precedent suggests that Mylan would have standing to bring these claims if the Saltrade Agreement indeed transferred to Esteve legal title in the omeprazole formulation that is the subject of the '499, '198, and '355 patents. *See Speedplay Inc. v. Bebop, Inc.,* 211 F.3d 1245, 1250 (Fed.Cir.2000) ("A party that has been granted all substantial rights under the patent is considered the owner regardless of how the parties characterize the transaction that conveyed those rights."); *Filmtec Corp. v. Allied-Signal Inc.,* 939 F.2d 1568, 1573 (Fed.Cir.1991) (where a contract expressly granted rights in any future invention, finding the transfer of title would occur by operation of law). However, to make such a determination the court would have to probe the fact-intensive issue of the scope of the know-how and technology transferred under the Saltrade Agreement. The court will not undertake this kind of inquiry on a motion to amend the complaint.

**\*4** Because the court at this juncture will not opine ultimately on the issue of Mylan's standing to claim infringement of the '499, '198, and '355 patents, it

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 22711586 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 22711586 (D.Del.))**

likewise would be premature for the court to conclude that it lacks subject matter jurisdiction over Mylan's proposed additional state law claims. Where it has original jurisdiction over a federal claim, a district court may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Specifically, supplemental jurisdiction is proper under 28 U.S.C. § 1367 if the state law claims "derive from a common nucleus of operative fact" to the federal claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Based on the allegations in the proposed amended complaint, Mylan's state law claims for transfer of ownership, tortious interference, misappropriation of trade secrets and conversion purport to arise from the same or similar set of facts and circumstances that give rise to Mylan's claim of ownership and infringement of the '499, '198, and '355 patents. It therefore appears that the court would have sufficient grounds to exercise supplemental jurisdiction over the additional state law claims if Mylan has properly brought the additional infringement claims. Nevertheless, without expressing a view on Mylan's standing to bring the additional infringement claims, the court cannot determine whether or not to exercise supplemental jurisdiction over the accompanying proposed state law claims.

Kremers' challenge to this court's exercise of personal jurisdiction over Dr. Seth and Dr. Stamm is also not a proper basis for denying Mylan leave to amend the complaint under these circumstances. There is no requirement that a plaintiff allege the facts that support a finding of personal jurisdiction in a complaint. *See, e.g., Hansen v. Neumueller GmbH,* 163 F.R.D. 471, 474 (D.Del.1995) ("Noticeably absent from ... Rule [8] is a requirement of a statement setting forth the grounds upon which the court has personal jurisdiction over the defendant."). In view of this consideration, along with the fact that the parties have not yet developed a record on the possible contacts Dr. Seth and Dr. Stamm may or may not have in the state of Delaware, denying Mylan leave to amend its complaint for lack of personal jurisdiction over these two defendants would be inappropriate.

The court furthermore finds it inappropriate to determine the arbitrability of Mylan's claims on a motion to amend. Generally, the "appropriate procedural mechanism to enforce an arbitration agreement is a motion to compel, not a motion to dismiss."*West v. Merillat Indus., Inc.,* 92 F.Supp.2d 558, 561 (W.D.Va.2000); *see also Strick Corp. v. Cravens Homalloy (Sheffield) Ltd.,* 352 F.Supp. 844, 848 (E.D.Pa.1972). Moreover, although the Saltrade Agreement does contain an arbitration clause, the actual parties to that contract, Saltrade Ltd. and Laboratorios Esteve, S.A., have not been joined in this action. Given these considerations, it would be premature at this juncture to compel arbitration, particularly where the dispute is among non-parties to the contract.

**\*5** Likewise, Kremers' argument that Mylan's tort claims are barred by the statute of limitations is also premature. "Unless the complaint, on its face, fails to comply with the applicable limitations period, a motion to dismiss based on the failure to comply with the statute of limitations should be denied."*Tracinda Corp. v. Daimlerchrysler AG* 197 F.Supp.2d 42, 57 (D.Del.2002) (citing *In re Equimed, Inc.,* 2000 WL 562909, at \*9 (E.D.Pa. May 9, 2000)). The parties clearly dispute when the proposed claims accrued. Kremers contends that Mylan knew of the claims over six years ago whereas Mylan asserts that it had the opportunity to learn of the defendants' unlawful activities on January 14, 2003, at the earliest. Applying the same standard as for a 12(b)(6) motion, the court will not deny Mylan leave to amend on the grounds that its proposed counts are barred by the statute of limitations.

Finally, construing the allegations of the proposed amendments in the light most favorable to Mylan, the facts underlying Kremers' remaining conten-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 5
Not Reported in F.Supp.2d, 2003 WL 22711586 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 22711586 (D.Del.))**

tions that the conversion and tortious interference counts fail to state claims upon which relief may be granted, that the Saltrade Agreement does not transfer a future interest in all omeprazole technology, and that Mylan improperly relies on Delaware law are not sufficiently developed at this time to warrant a finding that the amendments are futile.

## IV. CONCLUSION

In the absence of undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment, the court should exercise its discretion in favor of granting leave to amend. *See Forman,* 371 U.S. at 182;*Cureton,* 252 F.3d at 273. To ensure that cases are decided on the merits rather than on technicalities, the court should use strong liberality in considering whether to grant to leave to amend. *See Dole v. Arco Chem. Co.,* 921 F.2d 484, 487 (3d Cir.1990); *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir.1989); *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing Virgin Islands,* 663 F.2d 419, 425 (3d Cir.1981). Having found no dilatory motive or undue prejudice and that the claims would not be futile, the court will exercise its discretion in favor of granting Mylan leave to amend the complaint in the proposed manner.

Therefore, IT IS HEREBY ORDERED that:

1. Plaintiff's Motion for Leave to Amend (D.I.81) is GRANTED.

2. Mylan shall be permitted leave to file the Third Amended Complaint in the form attached as Exhibit A to the Plaintiff's Motion for Leave to Amend.

D.Del.,2003.
Mylan Pharmaceuticals, Inc. v. Kremers Urban Development
Not Reported in F.Supp.2d, 2003 WL 22711586 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.