IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIVEPERSON, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 08-062 (GMS) |
| NEXTCARD, LLC and MARSHALL | ) | |
| CREDIT STRATEGIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT NEXTCARD, LLC'S AND
DEFENDANT MARSHALL CREDIT STRATEGIES, LLC'S
(1) REPLY BRIEF IN SUPPORT OF THEIR MOTIONS TO DISMISS AND (2)
ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR
TARGETED JURISDICTIONAL DISCOVERY**

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766

Donald Puckett
Texas State Bar No. 24013358
dpuckett@monts-ware.com
**THE WARE FIRM**
1701 North Market Street
Suite 330
Dallas, Texas 75202-2088
(214)744-5000
(214)744-5013 (Fax)

*Attorneys for Defendants
NextCard, LLC and
Marshall Credit Strategies,
LLC*

Dated: May 22, 2008

i

## Table of Contents

Table of Contents......................................................................................................ii

Table of Authorities................................................................................................iii

Summary of Argument ............................................................................................ 1

Argument ................................................................................................................. 3

    I.     MCS does not own any interest in the Patents-In-Suit.
           There is no issue of fact concerning MCS's assignment
           to NextCard.  MCS must be dismissed for lack of an
           actual controversy. ........................................................................... 3

    II.    LivePerson's has not established specific jurisdiction.
           LivePerson's declaratory claims do not arise from and
           are not related to Defendants' contacts with Delaware. ................... 5

    III.   LivePerson's has not articulated a coherent general
           jurisdiction theory, and there is no evidence supporting
           general jurisdiction whatsoever. ...................................................... 9

       A.     MCS's and NextCard's own contacts cannot give rise to
                general jurisdiction.................................................................... 9

       B.     LivePerson fundamentally misunderstands the "agency"
                theory of personal jurisdiction.  The jurisdictional contacts
                of a principal do not flow downstream to the agent, and a
                finding of agency does not result in a disregard of the
                corporate form......................................................................... 10

       C.     There are no facts supporting an "alter ego" theory of
                jurisdiction.  LivePerson's theory is no more than
                speculation and surmise. .......................................................... 12

       D.     The *Dainippon* case does not support LivePerson's
                jurisdictional theories.............................................................. 14

    IV.   LivePerson should not be permitted to conduct jurisdictional discovery.
           LivePerson has not shown that discovery has any possibility of uncovering
           facts that will establish this Court's personal jurisdiction over the
           Defendants. ..................................................................................... 16

Conclusion ............................................................................................................ 20

## Table of Authorities

**Cases**

*Akazawa v. Link New Tech. Int'l, Inc,*
520 F.3d 1354 (Fed. Cir. 2008) ............................................................................ 4

*Breckenridge Pharmaceuticals, Inc. v. Metabolite Lab's, Inc.,*
444 F.3d 1356 (Fed. Cir. 2006) ........................................................................... 5

*C.R. Bard, Inc. v. Guidant Corp.,*
997 F.Supp. 556 (D. Del. 1998) .............................................................. 10,11,12

*Dainippon Screen Mf'g Co. v. DNS Electronics, LLC,*
142 F.3d 1266 (Fed. Cir. 1998) ........................................................... 14,15,16,

*Dentsply Intern. Inc. v. Pentron Corp.,*
648 F.Supp 856, 860 (D. Del. 1986) ..................................................... 8,9

*Dole Food Co. v. Patrickson,*
538 U.S. 468, (2002) ...................................................................................... 12

*Helicopteros Nacionales de Columbia, S.A. v. Hall,*
466 U.S. 408 (1984) ........................................................................................ 9

*Kaplan v. First Options of Chicago, Inc.,*
19 F.3d 1503 (3d Cir. 1994) ............................................................................ 13

*McClaskey v. Harbison-Walker Refactories Co.,*
138 F.2d 493 (3d Cir. 1943) ............................................................................ 4

*O'Connor v. Sandy Lane Hotel Co.,*
496 F.3d 312 (3d Cir. 2007) ............................................................................ 8

*Poe v. Babcock Int'l,*
662 F.Supp. 4 (M.D. Pa. 1985) ..................................................................... 13,17,20

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
148 F.3d 1355 (Fed. Cir. 1998) ............................................................ 6,7,8

*Telecordia Techn's, Inc. v. Alcatel,*
C. A. No. 04-874 GMS, 2005 WL 1268061, Sleet, J. (D. Del. May 27, 2005) ....... 2,17,20

*Toys "R" Us, Inc. v. Geoffrey, Inc.,*
318 F.3d 446, (3d Cir. 2003) ......................................................................... 16

*United States v. Soloman,*
825 F.2d 1292(9th Cir. 1987) ...................................................................... 4

**Statutes**

35 U.S.C. §261 ........................................................................................... 4

37 C.F.R. 3.21 ......................................................................................... 3,4

## Summary of Argument

Defendant Marshall Credit Strategies, LLC ("MCS") should be dismissed from this lawsuit because it owns no interest in the Patents-In-Suit. LivePerson has not raised an issue of fact regarding MCS's assignment of the patents to Defendant NextCard, LLC ("NextCard"). The assignment is in writing and complies with the requirements of federal law. MCS is simply not a proper party to this lawsuit.

Moreover, LivePerson has not met its burden to establish the Court's personal jurisdiction over the Defendants. In its brief, LivePerson does not even address Defendants' argument that its declaratory claims do not "arise out of or relate to" Defendants' contacts with Delaware. Even if the Court considers the contacts of Defendants along with their parent corporations ("CPMG" and "Warbler"), the only Delaware contact related to the Patents-In-Suit is the purchase of the patents in Delaware. LivePerson's declaratory claims for non-infringement and patent invalidity, however, arise from the USPTO's decision to issue the patents, and from LivePerson's own potentially infringing activities – not from the purchase of the patents. LivePerson cannot demonstrate the required nexus between its claims and Defendants' jurisdictional contacts. LivePerson has cited no case authority in support of its specific jurisdiction theory, and essentially asks the Court to make new law on this point.

Nor has LivePerson met its burden to establish general jurisdiction. LivePerson does not even contend that the Defendants' contacts with Delaware are "systematic and continuous." Instead, LivePerson's brief sets forth fanciful "agency" and "alter ego" theories that have no support in the law or the evidentiary record. LivePerson's agency theory must fail because a finding of agency does not result in having the parent

corporation's jurisdictional contacts flow <u>downstream</u> to the subsdiary. Thus, even if it is assumed that Defendants' are closely controlled by CPMG and Warbler, this does not mean that CPMG's and Warbler's non-related, general jurisdiction contacts should be attributed to Defendants. Moreover, LivePerson's alter ego theory must fail because it is premised on no more than allegations of simple control of the Defendants by CPMG and Warbler, not the required "fraud, injustice or inequity." The record contains no evidence whatsoever indicating that CPMG and/or Warbler have perpetrated a fraud or inequity in their use of the corporate form such that would justify an "alter ego" finding. Indeed, LivePerson does not even ***allege*** the required fraud in its proposed Second Amended Complaint. LivePerson's alter ego theory is unsupported by either evidence or allegation.

Finally, LivePerson should not be permitted to engage in jurisdictional discovery because its jurisdictional theories are frivolous and not supported by any shred of evidence. Defendants offered LivePerson a reasonably opportunity to test the affidavits submitted in support of their Motions to Dismiss, but LivePerson instead insisted on conducting a fishing expedition that would subject Defendants' corporate parents to discovery concerning every general jurisdiction contact they had ever had with Delaware, irrespective of how unrelated such contact was with the Patents-In-Suit. The Court should deny jurisdictional discovery altogether, as it did in *Telecordia Techn's, Inc. v. Alcatel*, 2005 U.S. Dist. LEXIS 10194 (D. Del. 2005, Sleet, J.)

## Argument

**I.    MCS does not own any interest in the Patents-In-Suit.  There is no issue of fact concerning MCS's assignment to NextCard.  MCS must be dismissed for lack of an actual controversy.**

There can be no real dispute that MCS assigned all right title and interest to the NextCard Patents to NextCard, LLC, including all continuations stemming therefrom. On March 22, 2007, MCS acquired the NextCard, Inc. Patents and pending patent applications, which includes both Patents-In-Suit[1], from the bankruptcy estate of NextCard, Inc.  (Plaintiff's Brief in Opposition at p. 6).  The very next day, MCS assigned to NextCard, LLC "the Assets (defined as all of Nextcard, LLC's "tangible and intangible assets") and all rights, titles, and interests therein.  (Plaintiff's Exhibit 3, Assignment and Bill of Sale).  It goes without saying that the NextCard Patents and patent applications constitute intangible assets that fall within this very broad definition, and thus were assigned to NextCard, LLC.  LivePerson does not dispute these facts.

LivePerson's nonetheless quibbles with this chain-of-title by arguing that the assignment from MCS to NextCard does not list each patent by patent number. LivePerson cites 37 C.F.R. 3.21 for the proposition that "[a]n assignment relating to a patent must identify the patent by the patent number."  (Plaintiff's Brief in Opposition at p. 18).  LivePerson apparently believes that every patent assignment that does not list each patent by number is an invalid assignment.  Defendants are unaware of any case authority stating as much, and LivePerson cites none.

LivePerson's citation to 37 C.F.R. 3.21 is taken out of context.  That regulation pertains only to the ***recording*** of assignments with the U.S. Patent and Trademark Office.

---

[1] Defendants shall refer herein to U.S. Patent No. 6,718,313 and U.S. Patent No. 7,346,576 collectively as the "Patents-In-Suit."

It is from a section of the patent regulations entitled "Requirements for Recording."  The

relevant statute, 35 U.S.C. §261, merely requires that patent assignment be in writing, but

does not require that each patent be listed by number.

According to the Federal Circuit, "state law, not federal law, typically governs

patent ownership."  *See Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1357 (Fed.

Cir. 2008).  Patent ownership may be transferred by written assignment, but may also be

transferred in other ways, such as by operation of law. *Id.* at 1357-58 (finding that patents

may be assigned from one party to another by operation of law, such as by Japanese

intestacy law under the facts of that case).

When a patent is transferred by assignment, it must meet the requirements of 35

U.S.C. §261.  "An assignment of a patent must be in writing to fulfill the requirements of

the federal statute, and ***though no particular form of words is required***, the instrument of

transfer must be unambiguous and show a clear and unmistakable intent to part with the

patent; it must express intention to transfer ownership."  *United States v. Soloman*, 825

F.2d 1292, 1296 (9th Cir. 1987) (quoting a patent treatise, emphasis added).  *See also*

*McClaskey v. Harbison-Walker Refactories Co.*, 138 F.2d 493, 499 (3d Cir. 1943).

LivePerson's interpretation of 37 C.F.R. 3.21 is simply not an accurate statement

of the law.  No particular form of words is required for a patent assignment to be valid,

and each patent does not need to be listed by number.  LivePerson's contention is simply

a creative argument designed to create a basis for holding MCS in the suit, when there is

simply no legal basis for doing so.

MCS owns no interest in the Patents-In-Suit, and should be dismissed for this

reason alone.

**II.    LivePerson's has not established specific jurisdiction.    LivePerson's declaratory claims do not arise from and are not related to Defendants' contacts with Delaware.**

For specific jurisdiction to be proper, the plaintiff's cause of action must "arise out of or relate to" the defendant's contacts with the forum.  *See, e.g., Breckenridge Pharmaceuticals, Inc. v. Metabolite Lab's, Inc.*, 444 F.3d 1356, 1361-62 (Fed. Cir. 2006). As explained in Defendant's Opening Brief, LivePerson's substantive patent claims do not arise out or relate to Defendants' only contact with Delaware – the purchase of the patents. (NextCard Opening Brief at pp. 8-13; MCS Opening Brief at pp. 6-10). Surprisingly, LivePerson does not respond to this argument at all in its brief.

Indeed, LivePerson's Brief in Opposition does little more than pay lip service to the notion of specific jurisdiction at all.  A close reading of the brief reveals that less than a single page is devoted to setting forth a specific jurisdiction theory.  (*See* Plaintiff's Brief in Opposition at p. 13).  Rather than focusing on specific jurisdiction, LivePerson seems more concerned with the non-patent, unrelated jurisdictional contacts of Defendants' corporate parents than with the legal requirements for specific jurisdiction over Defendants.

But even assuming, for a moment, that LivePerson is correct on the agency and alter ego issues it has raised, it is nonetheless abundantly clear that LivePerson cannot show <u>specific</u> jurisdiction over Defendants with respect to LivePerson's claims.  In other words, even considering together all of the patent-related jurisdictional contacts of all the CPMG-related entities (*i.e.* NextCard, MCS, Warbler and CPMG), LivePerson's specific jurisdiction theory fails for a very simple reason: there is an insufficient nexus between the ***mere purchase*** of the patents in Delaware and the substantive patent issues

LivePerson seeks to litigate here. (NextCard Opening Brief at pp. 8-13; MCS Opening Brief at pp. 6-10).

There is no factual dispute concerning the universe of potentially-related jurisdictional contacts (even if CPMG and Warbler are included in the discussion). The Patents-In-Suit were part of a Delaware bankruptcy proceeding. MCS sent a representative (James Traweek) to Delaware to participate in an auction at which he put in the highest bid and purchased the patents. MCS executed a Purchase Agreement, governed by Delaware law, under which it took an assignment of the patents. (Plaintiff's Brief in Opposition at pp. 5-7). That is it. Those are all of Defendants' patent-related contacts with Delaware – even taking into consideration MCS, NextCard, CPMG and Warbler as a group.[2]

Given this limited universe of potentially-related contacts, LivePerson's specific jurisdiction theory can be stated very simply. Merely because the Patents-In-Suit passed through a Delaware bankruptcy and were purchased out of the Delaware bankruptcy proceeding by MCS, LivePerson contends that Delaware courts possess specific jurisdiction to hear any substantive dispute concerning the infringement or validity of those patents. (*Id.* at p. 13).

As stated in Defendants' Opening Briefs, there is no authority at all supporting this position, and the Court would be making new law to accept LivePerson's argument. (NextCard' Opening Brief at p. 8). Moreover, as explained in the Opening Briefs, LivePerson's specific jurisdiction theory is quite contrary to the Federal Circuit's holding

---

[2] LivePerson also points to the fact that NextCard has asserted, in Texas, causes of action for patent infringement against Delaware companies, but this is hardly a jurisdictional contact with Delaware given that LivePerson brought its causes of action in Texas.

in *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998). (NextCard Opening Brief at p. 8, 11-13). Even though *Red Wing Shoe* is the most applicable Federal Circuit authority, LivePerson does not even mention the case in its brief, or address the Defendants' arguments that the exercise of specific jurisdiction in this case would be contrary to *Red Wing Shoe*.

Instead, LivePerson's "nexus" argument consists of just a single sentence in its entire brief. LivePerson argues: "Without these two acts [attending the Delaware auction and executing the Purchase Agreement], which are unquestionably linked to Delaware, Defendants would not have ownership over or be able to seek the enforcement of the NextCard Patents." (Plaintiff's Brief in Opposition at p. 13). Thus, LivePerson's "nexus" argument reduces to a mere assertion of "but-for" causation – but-for the purchase of the patents in Delaware, NextCard would not be able to assert its patent claims in Texas.

LivePerson completely fails to address Defendants' argument that LivePerson's declaratory causes of action arises not from MCS's purchase of the patents in Delaware but instead from the Patent and Trademark office's decision to issue the patent, and from LivePerson's own potentially infringing activities. (NextCard Opening Brief at pp. 9-10, MCS Opening Brief at 7-8).

The implication of this argument is that MCS's purchase of the patents in Delaware is not a but-for cause of LivePerson's claims at all. Even if MCS had not purchased the patents, LivePerson would still have the same declaratory claims against someone else (the owner of the patent), because the declaratory claims arise out of the PTO's issuance of the patents and LivePerson's own potentially infringing activities.

This was thoroughly briefed by Defendants, yet not addressed at all by LivePerson. (NextCard Opening Brief at pp. 9-10; MCS Opening Brief at 7-8).

Moreover, LivePerson never comes to grips with the fact that the Third Circuit has squarely rejected the simple "but-for" test of relatedness for specific jurisdiction. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). Again, this was thoroughly briefed by Defendants yet not addressed by LivePerson. (NextCard's Opening Brief at p. 10-12; MCS Opening Brief at 8-10). LivePerson does not even attempt to meet the "relatedness" component of Third Circuit's nexus test, as set forth in *O'Connor* and further fleshed out in the Federal Circuit's *Red Wing Shoe* decision. (NextCard Opening Brief at 10-12; MCS Opening Brief at 7-10).

As fully explained in Defendants' Opening Briefs, the exercise of specific jurisdiction in this case would be inconsistent with the Federal Circuit's *Red Wing Shoe* decision. (NextCard Opening Brief at 11-13; MCS Opening Brief at 7-10). Again, LivePerson's brief does not even address the issue.

LivePerson cites just one case as an example of its specific jurisdiction theory, and it is a case that actually confirms Defendants' argument. LivePerson points to *Dentsply Intern. Inc. v. Pentron Corp.*, 648 F.Supp 856, 860 (D. Del. 1986), as presenting "circumstances similar to this case where the defendant's only contacts with the forum state stemmed from the execution of a contract regarding the patent in Delaware." (Plaintiff's Brief in Opposition at p. 14). What LivePerson fails to mention, however, is that the plaintiff in *Dentsply* **asserted a claim for breach of the contract that had been negotiated in Delaware.** *Dentsply*, 648 F.Supp. at 857. *Dentsply* was not a substantive patent suit at all, but was a suit to collect unpaid royalties under a contract. *Id.* The cause

of action in that case clearly arose from and was related to the defendant's Delaware contacts (negotiating the contract in Delaware). In their Opening Briefs, Defendants acknowledged that this Court would have personal jurisdiction over claims challenging the validity of the assignment of the NextCard patents to MCS. (NextCard Opening Brief at 9; MCS Opening Brief at 6-7) That hypothetical case would be similar to *Dentsply*. Thus, *Dentsply* proves nothing more than what Defendants have already acknowledged.

In sum, LivePerson's assertion of specific jurisdiction is half-hearted at best. LivePerson's brief barely attempts to make the case that its declaratory causes of action arise from or are related to Defendants' Delaware contacts. The specific jurisdiction arguments from Defendants Opening Briefs have gone completely unchallenged. It is apparent from the record that LivePerson's declaratory claims do not "arise out of or relate to" MCS's Delaware contacts. The required nexus is simply lacking, making the exercise of specific jurisdiction unreasonable and a violation of due process.

**III.  LivePerson's has not articulated a coherent general jurisdiction theory, and there is no evidence supporting general jurisdiction whatsoever.**

**A.  MCS's and NextCard's own contacts cannot give rise to general jurisdiction.**

A defendant is subject to general jurisdiction only where its contacts with the forum are "continuous and systematic." *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408-414-16 (1984).

In this case, there can be no dispute that NextCard and MCS are not subject to general jurisdiction if only their own contacts are considered. (NextCard Opening Brief at 13; MCS Opening Brief at 11). LivePerson does not contend otherwise.

Instead, LivePerson bases its general jurisdiction theory on the purported jurisdictional contacts of the Defendants' corporate parents (CPMG and Warbler), rather than the Defendants' own contacts. Through a misapplication of the "alter ego" and "agency" theories of jurisdiction, LivePerson hopes to persuade the Court to disregard all notions of corporate separateness and simply treat NextCard, MCS, CPMG and Warbler as one single entity for purposes of determining jurisdiction. More specifically, LivePerson asks the Court to impute the jurisdictional contacts of the corporate parents downstream to the subsidiaries for purposes of sustaining general jurisdiction over the subsidiaries. As can be seen, this general jurisdiction theory is rather fanciful, and is ill-founded in the relevant authorities.

> **B.** **LivePerson fundamentally misunderstands the "agency" theory of personal jurisdiction. The jurisdictional contacts of a principal do not flow downstream to the agent, and a finding of agency does not result in a disregard of the corporate form.**

The "agency" theory of jurisdiction is not applicable in this case because agency theory is available only to impute the jurisdictional contacts of the agent upstream to the principal. In other words, if an agency relationship is established, then the jurisdictional contacts of the agent are attributed to the principal, ***but not vice-versa***. This is clearly stated in the case cited by LivePerson in its brief. In *C.R. Bard, Inc. v. Guidant Corp.*, 997 F.Supp. 556 (D. Del. 1998), the Court stated:

> Under the agency theory, the court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction. . . . This theory differs from the alter ego theory in that it attributes specific acts to the parent because of the parent's authorization of those acts, ***but does not treat the parent and the subsidiary as one entity. . . . Thus, under agency theory, "only the precise conduct shown to be instigated by the parent is attributed to the parent.***"

*C.R. Bard*, 997 F.Supp. at 560 (emphasis added, citation omitted).

LivePerson completely misunderstands the agency theory of personal jurisdiction. This is evident when LivePerson states: "[T]he facts demonstrate that there is a strong agency relationship between CPMG and Defendants, and thus the activities of CPMG and Defendants should be viewed as a whole for purposes of assessing jurisdictional ties with this forum." (Plaintiff's Brief in Opposition at p. 4). As the *C.R. Bard* case clearly states, the result of an agency finding is that the contacts of the agent are imputed <u>upstream</u> to the principal only, but the entities are still viewed as distinct. *C.R. Bard*, 997 F.Supp. at 560.

In this case, LivePerson has alleged that CPMG and Warbler control the relevant activities of MCS and NextCard, not the other way around. (Plaintiff's Brief in Opposition at p. 12). Even if that allegation is taken as true, the result under agency theory merely would be to impute MCS's and NextCard's jurisdictional contacts to CPMG and Warbler. Agency theory would not impute CPMG's and Warbler's contacts <u>downstream</u> to NextCard and MCS. This result is consistent with general agency principles, where the principal is liable for the actions of its agent, but the agent is not liable for the actions of the principal that are unrelated to the scope of the agency relationship.

Once the agency theory of jurisdiction is properly understood, the bulk of LivePerson's entire brief is simply mooted. Almost the entirety of LivePerson's brief is dedicated to establishing that: (1) CPMG controls the subsidiary entities, and (2) CPMG's contacts therefore should be attributed downstream to NextCard and MCS. As can be seen from the foregoing discussion of the law, LivePerson's syllogism is simply

incorrect.  The unstated minor premise – that the jurisdictional contacts of the principal must flow downstream to the subsidiary – is simply contrary to the law.  LivePerson is incorrect to argue that a finding of agency necessitates that the Court ignore the corporate form and view CPMG and its subsidiaries as one single entity.  This view is plainly contradicted by the very authority that LivePerson cites in its brief.

> **C.**     **There are no facts supporting an "alter ego" theory of jurisdiction. LivePerson's theory is no more than speculation and surmise.**

LivePerson also asserts that corporate separateness between Defendants and their parent corporations should be disregarded under an "alter ego" theory of jurisdiction. Although a finding of alter ego (unlike agency) would support a disregard of corporate separateness, LivePerson has set forth no facts whatsoever to support its alter ego claim.

"A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2002)  "A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary."  *Id.*

In the personal jurisdiction context, a finding of alter ego (and thus a setting aside of corporate separateness) requires much more than a mere finding that one corporation controls another.  "In Delaware, to reach a parent corporation under an alter ego theory, the party asserting jurisdiction must establish some fraud, injustice, or inequity in the use of the corporate form."  *C.R. Bard,* 997 F.Supp. at 559.  In a case involving liability, rather than jurisdiction, the Third Circuit summarized the requirements of alter ego as follows:

> The corporate veil is pierced only when the corporation is an artifice and a sham to execute illegitimate purposes and an abuse of the corporate fiction and immunity it carries. . . . Not every disregard of corporate formalities or failure to maintain corporate records justifies piercing the corporate veil.  That remedy is available only if it is also shown that a corporation's affairs and personnel were manipulated to such an extent that it became ***nothing more than a sham used to disguise its alter ego's use of its assets for his own benefit and in fraud of creditors***.  In short, the evidence must show that the corporation's owners abused the legal separation of a corporation from its owners and used the corporation for illegitimate purposes.

*Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1521 (3d Cir. 1994) (emphasis added).   Merely proving that the parent corporation controls the activities of the subsidiary is insufficient to prove alter ego.  *See Poe v. Babcock Int'l*, 662 F.Supp. 4, 6 (M.D. Pa. 1985) ("as long as the corporations are separate entities, the subsidiary will not be deemed to be the 'alter ego' of the parent, ***no matter how much control the parent exercises***") (emphasis added).

Against this legal backdrop, it is clear that LivePerson's brief sets forth no credible alter ego theory based on the current evidentiary record.   Most of its alter ego arguments are based merely upon its allegation that CPMG and Warbler control the activities of the Defendants.  (Plaintiff's Brief in Opposition at 7-8, 12-13).  The case law discussed above, however, makes clear that a parent's control of a subsidiary, without some further showing of fraud, injustice or inequity, is simply not sufficient for a finding of alter ego.

Apart from the allegations of control, LivePerson does no more than assert that it hopes to uncover some evidence to support its alter ego theory.  Its brief states: "[W]ere this Court to award jurisdictional discovery LivePerson might uncover facts that suggest that some fraud, injustice, or inequity in the use of the corporate form exists – i.e.,

LivePerson could learn why Warbler and NextCard were created the day after the Delaware acquisition, and whether it was for the purpose of avoiding jurisdiction in Delaware." (Plaintiff's Brief in Opposition at p. 13). This is simply a wish and a prayer, not evidence. Notably, even if LivePerson's Motion for Leave to Amend is granted, its proposed Second Amended Complaint does not even contain allegations of fraud, injustice, or inequity that if assumed to be true, would support a finding of alter ego. (Plaintiff's Motion for Leave to Amend, Exhibit A).

By contrast, both MCS and NextCard submitted affidavit proof demonstrating that each entity respects corporate formalities – that they are separately managed, maintain separate accounting records and bank accounts, and file separate income tax returns.[3] (Traweek Affidavit at ¶11; Bateman Affidavit at ¶8).

There can be little dispute that the present record contains insufficient evidence to support a finding of alter ego. LivePerson's alter ego theory is based upon nothing more than suspicion and surmise. This is an insufficient basis for this Court to ignore the corporate separateness of NextCard, MCS, Warbler and CPMG.

**D.    The *Dainippon* case does not support LivePerson's jurisdictional theories.**

LivePerson prominently cites *Dainippon Screen Mf'g Co. v. DNS Electronics, LLC*, 142 F.3d 1266 (Fed. Cir. 1998), in its brief. (Plaintiff's Brief in Opposition at pp.

---

[3] These affidavits were submitted before Plaintiff filed its motion for Leave to Amend its complaint to add Warbler and CPMG, and thus the affidavits do not directly address the Defendants' corporate separateness from CPMG and Warbler. Defendants do not submit additional affidavit proof at this time, however, because Defendants bear no burden of proof on the issue, and there are no allegations from Plaintiff's complaint (either the First Amended or proposed Second Amended) that require contradiction. Moreover, Plaintiff has already signaled its intention to seek additional discovery if affidavit proof is submitted – precisely the outcome that Plaintiff seems to desire. (Plaintiff's Opening Brief in Support of Motion for Leave to Amend at p. 6).

DEFENDANTS' REPLY BRIEF (MOTIONS TO DISMISS)
AND BRIEF IN OPPOSITION (JURISDICTIONAL DISCOVERY)                    PAGE 14

3-4, 15).    It is unclear precisely what LivePerson thinks the *Dainippon* case proves. Nowhere in the *Dainippon* opinion does the court discuss the agency or alter ego theories of jurisdiction at all.  Instead, the court in *Dainippon* found personal jurisdiction based upon the **subsidiary's own contacts** with the forum.  *See Dainippon*, 142 F.3d at 1270 ("We therefore conclude that [the jurisdictional contacts] are attributable . . . to CFMT [the subsidiary] and consider whether this fact warrants the conclusion that personal jurisdiction was proper . . ." and holding that jurisdiction was proper based on the subsidiary's own contacts).

The facts of *Dainippon* are much different than the facts of this case.   In *Dainippon*, the parent corporation ("CFM") initially held the patent and sold products in the marketplace that practiced the patent.  CFM incorporated a subsidiary ("CFMT") as a patent holding company.  CFM assigned the patent to CFMT, and CFMT granted CFM an <u>exclusive</u> license to use the patents.  *See id.* at 1267.  CFM subsequently met with a competitor in California (the litigation venue) during which allegations of infringement were made, and sent correspondence to California making allegations of infringement. *Id.* at 1268 (summarizing the California contacts).

The district court dismissed the declaratory judgment action against CFMT for lack of jurisdiction, finding that "CFM alone made the litigation threats and engaged in various licensing negotiations."  *Id.* at 1270.  The Federal Circuit, however, found that this factual determination was clearly erroneous.  *Id.*  It held on the facts of that case that the CFM employees were also acting as agents of CFMT, and thus their jurisdictional contacts were attributable to CFMT.  *Id.*

With this background, LivePerson's block-quote from *Dainippon* can be fully understood. The Federal Circuit held that a patent holding company cannot be used to "insulate patent owners from defending declaratory judgment actions *in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction.*" *Id.* at 1271 (emphasis added). The key to this statement is that, in *Dainippon*, the parent corporation first owned the patent, then retained an exclusive license to practice the patent after the assignment to its subsidiary, was selling products in the forum, and was itself threatening competitors with an infringement suit, thus creating the basis for the declaratory action.

In this case, neither CPMG nor Warbler have ever owned the Patents-In-Suit, and neither has ever practiced the patents in any jurisdiction. They do not have an exclusive license, and they have never engaged in discussions with LivePerson regarding the patents. *Dainippon* is simply not applicable. Moreover, the court in *Dainippon* considered only the <u>specific jurisdiction</u> contacts of the parent corporation and the subsidiary. It is quite an extraordinary misinterpretation of *Dainippon* for LivePerson to contend that this case provides authority for the notion that a parent corporation's <u>general jurisdiction</u> contacts should be attributed downstream to create jurisdiction over the patent holding subsidiary. LivePerson cites no case in which this has ever been done.

**IV.    LivePerson should not be permitted to conduct jurisdictional discovery. LivePerson has not shown that discovery has any possibility of uncovering facts that will establish this Court's personal jurisdiction over the Defendants.**

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction . . . courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v.*

*Geoffrey, Inc.*, 318 F.3d 446, 456 (3d Cir. 2003).   "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between the party and the forum state,'" . . . the plaintiff's right to conduct jurisdictional discovery should be sustained."  *Id.*

This Court recently had occasion to consider the necessity of jurisdictional discovery in the *Telecordia* case, and decided to deny jurisdictional discovery altogether on the facts of that case.  *See Telecordia Techn's, Inc. v. Alcatel*,  C. A. No. 04-874 GMS, 2005 WL 1268061, Sleet, J. (D. Del. May 27, 2005).  In *Telecordia*, this Court wrote:

> [T]he court must be satisfied that there is some indication that this particular defendant is amendable to suit in this forum. . . . For example, a plaintiff may not rely on the bare allegations in his complaint to warrant further discovery. . . . Likewise, a mere unsupported allegation that a defendant transacts business in an area is clearly frivolous. . . . Rather, there must be some competent evidence to demonstrate that personal jurisdiction over a defendant might exist before allowing discovery to proceed. . . . Furthermore, when the lack of personal jurisdiction is clear, further discovery serves no purpose and should be denied.

WL Op. at *9..  On the facts of that case, the Court determined that the record evidence clearly demonstrated a lack of an agency relationship, and that the requested discovery would amount to a "fishing expedition."  *Id. See also Poe*, 662 F.Supp. at 7 (denying all jurisdictional discovery where the plaintiff submitted no affidavits to prove jurisdiction, and the brief contained "mere speculation").

In this case, jurisdictional discovery should similarly be denied.  LivePerson's jurisdictional theories are frivolous, in the case of its specific jurisdiction theory and its agency theory, and wholly lacking in any evidence, in the case of its alter ego theory. The record evidence clearly demonstrates: (1) that there is no specific jurisdiction over the Defendants, even if the contacts of Defendants are aggregated with CPMG and

Warbler (as argued in Section II, above); (2) the agency theory of jurisdiction is not applicable at all, because agency theory does not allow the jurisdictional contacts to flow downstream from the principal to the agent (as argued in Section III(B), above); and (3) LivePerson has offered nothing more than mere speculation in support of its alter-ego theory (Section III(C), above).

CPMG's general jurisdiction contacts with Delaware are totally irrelevant to this Court's jurisdiction over NextCard and MCS absent some alter ego showing. It is here that LivePerson's argument breaks down. Even if it is assumed that CPMG has continuous and systematic contacts with Delaware that are unrelated to the patents -- a point that certainly is not conceded, but merely assumed for the sake of argument – these general jurisdiction contacts cannot be imputed to NextCard or MCS without a showing of alter ego. LivePerson, however, cannot even make the necessary fraud or inequity allegations in its proposed Second Amended Complaint, much less support its assertion of alter ego with any semblance of evidence.

LivePerson has not shown that its requested discovery has any real probability of leading to evidence that would support this Court's jurisdiction. LivePerson asks for an opportunity to conduct discovery on all of CPMG's and Warbler's general jurisdiction contacts with Delaware (*i.e.* all of their business having nothing to do with the Patents-In-Suit or this case). (Plaintiff's Brief in Opposition at p. 16). In support of this request, LivePerson merely points to the fact that Defendants are resisting the discovery as its only support for the notion that the discovery may yield evidence in support of the Court's jurisdiction. (*Id.*) This conclusion obviously ignores Defendants legitimate reasons for resisting the discovery – the fact that the discovery will be burdensome, will

delve into highly confidential information concerning CPMG's business that is unrelated to this lawsuit, and that Defendants insist upon this discovery despite their inability to articulate a coherent jurisdictional theory.

In an effort to reach a compromise on the jurisdictional discovery issue, Defendants offered LivePerson a reasonable opportunity to test the veracity of the Traweek and Bateman affidavits that were submitted in support of the Motions to Dismiss. Subject to reaching a global agreement on the scope of discovery, Defendants offered the following: (1) to produce all documents from NextCard, MCS, CPMG, and Warbler concerning the Patents-In-Suit, the affidavits submitted in support of the Motion to Dismiss, and other topics related to specific jurisdiction, and (2) three hours of deposition testimony each from Mr. Traweek and Mr. Bateman, limited to topics bearing on specific jurisdiction. (Kimberly Mottley Affidavit at ¶¶6-7 and Exhibit D, letter from Defendants' counsel dated April 28, 2008. LivePerson, however, continued to assert throughout the discussions that it needed to take sweeping discovery concerning each and every contact that CPMG and Warbler have ever had with Delaware, virtually all of which would have nothing to do with the Patents-In-Suit.[4] (*Id.* at ¶¶ 3-8 and Exhibit A, letter from LivePerson's counsel dated April 17, 2008). This insistence on an overly-broad scope of discovery, coupled with LivePerson's inappropriate attempt to amend its pleading to add two additional non-owners of the Patents-In-Suit merely to put their

---

[4] In fact, at one point in the discussions LivePerson's counsel expressly indicated that they would abandon their quest to take discovery on all of CPMG's and Warbler's general jurisdiction contacts. (Mottley Affidavit at Exhibit C, letter dated April 24, 2008, stating: "[W]e can mostly limit the jurisdictional discovery we are seeking here to discovery related to specific jurisdiction, along with the corporation/operations information regarding the relations of the four entities . . . .") LivePerson later back-tracked on this critical point. (*Id.* at ¶8 and Exhibit F).

jurisdictional contacts before the Court, led to a breakdown of the discussions.  (*Id.* at ¶¶8-9 and Exhibit F, letter dated May 1, 2008).

      All of the relevant jurisdictional contacts are before the Court.  LivePerson does not even contend that its requested discovery is likely to lead to additional evidence in support of specific jurisdiction.  Instead, LivePerson merely wants to cast a wide net in hopes of establishing general jurisdiction over the Defendants' corporate parents and then attributing those contacts downstream to the subsidiaries.   This is a classic fishing expedition, and it would be unduly burdensome and waste of resources for the Court to allow it, especially where LivePerson has presented no evidence whatsoever on the current record to support its agency or alter ego theories.  Like the *Telecordia* and *Poe* cases, the Court should deny LivePerson's requested discovery in its entirety because LivePerson's jurisdictional theories are frivolous and completely lacking in any evidentiary predicate.

### Conclusion

WHEREFORE, for the forgoing reasons, as well as the reasons stated in their opening briefs, defendants NextCard LLC and Marshall Credit Strategies, LLC respectfully request that this Court grant their Motions to Dismiss and deny plaintiff's Motion for Targeted Jurisdictional Discovery.

Dated: May 22, 2008

Respectfully submitted,

/s/ David L. Finger_____
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766

Donald Puckett
State Bar No. 24013358
dpuckett@monts-ware.com

**THE WARE FIRM**
1701 North Market Street,
Suite 330
Dallas, Texas 75202-2088
(214)744-5000
(214)744-5013 (Fax)

*Attorneys for Defendants
NextCard, LLC and
Marshall Credit Strategies,
LLC*

Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 1
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.))**

Telcordia Technologies, Inc. v. Alcatel S.A.
D.Del.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
TELCORDIA TECHNOLOGIES, INC., Plaintiff,
v.
ALCATEL S.A. and Alcatel USA, Inc., Defend- ants.
**No. Civ.A. 04-874 GMS.**

May 27, 2005.

Steven J. Balick, John G. Day, Ashby & Geddes, Wilmington, DE, for Plaintiff.
Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Kevin M. Baird, Connolly Bove Lodge & Hutz, Wilmington, DE, for Defendants.

*MEMORANDUM*

SLEET, J.

# I. INTRODUCTION

**\*1** On July 16, 2004, the plaintiff, Telcordia Technologies, Inc. ("Telcordia"), filed this patent in-fringement action against Alcatel S.A. ("Alcatel S.A.") and Alcatel USA, Inc. ("Alcatel USA"). Presently before the court is Alcatel S.A.'s motion to dismiss for lack of personal jurisdiction. For the following reasons, the court will grant the motion.

# II. BACKGROUND

Alcatel S.A. is a French corporation with its prin-cipal place of business in Paris, France. Alcatel S.A. is the parent company of Alcatel USA, a Delaware corporation with its principal place of business in Plano, Texas. (D.I. 18 Ex. 2 ¶¶ 2-3.) It is a holding company that does not manufacture, sell, advertise, offer to sell, trade or import any goods or services in the United States or anywhere in the world. (*Id.* ¶¶ 3-5.)It does not maintain any

offices or other facilities in Delaware, or the United States. (*Id.* ¶ 7.) It neither owns nor leases any real property in Delaware or the United States, but it does own United States patents. (*Id.* ¶ 8.) Alcatel S.A. does not maintain any bank accounts in Delaware and has never contracted to supply ser-vices or things in Delaware or the United States. (*Id.* ¶¶ 9-10.)

Telcordia, a Delaware Corporation with its princip-al place of business in Piscataway, New Jersey, is the assignee and owner of the patent-in-suit, U.S. Patent No. 4,893,306 (the " '306 patent").[FN1]The '306 patent relates to a method and apparatus for multiplexing circuit and packet traffic. The patent discloses a data transmission technique, or Dynam-ic Time Division Multiplexing ("DTDM"), that is compatible with the digital circuit transmission format, as well as the packet transmission format, thereby providing "a flexible migration strategy between present circuit networks and future broad-band packet networks." (U.S. Patent No. 4,893,306 Abstract.) The complaint alleges that Alcatel S.A. and Alcatel USA have infringed, induced infringe-ment of, and/or contributorily infringed one or more claims of the '306 patent by making, using, offering for sale, selling and/or importing into the United States communication network products em-bodying the patented invention. (D.I. 1 ¶¶ 13-14.)

> FN1.The '306 patent was issued on January 9, 1990 and assigned to Bell Communica-tions Research, Inc. ("Bellcore"), which became Telcordia in 1999.

# III. STANDARD OF REVIEW

Alcatel S.A. moves to dismiss the complaint for lack of personal jurisdiction over the defendant. "Rule 12(b)(2) of the Federal Rules of Civil Pro-cedure requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[ ]."*E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates,* 197 F.R.D. 112, 119

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.))**

(D.Del.2000). In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. *Transportes Aeros de Angola v. Ronair, Inc.,* 544 F.Supp. 864-65 (D.Del.1982). If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.* (noting, however, "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *Compaq Computer Corp. v. Packard Bell Elec., Inc.,* 948 F.Supp. 338, 342 (D.Del.1996) (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation omitted). Specifically, Telcordia must show that Alcatel S.A. "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)); *see also Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 108-09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Unless the contacts are continuous and systematic, they must be related to the present cause of action. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

**\*2** In determining the jurisdictional question, the court must accept as true the allegations in the complaint. *Altech Indus., Inc. v. Al Tech Specialty Steel Corp.,* 542 F.Supp. 53, 55 (D.Del.1982). However, Telcordia, the plaintiff, bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over Alcatel S.A. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms.,* *Inc.,* 147 F.Supp.2d 268, 270-71 (D.Del.2001). To meet this burden, Telcordia must adduce facts which " 'establish with reasonable particularity" ' that jurisdiction over Alcatel S.A. exists. *Id.* (quoting *Joint Stock Soc'y v. Heublein, Inc.,* 936 F.Supp. 177, 193 (D.Del.1996)).

## IV. DISCUSSION

### A. Delaware's Long-Arm Statute

The first step in the court's analysis is to determine whether any of the provisions of Delaware's long-arm statute, Del.Code Ann. tit. 10 § 3104, warrant the exercise of jurisdiction over Alcatel S.A. Alcatel S.A. contends that the court has no basis to assert jurisdiction, while Telcordia maintains that the conduct of Alcatel S.A. satisfies the requirements of subsections (c)(1) and (c)(3) of the long-arm statute.

Under subsection (c)(1), the court may exercise jurisdiction over a nonresident or agent of a nonresident who "transacts any business or performs any character of work or service in the State."DEL.CODE ANN. tit. 10 § 3104(c)(1). Subsection (c)(3) gives the court the authority to exercise jurisdiction over a nonresident or agent of a nonresident who "causes tortious injury in the State by an act or omission in this State."DEL.CODE ANN. tit. 10 § 3104(c)(3). Delaware courts construe the long-arm statute broadly to confer jurisdiction to the maximum extent possible so as to "provide residents a means of redress against those not subject to personal service within the state."*Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156-57 (Del.Super.1997). The Delaware Supreme Court has interpreted subsections (c)(1) and (c)(3) as specific jurisdiction provisions that require a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See LaNuova D & B, S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986). In order to meet the requirements of subsections (c)(1) and (c)(3), Alcatel S.A.'s actions must be directed at

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.))**

Page 3

residents of Delaware and the protection of Delaware laws. *Thorn EMI N. Am. Inc. v. Micron Tech., Inc.,* 821 F.Supp. 272, 274 (D.Del.1993).

Telcordia asserts that the court should exercise jurisdiction under § 3104(c)(1) and/or (c)(3) because Alcatel S.A.'s contacts with Delaware are attributable to its subsidiary, Alcatel USA, under the principles of agency.[FN2] The principles of agency allow a court to establish jurisdiction over the parent based upon its jurisdiction over a subsidiary. Under the agency theory, "the court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction."*C.R. Bard Inc. v. Guidant Corp.,* 997 F.Supp. 556, 559 (D.Del.1998) (citing *Mobil Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 266 (D.Del.1989)). Thus, the agency theory "examines the degree of control which the parent exercises over the subsidiary."*Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1463 (D.Del.1991). The factors relevant to the court's examination include: (1) "the extent of overlap of officers and directors"; (2) "methods of financing"; (3) "the division of responsibility for day-to-day management"; and (4) "the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant."*Id.* If the court determines that an agency relationship exists, it may attribute certain actions of the subsidiary, Alcatel USA, to the parent corporation, Alcatel S.A., in assessing whether Telcordia has satisfied the requirements of the long-arm statute. *See id.*However, the mere existence of an agency relationship is not sufficient to confer jurisdiction. The court must still apply the Delaware long-arm statute. *See id.* at 1455 ("[A] finding of agency does not render the long-arm statute inapplicable, but simply implicates its 'or through an agent' provision.")

> FN2. Delaware law provides two theories that allow a court to exercise jurisdiction over a parent corporation based on its jur-

isdiction over a subsidiary: the alter ego theory and the agency theory. *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1463 (D.Del.1991). Under the alter ego theory, the party showing jurisdiction must show fraud or inequity in the use of the corporate form for a court to "pierce the corporate veil," or attribute the actions of a subsidiary to the parent corporation. *Id.; see Mobile Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 266 (D.Del.1989). Telcordia has neither asserted the existence of any fraud in the corporate structure of Alcatel S.A. and Alcatel USA nor introduced evidence that would support a finding of fraud. Accordingly, the court will not address this jurisdictional theory.

**\*3** Telcordia contends that Alcatel S.A. should be subject to jurisdiction under the agency theory because "Alcatel S.A. and Alcatel USA are closely knit together, effectively operating as one."(D.I. 20, at 10.) Telcordia alleges the following to support its contention of an agency theory of jurisdiction: (1) Alcatel S.A. makes it abundantly clear that the United States market is very important to it and raises funds in the United States; (2) it owns patents, *i.e.* property, in the United States; (3) it fails to distinguish among its multinational subsidiaries-that is, it consolidates descriptions of its activities with those of its subsidiaries; (4) it chose to incorporate Alcatel USA in Delaware; (5) its Senior Vice President, Mike Quigley ("Quigley") is the CEO of Alcatel USA; and (6) its website solicits requests for information concerning its products, including allegedly infringing products from Delaware residents. (*Id.* at 3-5, 10.)Telcordia further contends that, "at the very least," Alcatel USA has offered to sell in Delaware products accused of infringing the '306 patent and, therefore, transacts business in the state. In addition, because Alcatel USA committed these acts as Alcatel S.A.'s agent, they are attributable to Alcatel S.A. (D.I. 20, at 10.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 4
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.))**

Before the court can determine whether it should attribute Alcatel USA's alleged acts in Delaware to Alcatel S.A., it must determine whether an agency relationship exists between the two corporations. As previously stated, in order to make this determination, the court must consider the extent of overlap of officers and directors between Alcatel USA and Alcatel S.A., the methods of financing with respect to the two corporations, the division of responsibility for day-to-day management between the two, and the process by which each corporation obtains its business. After having considered these factors, the court concludes that Telcordia has not carried its burden. As to the first factor, Telcordia points to one overlap in officers between the two corporations: Quigley is Senior Executive Vice President of Alcatel S.A. and CEO of Alcatel USA. According to Alcatel S.A., there is a second overlap between the two corporations: its President and COO, Philippe Germond, is a member of the Board of Directors of Alcatel USA. (D.I. 23, at 3; D.I. 22 ¶ 6.) This minor overlap, however, is not dispositive, as "it is entirely appropriate for directors of a parent corporation to serve as directors of a subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts."*United States v. Bestfoods,* 524 U.S. 51, 69, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) (citations omitted) (noting that it is "well established principle ... that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership"). As such, this factor does not weigh in favor of a finding of agency.

**\*4** Likewise, the remaining factors do not weigh in favor of applying the agency theory in the present case. First, Alcatel S.A. is merely a holding company that does not manufacture, sell, or advertise in the United States, or anywhere in the world. (D.I. 18 ¶¶ 3-5.) Thus, this is not a case in which Alcatel S.A. manufactures a product and uses an independent distributor to sell its product. *Cf. C.R. Bard,* 997 F.Supp. at 561. In addition, Alcatel USA maintains

its own executive team, which is responsible for the day-to-day management of Alcatel USA, and no employee of Alcatel S.A. is a member of the executive team of Alcatel USA. (D.I. 22 ¶ 5.) It also maintains its own financial statements, separate from those kept by Alcatel S.A. (D.I. 22 ¶ 10.) Alcatel USA files a consolidated United States federal income tax return that is separate from tax returns filed by Alcatel S.A. (*Id.* ¶ 12.)Alcatel USA finances its day-to-day activities through funds generated from its business activities, including the manufacture, marketing and distribution of the accused infringing products. (*See id.* ¶ 13.)Accordingly, the court finds that while there is a minor overlap of officers and directors between the parent and subsidiary, Telcordia has not produced sufficient evidence for the court to conclude that the specific combination of agency factors militates in favor of a finding that Alcatel USA was acting as Alcatel S.A.'s agent. Thus, sections (c)(1) and (c)(3) do not warrant the exercise of jurisdiction over Alcatel S.A.FN3

> FN3. The court need not address whether jurisdiction in Delaware comports with the requirements of the Due Process Clause because it has no statutory authority under the Delaware long-arm statute to exercise jurisdiction over Alcatel S.A.

**B. Federal Rule of Civil Procedure 4(k)(2)**

Telcordia next asserts that, even if the Delaware long-arm statute does not apply in the present case, the court should not grant Alcatel S.A.'s motion to dismiss because it has the authority to exercise personal jurisdiction over Alcatel S.A. pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure. Rule4(k)(2) provides:

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the juris-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 5
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.))**

diction of the courts of general jurisdiction of any state.

FED. R. CIV. P. 4(k)(2). In order to establish jurisdiction pursuant to Rule 4(k)(2), (1) Telcordia's claim must arise under federal law; (2) Alcatel S.A. must lack sufficient contacts with any state to subject it to personal jurisdiction; and (3) Alcatel S.A. must have sufficient contacts with the United States as a whole to satisfy due process. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,* 229 F.3d 254, 258-59 (3d Cir.2000). Telcordia contends that all three requirements of Rule 4(k)(2) are satisfied. The court disagrees.

First, the parties do not dispute, nor could they, that Telcordia's claims arise under federal law. The complaint alleges that Alcatel S.A. has infringed, induced infringement of, and/or contributorily infringed the '306 patent. Patents and the protection of patent rights are the subject of Title 35 of the United States Code. 35U.S.C. § 271 specifically provides the elements of patent infringement. Additionally, 28 U.S.C. § 1338 gives district courts original jurisdiction over patent actions. A patent infringement action, therefore, is one that arises under federal law. Telcordia has thus satisfied the first requirement of Rule 4(k)(2).

**\*5** Having found that the first requirement of Rule 4(k)(2) is satisfied, the court next must determine whether Alcatel S.A. is not subject to jurisdiction in any state. *See United States v. Offshore Marine Ltd.,* 179 F.R.D. 156, 160 (D.Vi.1998); *Revak v. Locatum A.B.,* No. Civ. A. 03-4822, 2005 WL 1017771, at \*2 (E.D.Pa. Apr.28, 2005). As a preliminary matter, the court must determine whether Telcordia or Alcatel S.A. bears the burden of proving that Alcatel S.A. is not subject to the jurisdiction of any state. In *Offshore Marine Ltd.,* the United States District Court for the District of the Virgin Islands noted that "[t]he question [of] which party bears the burden of proving ... that the defendant is not subject to jurisdiction in any state appears to be an issue of first impression in this Court and in this Circuit, probably because it is generally

the plaintiff's duty to allege and prove personal jurisdiction."*Offshore Marine Ltd.,* 179 F.R.D. at 160. Indeed, it appears that the Third Circuit has not yet addressed whether the plaintiff or defendant bears the burden of proving that the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, or what is known as the negation requirement. *See Base Metal Trading Ltd. v. OJSC "Novokuzetsky Aluminum Factory",* 47 Fed. Appx. 73, 75 (3d Cir.2002) (unpublished) (determining that negation issues need not be reached because the Due Process requirement of Rule 4(k)(2) was not satisfied).[FN4] Various district courts of the Third Circuit, however, have addressed the negation requirement and concluded that the plaintiff bears the burden of demonstrating that the defendant is not subject to jurisdiction in any state. *See Offshore Marine Ltd.,* 179 F.R.D. at 160 ("Accordingly to survive a motion to dismiss for want of personal jurisdiction, the plaintiff bears the burden to prove that [the defendant] is not otherwise subject to service of process in any state."); *see also Commissariat A L'Energie Atomiquie v. Chi Mei Optoelectronics Corp.,* 293 F.Supp.2d 423, 430 (D.Del.2003), *vacated on other grounds by*395 F.3d 1315 (Fed.Cir.2005) (issue abandoned on appeal) ("Plaintiffs must also demonstrate that defendant is 'not subject to the jurisdiction of *any* state' under Rule 4(k)(2). Therefore, Rule 4(k)(2) "provides 'a narrow exception which may subject an alien defendant to a federal court's jurisdiction.' ") The court agrees with the Third Circuit district courts that have addressed the negation requirement and concludes that Telcordia bears the burden of demonstrating that Alcatel S.A. is not subject to jurisdiction in any state.

> FN4. Likewise, it appears that the Federal Circuit has not had occasion to address the negation issue.

Here, Telcordia addresses the negation requirement only by asserting that, based on the information provided by Alcatel S.A. in its opening brief and the publicly available information regarding Alcatel

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                              Page 6
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.))**

S.A., an analysis of whether any other state has personal jurisdiction over Alcatel S.A. would not be "significantly different" from the analysis regarding Alcatel S.A.'s personal jurisdiction under the Delaware long-arm statute. (D.I. 20, at 13.) According to Telcordia, if the court cannot exercise jurisdiction over Alcatel S.A. pursuant to the Delaware long-arm statute then Rule 4(k)(2) applies.(*Id.*) The court is not persuaded by this argument, however, and concludes that Telcordia's conclusory statement does not support a finding that Alcatel S.A. lacks sufficient contacts with any state to subject it to personal jurisdiction. Thus, Telcordia has not satisfied the second requirement of Rule 4(k)(2).

**\*6** Even assuming Telcordia was able to show that Alcatel S.A. was not subject to jurisdiction in any other state, it cannot satisfy the third requirement of Rule 4(k)(2) because the record evidence demonstrates that Alcatel S.A. lacks sufficient contacts with the United States as a whole to satisfy due process. The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "ha[s] certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of justice and fair play.' " *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted). In order for the court to find that Alcatel S.A. has "minimum contacts" with the United States, Telcordia must demonstrate either specific or general personal jurisdiction. *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The court can assert specific jurisdiction over a nonresident defendant that has "purposefully directed its activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or related to' those activities." *Burger King,* 471 U.S. at 472 (citations omitted). The court can assert general jurisdiction over a defendant when its contacts with the forum, regardless of their relation to the litigation, are "continuous and systematic."

*Helicopteros Nacionales,* 466 U.S. at 416. The court will address the reasons it cannot exercise specific or general jurisdiction over Alcatel S.A. in turn.

When determining whether a defendant's contacts give rise to specific jurisdiction, "[i]t is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum ... thus invoking the benefits and protections of its laws."*BP Chems.,* 229 F.3d at 259 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 475, 100 S.Ct. 559, 62 L.Ed.2d 490). In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980). Thus, a court usually must determine the character of the defendant's activity in the forum, and whether the plaintiff's claim arises out of or has a substantial connection with that activity. *See Burger King,* 471 U.S. at 475-76. In the present case, however, the court need not make this determination because Telcordia bases its argument on the specific jurisdiction subsections of the Delaware long-arm statute which, as discussed in Section IV.A., *supra,* do not warrant the exercise of jurisdiction over Alcatel S.A. because Alcatel USA is not its United States agent.

The court also concludes that Alcatel S.A.'s contacts with the United States that are unrelated to the present litigation are not "continuous and systematic" so as to give rise to general jurisdiction. Telcordia contends that general jurisdiction exists because there is "ample evidence of Alcatel S.A.'s contacts with the United States." (D.I. 20, at 12.) According to Telcordia, this evidence includes the following: (1) Alcatel S.A. is listed on the New York Stock Exchange; (2) Alcatel S.A. owns property in the United States, specifically hundreds of patents; (3) Alcatel S.A.'s website fails to distinguish among its multinational subsidiaries and uses its name in the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 7
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.))**

name of its subsidiaries; (4) Alcatel S.A.'s website describes its worldwide activities, including its activities in the United States, but never discloses that its United States activities are performed by one of its subsidiaries; and (5) Alcatel S.A. incorporated its subsidiary, Alcatel USA in Delaware. The court does not find the evidence sufficient to support Telcordia's assertion.

**\*7** First, as previously discussed, Alcatel S.A. is a French holding company that does not make, sell, export or import any products into the United States. Alcatel S.A. does not maintain any offices in the United States, or lease or own any real property in the United States. It does not maintain any bank accounts in Delaware and has never contracted to supply services or things in Delaware or the United States. Alcatel S.A.'s employees also all reside outside of the United States.

Moreover, while Alcatel S.A. is listed on the New York Stock Exchange as an American Depository Receipt ("ADR"), this factor alone does not justify the exercise of jurisdiction. *See Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 244 F.Supp.2d 289, 330 (S.D.N.Y.2003); *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir.2001) ("[T]he Court is not persuaded that Congress intended for the courts to assert jurisdiction under Rule 4(k)(2) whenever a corporation lists its stock on a United States exchange."). Likewise, "[o]wnership of a United States patent, without more, cannot support the assertion of personal jurisdiction over a foreign patentee in any state besides the District of Columbia."*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,* No. C-95-3577 DLJ, 1996 WL 467293, at \*6 n. 5 (N.D.Cal. July 24, 1996) (citing 35 U.S.C. § 293). Furthermore, incorporating a subsidiary in the United States does not give rise to jurisdiction unless the litigation is related to the act of incorporation and, here, it is not related. *See Applied Biosystems,* 772 F.Supp. at 1468. Additionally, "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there

must be evidence that the defendant 'purposefully availed' itself of conduct activity in the forum, knowingly interacting with residents of the forum state via its web site."*Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 454 (3d Cir.2003). Here, Telcordia has not adduced evidence to support a finding that Alcatel S.A.'s web site was intended to reach customers in Delaware, or any other state in the United States.[FN5]

> FN5. Telcordia asserts that there can be "no question that Alcatel S.A.'s website solicits requests for information concerning its products (including allegedly infringing products) from Delaware residents, pointing to a "website page concerning the possible purchase of Alcatel products" with Delaware chosen as the potential buyer's state. (D.I. 20, at 5; Ex. 11.) Telcordia misses the point, however, as the record does not support any documented sales to persons in Delaware (or any other state in the United States). Nor does it support any interaction between Alcatel S.A. and Delaware residents, as the web site page, in Telcordia's own words, demonstrates only the *possible* purchase of Alcatel products.

The court also disagrees with Telcordia's assertion that Alcatel's website "never discloses that its U.S. activities are performed by some entity (or entities) other than Alcatel S.A." (D.I. 20, at 4.) First, when one enters the Alcatel website and clicks on "United States" as its country/region the web address changes from "www.alcatel.com" to "www.usa.alcatel.com." Further, when one clicks on the "About Alcatel" dropdown menu and selects "Alcatel in the U.S.A.," he or she is provided with information regarding Alcatel USA, including its business locations. Moreover, the web page states "[i]t is the policy of *Alcatel USA* to satisfy the expectation of our customers." www.usa.alcatel .com/company/ausa_info.jhtml (last visited May 23, 2005) (emphasis added). Thus, the Alcatel web

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.))**

site does distinguish Alcatel S.A. from Alcatel USA. This fact does not support the exercise of jurisdiction over Alcatel S.A. Accordingly, Alcatel S.A.'s alleged contacts with the United States do not provide a basis for the court to conclude that it has a "continuous and systematic" presence in the United States.

**\*8** Nor does the combination of Alcatel S.A.'s alleged contacts with the United States provide the court with a sufficient basis to conclude that the requirements for general jurisdiction are met. *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.,* 229 F.3d 254 (3d Cir.2000) is instructive on this point. In *BP Chemicals,* the Third Circuit found that a foreign defendant did not have sufficient contacts with the United States as a whole to justify the exercise of Rule 4(k)(2) jurisdiction, even though the defendant exported its products to the United States, held a small ownership interest in a Delaware corporation, and entered into contracts requiring its personnel to travel to the United States for training. *Id.* at 263.The Court of Appeals also found that the cumulative effect of the defendants contacts did not meet the requirements for general jurisdiction. In the present case, Alcatel S.A.'s alleged contacts fall short of those alleged by the plaintiff in *BP Chemicals.*As such, the court finds that there is no basis for exercising Rule 4(k)(2) jurisdiction over Alcatel S.A.

C. Jurisdictional Discovery

Lastly, Telcordia asserts that if the court does not conclude that Alcatel S.A. "is subject to personal jurisdiction under the *Delaware long-arm statute,*" it should permit limited jurisdictional discovery rather than granting Alcatel S.A.'s motion to dismiss. (D.I. 20, at 11) (emphasis added). Telcordia asserts that its claims against Alcatel S.A. are not clearly frivolous, and that discovery is necessary due to the "limited publicly available information" that it has gathered without discovery. (D.I. 20, at 11.) Telcordia further asserts that the case will not be delayed as a result of any discovery on the per-

sonal jurisdiction issue.

Conversly, Alcatel S.A. contends that Telcordia's claims against it are clearly frivolous, because Telcordia has not carried its burden of making "a *prima facie* showing that Alcatel S.A. is subject to personal jurisdiction in Delaware."(D.I. 23, at 17.) In addition, Alcatel S.A. contends that it "strains belief that Plaintiff (1) did not know which entities in the Alcatel Family to sue, and (2) that Alcatel S.A. was not one of them."(*Id.* at 17 .)According to Alcatel S.A., Telcordia has had prior business interactions with Alcatel entities regarding the patent-in-suit, as well as other communications technology. (*Id.* at 2.) Alcatel S.A. further contends that Telcordia is "arguably the most knowledgeable company in the telecommunications field with respect to what products are sold by the various players in the market."(*Id.* at 1.) Thus, it "is hard to believe that it [Telcordia] does not know exactly who the relevant players in the market are."(*Id.*) Lastly, Alcatel S.A. contends that Telcordia is engaging in a fishing expedition, noting that the United States Supreme Court has held that courts should "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position."(*Id* at 18-19 (citing *Societe Nationale Industrielle Aerospatiale v. United States District Court for Southern Dist. Iowa,* 482 U.S. 522, 546, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987)). The court is persuaded by Alcatel S.A.'s argument.

**\*9** "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.' ' *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 456 (3d Cir.2003) (internal citations omitted). Thus, resolution of Telcordia's request "begins with the presumption in favor of allowing discovery to establish personal jurisdiction." *Hansen v. Neumueller GmbH,* 163 F.R.D. 471, 474 (D.Del. Oct.5, 1995). However, "[t]he court must be satisfied that there is some in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 9
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.))**

dication that this particular defendant is amenable to suit in this forum." *Id.* at 475.For example, "a plaintiff may not rely on the bare allegations in his complaint to warrant further discovery." *Id.* at 476.Likewise, "a mere unsupported allegation that [a] defendant 'transacts business' in an area is 'clearly frivolous.' " *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 107 F.3d 1026, 1042 (3d Cir.1997); *see B.L. Poe v. Babcock Int'l,* 662 F.Supp. 4, 7 (M.D.Pa. Mar.14, 1985) ("Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied. It would be inappropriate for this court to allow plaintiff to conduct a fishing expedition in order to construct a basis for jurisdiction."). Rather, "there must be *some* competent evidence to demonstrate that personal jurisdiction over [a] defendant might exist before allowing discovery to proceed." *Hansen,* 163 F.R.D. at 475. Furthermore, "[w]hen the lack of personal jurisdiction is clear, ... further discovery serves no purpose and should be denied." *Hockerson-Halberstadt, Inc. v. Propet USA, Inc.,* 62 Fed. Appx. 322, 338 (Fed.Cir.2003) (unpublished).

Here, as previously discussed in Section IV.A., *supra,* the record evidence regarding Telcordia's agency theory of specific jurisdiction is insufficient to support the conclusion that Alcatel USA was acting as Alcatel S.A.'s agent. In addition, Telcordia did not assert that the court could exercise personal jurisdiction over Alcatel S.A. based on the general jurisdiction subsection of the Delaware long-arm statute. For these reasons, the court believes it is clear that it may not exercise personal jurisdiction over Alcatel S.A. pursuant to the Delaware long-arm statute. Thus, further discovery would not be worthwhile. In other words, granting Telcordia's request for jurisdictional discovery would amount to allowing it to conduct a fishing expedition in order to form a basis for jurisdiction. The court, therefore, will deny Telcordia's request for jurisdictional discovery.

*ORDER*

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. Alcatel S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction (D.I.17) is GRANTED.

2. Telcordia's request for jurisdictional discovery is DENIED.

D.Del.,2005.
Telcordia Technologies, Inc. v. Alcatel S.A.
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.